IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02780-NYW

RV HORIZONS, INC.; MHC AMERICA FUND, LLC; MHC AMERICA FUND CLASS C, LLC; MHC AMERICA FUND 2, LLC; MHC AMERICA FUND 2 CLASS B, LLC; NICHE INVESTMENT NETWORKS, LLC; MHPS ALUMNI, LLC; MHPS ALUMNI 2, LLC; MHPS ALUMNI 3, LLC; AFFORDABLE HOUSING COMMUNITY FUND 1, LLC; AFFORDABLE HOUSING COMMUNITY FUND 2, LLC; AFFORDABLE HOUSING COMMUNITY FUND 3, LLC; AFFORDABLE HOUSING COMMUNITY FUND 4, LLC; AFFORDABLE HOUSING COMMUNITY FUND 5, LLC; AFFORDABLE HOUSING COMMUNITY FUND 6, LLC; and AWA FUND, LLC,

Plaintiffs,

vs.

JAMIE SMITH, an individual; RYAN SMITH, an individual; MHP PORTFOLIO, LLC; MHPI VII, LLC; ELEVATION CAPITAL GROUP, LLC; and DAHN CORPORATION,

Defendants.

---

## FIRST AMENDED COMPLAINT AND JURY DEMAND

---

Plaintiffs RV Horizons, Inc.; MHC America Fund, LLC; MHC America Class C, LLC; MHC America Fund 2, LLC; MHC America 2 Class B, LLC; Niche Investment Networks, LLC; MHPS Alumni, LLC; MHPS Alumni 2, LLC; MHPS Alumni 3, LLC; Affordable Housing Community Fund 1, LLC; Affordable Housing Community Fund 2, LLC; Affordable Housing Community Fund 3, LLC; Affordable Housing Community Fund 4, LLC; Affordable Housing Community Fund 5, LLC; Affordable Housing Community Fund 6, LLC; and AWA Fund, LLC (collectively, "Plaintiffs"), through their counsel Holland & Hart LLP, submit the following First Amended Complaint against Jamie Smith; Ryan Smith; MHP Portfolio, LLC; MHPI VII, LLC; Elevation Capital Group, LLC; and Dahn Corporation (collectively, "Defendants").

**INTRODUCTION**

1.     Together, Plaintiffs acquire, manage, and invest in manufactured housing communities, helping to serve the underserved affordable housing market. Plaintiffs' experience includes asset identification, asset acquisition, asset management, and investment strategy, drawing on their professional network, operating platform, and experienced management and staff.

2.     For several years, Plaintiffs have worked with Ryan Smith and Jamie Smith (together, the "Smiths"), and many of their companies, including MHP Portfolio, LLC ("MHP"). The Smiths and their companies' role was to assist in securing investors in certain of Plaintiffs' investment funds, which funds would invest in manufactured housing communities.

3.     In 2017, the Smiths and their companies began to unfairly compete, in Colorado and elsewhere, against Plaintiffs by using unfair and deceptive trade practices; representing Plaintiffs' materials, experience, history, and expertise as their own and without authorization from the true owners of that experience and goodwill; and misappropriating Plaintiffs' trade secrets. As explained in more depth below, Defendants used Plaintiffs' confidential and proprietary investor lists without authorization, intentionally misrepresented to Colorado investors the scope of Defendants' experience by relying on Plaintiffs' names, experience, and goodwill, falsely advertised to Colorado investors, and unfairly traded on Plaintiffs' names, experience, and goodwill for manufactured housing community projects.

4.     Defendants' actions were unlawful, and Plaintiffs bring this action to recover the damages they have suffered as a result of Defendants' wrongful conduct.

## PARTIES, JURISDICTION, AND VENUE

### *The Plaintiffs*

5.      RV Horizons, Inc. ("RV Horizons") is a Colorado corporation.

6.      MHC America Fund, LLC ("Fund 1") is a Delaware limited liability company.

7.      MHC America Class C, LLC ("Class C") is a Colorado limited liability company.

8.      MHC America Fund 2, LLC ("Fund 2") is a Delaware limited liability company.

9.      MHC America 2 Class B, LLC ("Class B") is a Colorado limited liability company.

10.     Niche Investment Networks, LLC ("Niche"), a Colorado limited liability company.

11.     MHPS Alumni, LLC ("Alumni 1") is a Colorado limited liability company.

12.     MHPS Alumni 2, LLC ("Alumni 2") is a Colorado limited liability company.

13.     MHPS Alumni 3, LLC ("Alumni 3") is a Colorado limited liability company.

14.     Affordable Housing Community Fund 1, LLC ("AHCF 1") is a Colorado limited liability company.

15.     Affordable Housing Community Fund 2, LLC ("AHCF 2") is a Colorado limited liability company.

16.     Affordable Housing Community Fund 3, LLC ("AHCF 3") is a Colorado limited liability company.

17.     Affordable Housing Community Fund 4, LLC ("AHCF 4") is a Colorado limited liability company.

3

18.     Affordable Housing Community Fund 5, LLC ("AHCF 5") is a Colorado limited liability company.

19.     Affordable Housing Community Fund 6, LLC ("AHCF 6") is a Delaware limited liability company.

20.     AWA Fund, LLC ("AWA") is a Colorado limited liability company.

### *The Defendants*

21.     Jamie F. Smith is a natural person and, upon information and belief, is a member/manager of MHP. This court has personal jurisdiction over Jamie Smith because of her minimum contacts with Colorado as alleged herein.

22.     Ryan Smith is a natural person and, upon information and belief, is a member/manager of MHP. This court has personal jurisdiction over Ryan Smith because of his minimum contacts with Colorado as alleged herein.

23.     MHP Portfolio, LLC ("MHP Portfolio") is a Florida limited liability company. This court has personal jurisdiction over MHP Portfolio by virtue of its minimum contacts with Colorado as alleged herein.

24.     MHPI VII, LLC ("Fund 7") is a Florida limited liability company. This court has general personal jurisdiction over Fund 7.

25.     Elevation Capital Group, LLC ("Elevation") is a Florida limited liability company. This court has personal jurisdiction over Elevation because of its minimum contacts with Colorado as alleged herein.

4

26.     Dahn Corporation ("Dahn") is a California corporation registered to do business in Colorado. This court has personal jurisdiction over Dahn by virtue of its minimum contacts with Colorado as alleged herein.

### *Subject Matter Jurisdiction and Venue*

27.     This court has subject matter jurisdiction over this matter pursuant to 18 U.S.C. §§ 1331, 1367.

28.     Venue is appropriate in this Court because Defendants' wrongful conduct occurred in Colorado.

## GENERAL ALLEGATIONS

### *The Beginning*

29.     The Plaintiffs' success over the last ten years was made possible due to the experiences of a few key people, including David Reynolds and Frank Rolfe. Reynolds has been in the manufactured home community for over two decades. He purchased his first mobile home community in Limon, CO, using credit cards and seller financing. Rolfe, too, has been in the manufactured home community for over two decades. His first community was in Dallas, Texas. Since these limited beginnings, Reynolds' and Rolfe's business strategy has developed into a sophisticated investment venture, with their entities owning more than 250 communities spread over 25 states, ranking as the fifth largest owner of manufactured home communities in the United States.

30.     Compared to Reynolds and Rolfe, the Smiths have no successful experience in running manufactured home communities. Instead, the Smiths' background is in the seminar and

speaking-event business. In fact, Jamie Smith first met Reynolds and Rolfe nearly ten years ago when she attended one of their "bootcamps" on how to run successful manufactured housing communities. After the bootcamp, Jamie Smith told Reynolds and Rolfe of how she and her husband, Ryan Smith, had recently purchased several manufactured home communities, but that the experience was going terribly—the communities had essentially been run into the ground. The Smiths asked Reynolds and Rolfe to manage the communities, but they declined because of their poor condition and business prospects.

31.     Later, because Reynolds and Rolfe had expansive experience actually running manufactured home communities, they and the Smiths decided to combine their respective experiences—the Smiths in networking with potential investors through seminars, and Reynolds and Rolfe with identifying, acquiring, managing, and repositioning manufactured home communities and networking and fundraising with the bootcamp attendees—to generate returns for investors. After that, and for many years, the Smiths worked with some of the Plaintiffs' entities to solicit potential investors into the manufactured housing community investments. That was, of course, until the Smiths later decided to steal the history and goodwill of the Plaintiffs and unfairly compete.

### *The Plaintiffs' Business Strategy*

32.     Plaintiffs' primary business strategy is to acquire, add value to, and reposition under-valued, under-managed, under-performing, improperly capitalized, and income-generating manufactured housing properties in the United States. To accomplish this strategy, Plaintiffs specialize both in overall investment strategy (including managing prospective and current

investors) and underlying asset management of the properties. Plaintiffs have been in this industry for many years and have a nationwide presence.

33.     Part of Plaintiffs' strategy is to divide up the different aspects of the business into separate entities.

34.     At the highest level, a limited liability company is set up to fund and own an interest, in whole or in part, in a special purpose entity ("SPE"), which in turn owns a manufactured housing community or a group of communities. Among those high-level LLCs were the following:

i.      MHPI I, LLC; MHPI II, LLC; MHPI III, LLC; and MHPI IV, LLC (individually, e.g., "MHPI 1"; collectively, "MHPI 1-4") – the Smiths and their companies participated in promoting these funds to investors.

ii.     Alumni 1, Alumni 2, and Alumni 3 (collectively, "Alumni 1-3") – these funds did not involve the Smiths or their companies.

iii.    AHCF 1, AHCF 2, AHCF 3, AHCF 4, AHCF 5, and AHCF 6 (collectively, AHCF 1-6) – these funds did not involve the Smiths or their companies (other than an investment the Smiths made in AHCF 6 through their entity, MHPI V, LLC).

iv.     AWA Fund, LLC ("AWA") – this fund did not involve the Smiths or their companies.

v.      AWA Fund 2, LLC ("AWA 2") – this fund did not involve the Smiths or their companies.

35.     Each of these high-level LLCs contracts with RV Horizons, which identifies potential manufactured housing communities, negotiates for acquisition, and manages manufactured housing communities.

### *The Smiths' Limited Involvement In The Plaintiffs' Entities*

36.     Each high-level LLC also has a different member-manager, a separate entity, that is responsible for promoting the fund to potential investors. Alumni 1-3 are managed by RV Horizons and Colonial Kitchen, LLC; AHCF 1-6 are managed by AHCF Management, LLC; the MHPI funds are managed by RV Horizons and MHP Portfolio; Fund 1 is managed by MHCA Management, LLC; and Fund 2 is managed by MHCA Management 2, LLC.

37.     The Smiths are part of and involved in MHPI 1-4. Entities they own are partial owners of the promote interest and co-managers (MHP Portfolio for MHPI 1, 2, and 3; and Salvo Conducto for MHPI 4), and the Smiths or their entities were responsible for promoting those funds to potential investors. In this capacity, the Smiths had access to Plaintiffs' prospective and current investor lists, marketing materials, and other proprietary information. Their roles in all of these respects always were limited to obtaining investors for the funds.

38.     The Smiths have never played any role, promotional or otherwise, in Alumni 1-3, AHCF 1-6, AWA, or AWA 2.

39.     On or about June 1, 2016, Plaintiffs formed and began raising capital for Fund 1, which would include all of the sponsors which previously were spread among MHPI 1-4, Alumni 1-3, and AHCF 1-6.

40.     In connection with the formation of Fund 1, and as an incentive to encourage the Smiths to endorse and support the formation and promotion of Fund 1, Plaintiffs agreed to allow the Smiths to receive an interest in the promotion structure and acquisition fees paid associated with another fund with which the Smiths were not involved, AWA 2 Fund, LLC. The Smiths were paid fees totaling approximately $445,000 in 2017 and 2018 based on the belief that the Smiths had signed the relevant agreements. Upon investigation, the Smiths never signed the agreements.

41.     After the Smiths accepted those funds but failed to sign the agreements, they started Fund 7 using Plaintiffs' proprietary and confidential information (including confidential investor and prospective investor lists) and misrepresenting to potential investors that the history of Alumni 1-3, AHCF 1-6, and AWA was the Smiths' history. The Smiths diverted investors from Fund 1, and later Fund 2, to the Smiths' newly formed Fund 7.

42.     In early 2018, Plaintiffs began to execute a plan to consolidate all of the prior funds into a new fund, Fund 2, and to return capital and profits to the prior funds. The Smiths knew about and were involved in this plan. Unknown to Plaintiffs, however, the Smiths were planning to and did unfairly divert investors into their new Fund 7 and away from Fund 1 and Fund 2.

### *The Smiths' Amazon Book*

43.     Jamie Smith authored a book called *Trailer Cash* in 2011, which is currently available for purchase on Amazon. In that book, Ms. Smith used proprietary or copyrighted materials belonging to Plaintiffs.

44.     In *Trailer Cash*, Jamie Smith misrepresents the Smiths' experience in the industry and incorrectly implies that their mobile home communities made them wealthy. This is false.

45.     In *Trailer Cash*, Jamie Smith misappropriates the Plaintiffs' investment formula and strategies on identification, valuation, and management of mobile home communities. Among other issues, and as an example, she took bullets out of the Plaintiffs' proprietary, copyrighted material and used those as her own.

### *Elevation's Misleading Website*

46.     Elevation is an entity which the Smiths have used to promote Fund 7 on the internet and otherwise.

47.     For some time, Elevation's website included the RV Horizons' business history and misrepresented to visitors that Elevation shared that history. It does not.

48.     For instance, Elevation's October 3, 2016, newsletter touts RV Horizons' reputation and falsely claims that RV Horizons is Elevation's management company.

49.     Elevation's October 3, 2016 newsletter states that "[o]ur newest fund, MHC America Fund, LLC is off to a great start." It further states that "[t]his content in this communication is being sent to members of MHC America Fund, LLC and Prior Funds. As such, any reference to 'we', 'our' or 'fund', regardless of capitalization, shall refer to MHC America Fund, LLC, and its Affiliates." The terms "we," "our," and "fund" are then used throughout the October 3 newsletter. *See* http://elevationcapitalgroup.com/newsletter-0916/ (last visited October 30, 2018).

50.     Elevation's November 17, 2016 newsletter states that "[t]his content in this communication is being sent to members of MHC America Fund, LLC and Prior Funds. As such, any reference to 'we', 'our', 'Manager' or 'fund', regardless of capitalization, shall refer to MHC America Fund, LLC, and its Affiliates. The terms "we," "our," "Manager," and "fund" are then used throughout the November 17 newsletter. *See* http://elevationcapitalgroup.com/2016/11/ (last visited October 30, 2018).

51.     Elevation's December 16, 2016 newsletter states that "[t]his content in this communication is being sent to members of MHC America Fund, LLC and Prior Funds.  As such, any reference to 'we', 'our', 'Manager' or 'fund', regardless of capitalization, shall refer to MHC America Fund, LLC, and its Affiliates." The terms "we," "our," "Manager," and "fund" are then used throughout the December 16 newsletter. *See*

http://elevationcapitalgroup.com/2016/12/ (last visited October 30, 2018).

52.     And Elevation's July 20, 2017, newsletter includes information regarding recent positive press generated by RV Horizons and characterizes RV Horizons as Elevation's "management company." This is not true. This same newsletter expressly states that "[a]ny reference to 'we', 'our' or 'fund', regardless of capitalization, shall refer to MHC America Fund, LLC, and its Affiliates." The terms "we," "our," and "fund" are then used throughout the July 20 newsletter. *See* http://elevationcapitalgroup.com/newsletter-0617/ (last visited October 30, 2018).

53.     In these monthly newsletters, written primarily by Rolfe, Elevation also solicits inquiries about Fund 7, using RV Horizons' history, positive press, and management experience, none of which it was authorized to use to promote investment in Fund 7.

54.     On their website and in their newsletters, the Smiths use the Plaintiffs' photos without permission and did not remove those for several months even after demands had been made. The Smiths also still include the Plaintiffs' names (including the names of certain managers and specialists) in their website's source code. For instance, the names of Reynolds, Rolfe, and Eric Siragusa appear in the source code on the following website pages: https://elevationcapitalgroup.com/, http://elevationcapitalgroup.com/faq/, http://elevationcapitalgroup.com/who-we-are/, http://elevationcapitalgroup.com/jamie-smith/, and http://elevationcapitalgroup.com/what-we-do/ (last visited October 30, 2018).

55.      This is a coding tactic to attract investors to the Smiths' website when investors type in the Plaintiffs' names in search engines. The Smiths continue to include this source code even after demands to cease and desist.

### *Bootcamp Materials*

56.     Niche, an entity started, controlled, and owned by Reynolds and Rolfe, holds Mobile Home Park Bootcamp sessions to teach interested individuals about manufactured housing community investment and management, using with permission RV Horizons history, experience, and materials.

57.     Jamie Smith attended a bootcamp session and obtained copies of RV Horizons' proprietary and copyrighted material in 2008 or thereabouts.

58.     After Jamie Smith attended that bootcamp, the Smiths began teaching their own bootcamp on mobile home park investing. The Plaintiffs then learned from several students and

investors that the Smiths' bootcamp materials were, in many cases, word-for-word the same as RV Horizons' material.

59.     The Smiths used, for instance, a four-page chart in their bootcamp materials that word-for-word had been created by RV Horizons.

60.     The structure, organization, order, and formulas of the Smiths' Bootcamp material mirrors that of Niche and RV Horizons.

61.     More still, Jamie Smith's book, called *Trailer Cash*, had many pages that were a summary of RV Horizons' bootcamp materials and often quoted the same formula and methodology that was proprietary to RV Horizons.

62.      The Smiths were using RV Horizons' bootcamp materials in the marketplace.

### *RV Horizons' Trade Secrets*

63.     As part of their business strategy, the Plaintiffs maintain a confidential database of investor information in "Infusionsoft" software. Infusionsoft is a contact management system. At all times, Infusionsoft was password protected and only select individuals with permission had access to Infusionsoft.

64.     Infusionsoft included investor lists for a variety of different funds Plaintiffs had developed over the years, including confidential and proprietary investor and prospective investor lists from Alumni 1-3, AHCF 1-6, Fund 1, and Fund 2.

65.     The investor lists in Infusionsoft provides Plaintiffs a competitive advantage in the marketplace.

66.     Defendants misappropriated Plaintiffs' investor lists.

67.    Plaintiffs have developed confidential and proprietary investment strategies to take underdeveloped or unprofitable mobile home communities and transform them into profitable ventures. Plaintiffs refer to these strategies, which are central to their business, as "turnarounds."

68.    These turnarounds are kept confidential.

69.    Upon information and belief, the Defendants are unfairly using Plaintiffs' confidential and proprietary turnaround strategies to their competitive advantage.

### *The Smiths' New Venture With Dahn*

70.    Beginning in 2016 or 2017, the Smiths, together with Dahn, began soliciting investors, including investors located in Colorado, for Fund 7. The stated purpose of Fund 7 is "to acquire storage facilities . . . and manufactured housing communities . . . through subsidiary single purpose entities." Upon information and belief, the Smiths and Dahn used (and continue to use) without authorization the Plaintiffs' investor and prospective investor lists from Infusionsoft to solicit investors in Fund 7.

71.    On March 17, 2018, Plaintiffs learned of a letter from Ryan Smith, signed on behalf of MHP Portfolio as a Manager of MHPI III and IV, which was sent to investors in MHPI III and IV. This letter was sent without the knowledge or authorization of Plaintiffs or the other MHPI III and IV manager, RV Horizons. Ryan Smith's letter promoted the new Fund 7 (the same fund where the Smiths were using Plaintiffs' confidential and proprietary information to confuse investors), and it promoted an upcoming webinar to promote Fund 7 and provided a link to the Smiths' Fund 7 website. The letter made it appear that the managers of MHPI III and IV,

including RV Horizons, as well as other Plaintiffs, were involved in and supporting of Fund 7, when in fact they were not. Instead, the Smiths were diverting investors to Fund 7 from funds Plaintiffs were involved in, including Funds 1 and 2. The Smiths were also using the advertising Plaintiffs were doing for Fund 1 to benefit their separate Fund 7.

72.     Upon information and belief, the Smiths, MHP, and Dahn were using plaintiffs' confidential, proprietary investor lists and contact information to solicit investors for Fund 7. Plaintiffs have requested copies of all emails between the Smiths and prospective investors, but the Smiths have refused to provide those emails.

73.     The Smiths, MHP, and Dahn were unfairly promoting Fund 7 and expressly discouraging investors from Fund 1 and Fund 2 by falsely stating in the investor materials for Fund 7 that some of Plaintiffs' individual managers were involved with Fund 7 as advisors and acquisition specialists.

74.     With Fund 7, the Defendants wanted to run a manufactured home community investment vehicle like Plaintiffs had done for many years. The problem, though, is that the Defendants have no experience running the underlying manufactured home communities or the overall investment strategy for these investments. The Smiths only solicited investors—they never ran the actual investments. While the Dahn Corporation has experience in self-storage facility investment, it also lacks any experience in manufactured housing community investments.

75.     To make up for their lack of applicable experience in manufactured home community investments, the Defendants instead elected to unfairly trade on the experience, history, and goodwill of Plaintiffs, including RV Horizons, Alumni 1-3, AHCF 1-6, and AWA.

76.     In the pursuit of new investors for Fund 7, the Smiths and Dahn have prepared a private placement memorandum and other related marketing materials. In those materials, the Smiths and Dahn state that they have expansive experience in manufactured housing ventures, including a table of states where they have manufactured housing experience. The manufactured housing experience in those states, though, is the experience of RV Horizons, not the Smiths or Dahn.

77.     The Smiths and Dahn, in the marketing and investor materials for MHPI VII, explicitly and without authorization use the trademarks for RV Horizons, Alumni 1-3, AHCF 1-6, and AWA. In doing so, the Smiths and Dahn unfairly traded on the goodwill of the Plaintiffs' entities—which should have flowed to Fund 1 and Fund 2—for the ill-gotten benefit of Fund 7.

78.     The Defendants unfairly used the trademarks and goodwill of RV Horizons to incorrectly advertise to potential investors that Fund 7 would benefit from RV Horizons' expansive experience running the manufactured home community investments. And the Defendants unfairly used the investment history, success, and goodwill of Alumni 1-3, AHCF 1-6, and AWA to incorrectly advertise to potential investors that Fund 7 could have those same successes. In doing so, the Smiths and the Dahn Corporation, unfairly traded on the goodwill of Plaintiffs' entities—which rightfully is possessed by and flows to Fund 1 and Fund 2.

79.     In soliciting investors for Fund 7, the Smiths and Dahn have advertised Fund 7 as having the benefit of members with "significant prior experience in acquiring and managing both self storage facilities and manufactured housing communities." Upon information and belief, when this representation was made, the Smiths had only purchased four properties, in Hopkinsville, KY, Memphis, TN, Milan, TN, and Texarkana, TX, and those properties were in shambles.

80.     The Smiths and Dahn advertise that Dahn has "significant prior experience in acquiring and managing self storage facilities and is estimated to be a Top 50 operator."

81.     For the manufactured housing communities, though, the Smiths and Dahn advertise that "the members of the Manager, and their affiliates, have significant prior experience in acquiring and managing manufactured housing communities and are estimated to own and/or operate the 5th largest number of MHCs with an excess of 250 MHCs containing over 25,000 lots under management in 29 states."

82.     It is RV Horizons with the manufactured housing experience—including the acquisition and management of the underlying manufactured housing property—not the Smiths or Dahn. While the Smiths, through MHP, did participate in the solicitation of investors for the Plaintiffs' manufactured housing projects, the Smiths and MHP Portfolio had no relationship to RV Horizons' vast acquisition and management experience for the actual property.

83.     Moreover, Defendants, in their marketing materials for the new venture, expressly include the returns on investment generated by Alumni 1-3, AHCF 1-6, and AWA. In doing so, Defendants rely on those entities' protected trademarks and falsely represent to potential

17

investors that they were responsible for all of these funds' successes, when Defendants in fact are not involved whatsoever with those funds.

84.    Despite not having experience in the acquisition and management of manufactured housing developments, in their marketing materials, the Smiths and Dahn advertise that they do by relying on RV Horizons' experience. For example, the Fund 7 marketing materials advertise all the different funds that RV Horizons has managed over the years and imply that RV Horizons is an "affiliate" of Fund 7, the Smiths, and Dahn. It is not.

85.    The Fund 7 marketing materials expressly list all the "[p]roperties managed by RV Horizons" and imply to consumers that RV Horizons' vast management experience underlies and supports Fund 7. It does not.

86.    The marketing materials for Fund 7 also include a list of properties "owned or operated" by affiliates of the Smiths or Dahn. Those properties, though, are owned by Plaintiffs and their subsidiaries, and none of those entities are affiliates of the Smiths or Dahn for the purpose of Fund 7.

87.    The Smiths and Dahn's misrepresentation in the Fund 7 marketing materials of their management experience for manufactured housing properties is misleading and deceptive. An essential part of a manufactured housing investment fund is the ownership and management experience that will turn the underlying assets into good investments. The Smiths and Dahn acknowledge as much in their marketing materials. The deception lies in the facts that the Smiths and Dahn do not have actual management experience and they have overstated their investment experience.

18

88.     To be sure, for some of those states where Fund 7 advertises that it has manufactured housing experience, the Smiths solicited investors for various of the funds. At no time, though, did the Smiths or their companies ever participate in the actual acquisition, management, or development of the investments in those states.

89.     Despite the clear limitations on their experience, the Smiths and Dahn—through the Fund 7 marketing materials—hold themselves out as having the complete manufactured housing experience of RV Horizons, rather than the limited investment solicitation experience that they actually have.

90.     The marketing materials for Fund 7 confuse or deceive consumers into believing that the managers of Fund 7 can rely on Plaintiffs' acquisition and management experience for manufactured housing development. Because Fund 7 and its managers cannot rely on Plaintiffs for that purpose, the marketing materials are deceptive.

91.     Fund 7's reliance in its marketing materials on the plaintiff funds' and RV Horizons' goodwill, reputation, and experience constitutes an unfair trade practice because it would cause current or potential investors to believe that they are investing with RV Horizons and Plaintiffs' funds when, in fact, they are not. This action by Fund 7 has the potential of diverting current or potential investors away from Funds 1 and 2, which RV Horizons manages, to Fund 7. Fund 7 has already obtained investors through its unfair and deceptive trade practices.

92.     Beginning in 2018, the Smiths and Dahn began visiting properties in Colorado for purchase, and upon information and belief, Defendants (or their agents) purchased property in Colorado for Fund 7.

## CLAIMS FOR RELIEF

### Count I

### Federal Trademark Infringement Under 15 U.S.C. § 1125(a)(1)(A)
**(RV Horizons, Alumni 1, Alumni 2, Alumni 3, AWA, AHCF 1, AHCF 2, AHCF 3, AHCF 4, AHCF 5, AHCF 6, and Fund 1 against all Defendants)**

93.    Plaintiffs incorporate the preceding paragraphs.

94.    Plaintiffs have established enforceable and protectable trademarks in their names and logos. Consumers would associate the names of each of the Plaintiffs with those companies and not any other company. Plaintiffs' trademarks are inherently distinctive or have acquired distinctiveness.

95.    Defendants have solicited investors and purchasers of their services in the marketplace using commercial advertising, as outlined above.

96.    Defendants' commercial advertising for their services used Plaintiffs' trademarks in commerce without permission of any of the owners and is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services because they are false or misleading representations regarding the scope of Defendants' experience and their relationship with the Plaintiffs.

97.    Defendants' unauthorized use in commerce of Plaintiffs' trademarks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services and is likely to cause consumers to believe, contrary to fact, that Defendants' services are offered, authorized, endorsed, or sponsored by Plaintiffs.

20

98.     Defendants' false or misleading representations are material and are likely to cause confusion regarding the origin and association of Defendants' services and the characteristics of Defendants' services.

99.     Defendants' conduct constitutes trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

100.     Plaintiffs have suffered damage caused by Defendants' conduct, including, but not limited to, consumer confusion, loss of goodwill, damage to reputation, loss of business, and other monetary damages, in an amount to be proven at trial. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages.

## Count II

### Federal Unfair Competition under 15 U.S.C. § 1125(a)(B).
**(RV Horizons, Alumni 1, Alumni 2, Alumni 3, AWA, AHCF 1, AHCF 2, AHCF 3, AHCF 4, AHCF 5, AHCF 6, and Fund 1 against all Defendants)**

101.     Plaintiffs incorporate the preceding paragraphs.

102.     Plaintiffs have established enforceable and protectable trademarks in their names and logos. Consumers would associate the names of each of the Plaintiffs with those companies and not any other company.

103.     Defendants have solicited investors and purchasers of their services in the marketplace using commercial advertising, as outlined above.

104.     Defendants' false or misleading statements of fact in commercial advertising about the nature, quality, or characteristic of their own commercial activities are material and have deceived or are likely to deceive consumers as to the origin, source, sponsorship, or

affiliation of Defendants' services and is likely to cause consumers to believe, contrary to fact, that Defendants' services are offered, authorized, endorsed, or sponsored by Plaintiffs.

105.    Defendants' unauthorized use in commerce of Plaintiffs' trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

106.    Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs.

107.    Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

108.    Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

109.    Plaintiffs have suffered damage caused by Defendants' conduct, including, but not limited to, consumer confusion, loss of goodwill, damage to reputation, and loss of business, in an amount to be proven at trial. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages.

## Count III

### Misappropriation of Trade Secrets Under 18 U.S.C. § 1836
**(RV Horizons, Niche, Fund 1, Class C, Fund 2, and Class B against Fund 7, Ryan Smith, and Jamie Smith)**

110.     Plaintiffs incorporate the preceding paragraphs.

111.     As alleged herein, Plaintiffs possess confidential and proprietary information that qualifies as trade secrets.

112.     Defendants have misappropriated those trade secrets by taking them inappropriately from Plaintiffs or using them for their own gain in pursuit of their business ventures, including but not limited to Fund 7, with knowledge that the trade secrets were taken from Plaintiffs.

113.     Defendants' conduct has caused Plaintiffs to suffer damages in an amount to be proven at trial.

## Count IV

### Misappropriation of Trade Secrets Under Colorado Uniform Trade Secrets Act
**(RV Horizons, Niche, Fund 1, Class C, Fund 2, and Class B against Fund 7, Ryan Smith, and Jamie Smith)**

114.     Plaintiffs incorporate the preceding paragraphs.

115.     As alleged herein, Plaintiffs possess confidential and proprietary information that qualifies as trade secrets.

116.     Defendants have misappropriated those trade secrets by taking them inappropriately from Plaintiffs or using them for their own gain in pursuit of their business ventures, including, but not limited to, Fund 7, with knowledge that the trade secrets were taken from Plaintiffs.

23

117.    Defendants' conduct has caused Plaintiffs to suffer damages in an amount to be proven at trial.

## Count V

### Colorado Consumer Protection Act (C.R.S. § 6-1-101)
### (RV Horizons, Fund 1, Class C, Fund 2, and Class B against all Defendants)

118.    Plaintiffs incorporate the preceding paragraphs.

119.    Defendants have engaged in unfair or deceptive trade practices, which have occurred in the course of Defendants' business and occupation.

120.    Defendants' unfair or deceptive trade practices significantly impact the public as actual or potential consumers of Defendants' services or property.

121.    As competitors in the same industry, Plaintiffs have suffered damage caused by Defendants' unfair and deceptive conduct, including, but not limited to, consumer confusion, loss of goodwill, and loss of business, in an amount to be proven at trial.

## Count VI

### Tortious Interference with Current and Prospective Business Relations
### (Fund 1, Class C, Fund 2, and Class B against Fund 7, Ryan Smith, and Jamie Smith)

122.    Plaintiffs incorporate the preceding paragraphs.

123.    As alleged herein, Defendants' commercial advertising for their services contained false or misleading representations regarding the scope of Defendants' experience and their relationship with RV Horizons and Plaintiffs.

124.    Defendants used RV Horizons', Fund 1's, Class C's, Fund 2's, and Class B's current and prospective investor lists to induce investors to invest with Defendants, rather than with Fund 1 or Fund 2.

24

125.     Defendants' conduct interfered with Fund 1's and Fund 2's ability to acquire new investors or continue its relationships with existing investors.

126.     RV Horizons, Fund 1, Class C, Fund 2, and Class B have suffered damage caused by Defendants' conduct, including, but not limited to, consumer confusion, loss of goodwill, and loss of business, in an amount to be proven at trial.

## Count VII

### Unjust Enrichment
**(RV Horizons, Fund 1, Class C, Fund 2, and Class B against all Defendants)**

127.     Plaintiffs incorporate the preceding paragraphs.

128.     Plaintiffs incurred significant efforts and expenses to generate the history, experience, goodwill, bootcamp materials, and investor lists discussed herein.

129.     Defendants have received a benefit from Plaintiffs' significant efforts and expenses, and it would be unjust for Defendants to retain those benefits without paying.

130.     RV Horizons, Fund 1, Class C, Fund 2, and Class B have suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief against Defendants:

A.     Compensatory and consequential damages in an amount to be determined at trial;

B.     Injunctive relief;

C.     Reasonable attorneys' fees, costs, court fees, and expert witness fees, as allowed by law;

25

D.     Pre-judgment and post-judgment interest on any award of damages to the extent allowed by law; and

E.     Such other and further relief as the Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL TO A JURY ON ALL ISSUES SO TRIABLE**

Dated November 19, 2018

Respectfully submitted,

*/s Craig Stewart*
Craig Stewart
Jessica J. Smith
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO  80202
Phone: (303) 295-8374
Fax: (303) 974-1133
CStewart@hollandhart.com
JJSmith@hollandhart.com

Christopher H. Toll
HOLLAND & HART LLP
6380 S. Fiddlers Green Circle, Suite 500
Greenwood Village, CO 80111
Phone: (303) 290-1600
Fax: (303) 223-3262
CToll@hollandhart.com

**ATTORNEYS FOR PLAINTIFFS**

Plaintiffs' address:

5600 S. Quebec Street, Suite 220A
Greenwood Village, CO 80111

11520491_8.docx