# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02780-NYW

RV HORIZONS, INC.;
MHC AMERICA Fund, LLC;
MHC AMERICA Fund CLASS C, LLC;
MHC AMERICA Fund 2, LLC;
MHC AMERICA Fund 2 CLASS B, LLC;
NICHE INVESTMENT NETWORKS, LLC;
MHPS ALUMNI, LLC;
MHPS ALUMNI 2, LLC;
MHPS ALUMNI 3, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 1, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 2, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 3, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 4, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 5, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 6, LLC; and
AWA Fund, LLC,

      Plaintiffs,

vs.

JAMIE SMITH, an individual;
RYAN SMITH, an individual;
MHP PORTFOLIO, LLC;
MHPI VII, LLC;
ELEVATION CAPITAL GROUP, LLC; and
DAHN CORPORATION,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on two motions to dismiss: (1) Defendants Jamie Smith

("Ms. Smith"); Ryan Smith ("Mr. Smith"); MHP Portfolio LLC ("MHP"), MHPI VII, LLC ("Fund

7"), and Elevation Capital Group LLC's ("Elevation Capital" and collectively "the Smith

Defendants") Motion to Dismiss ("the Smith Defendants' Motion to Dismiss") [#36, filed

December 20, 2018], which seeks dismissal of the Amended Complaint [#31] under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6); (2) Defendant Dahn Corporation's ("Dahn" and collectively with the Smith Defendants, "Defendants") Motion to Dismiss ("Dahn's Motion to Dismiss") [#38, filed December 20, 2018], which seeks dismissal under Rule 12(b)(6). Plaintiffs—discussed individually below—filed Responses on January 24, 2019 [#52; #53] to which the Defendants replied on February 7 [#58; #59]. The undersigned Magistrate Judge fully presides over this case pursuant to 28 U.S.C. § 636(c), the Parties' unanimous consent [#42], and the Order of Reference dated January 4, 2019 [#44]. Upon consideration of the motions and related briefing and in light of the applicable legal standard, the Smith Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART** and Dahn Corporation's Motion to Dismiss is **GRANTED**.

## BACKGROUND

### I. The Parties

This case involves an array of corporate entities and individuals so the court will begin by briefly discussing these entities and their interrelation.

*Plaintiffs.* Plaintiffs are a series of corporate entities owned by, among others, David Reynolds ("Mr. Reynolds") and Frank Rolfe ("Mr. Rolfe") and involved in the manufactured housing industry. [#31 at ¶¶ 5–20, 29]. Although neither Mr. Reynolds nor Mr. Rolfe is joined as a Plaintiff in this litigation, their actions are material to the underlying facts.

Mr. Reynolds and Mr. Rolfe's business operations are divided across numerous corporate entities, owned at the highest level by a limited liability company which in turns owns a special purpose entity ("SPE") which owns and operates a manufactured housing community or a grouping thereof. [*Id.* at ¶¶ 32–34]. This case is primarily concerned with the LLCs at the top of

these corporate chains and their relation to Defendants. There are five distinct groupings of Plaintiffs' LLCs which are relevant to this case, with RV Horizons, Inc. ("RV Horizons") at the top.

First, the Alumni Funds—MHPS Alumni LLC, MHPS Alumni 2, LLC, and MHPS Alumni 3, LLC—are member-managed LLCs owned by RV Horizons and Colonial Kitchen, LLC, discussed below. [*Id.* at ¶¶ 34, 36].

Second, the AWA Funds include AWA Fund, LLC and AWA Fund 2, LLC. [*Id.* at ¶ 34]. Plaintiffs do not specify which entities or individuals own/operate the AWA Funds (nor why AWA Fund LLC is joined as a Plaintiff but AWA Fund 2, LLC is not).

Third, the MHPI Funds—MHPI I, LLC; MHPI II, LLC; MHPI III, LLC; MHPI IV, LLC— are managed by RV Horizons and MHP Portfolio, LLC. [*Id.* at ¶¶ 34, 36].

Fourth, the Affordable Housing Community Funds ("AHCF")—AHCF 1, AHCF 2, AHCF 3, AHCF 4, AHCF 5, and AHCF 6—are primarily managed by AHCF Management LLC with MHPI V, LLC owning part of AHCF 6. [*Id.* at ¶¶ 34, 36].

Fifth and finally, Plaintiffs include MHC America Fund, LLC ("Fund 1") and MHC America Fund 2, LLC ("Fund 2"). [*Id.* at ¶¶ 6–9]. Plaintiffs indicate that these LLCs have (apparently) related funds, MHC America Class C, LLC and MHC America 2 Class B, LLC, but the allegations currently before the court do not clarify how these latter funds are relevant to the allegations in the Complaint or to Funds 1 and 2. Fund 1 is managed by MHCA Management, LLC and Fund 2 is managed by MHCA Management 2, LLC. In sum, Plaintiffs are or own, in whole or part, (1) the Alumni Funds; (2) the AWA Funds; (3) the MHPI Funds; (4) the AHCF Funds; and (5) the MHC Funds, or simply Funds 1 and 2.

***Defendants.*** Jamie Smith and Ryan Smith ("the Smiths") are Florida residents who own several corporate entities intertwined with Plaintiffs'. [*Id.* at ¶¶ 21, 22, 30]. Specifically, the Smiths own Colonial Kitchen, LLC—and so own an interest in the Alumni Funds—and MHP Portfolio LLC ("MHP") which is invested in MHPI I, II, and III and Salvo Conducto which owns part of MHPI IV.[1] [*Id.* at ¶ 37]. The Smiths also own MHPI V LLC, which in turn owns part of AHCF 6 as noted above. [*Id.* at ¶ 34]. Plaintiffs also allege that the Smiths also own MHPI VII, LLC ("Fund 7"). [*Id.* at ¶ 24]. The Smiths also own or control Defendant Elevation Capital Group, LLC ("Elevation Capital"), which does not appear to own any other corporate entity at issue. [*Id.* at ¶¶ 46–55]. These Defendants are collectively referred to as "the Smith Defendants," and collectively with Defendant Dahn Corporation, "Defendants."

Finally, Dahn Corporation is a California corporation not owned by any other party or entity herein mentioned but alleged to have acted in concert with the Smith Defendants in the alleged misconduct. [*Id.* at ¶¶ 70–92].

## II. Factual History

The following facts are drawn from Plaintiffs' filings and are taken as true for the purposes of the instant Motions to Dismiss.[2] Plaintiffs are in the business of owning and operating manufactured housing developments—Messrs. Reynolds and Rolfe, through Plaintiffs and other

---

[1] Plaintiffs do not allege facts to establish what type of business entity—LLC, LLP, Corporation, etc.—Salvo Conducto is.

[2] Plaintiffs set forth additional factual allegations in the Response to the Smith Defendants' Motion to Dismiss. [#53-1]. These additional facts will be considered in the discussion on personal jurisdiction. These facts are not relevant to the 12(b)(6) issue because Rule 12(b)(6) is only concerned with the adequacy of the Complaint. To ensure this order's analysis and factual basis is clear and unambiguous, the factual background to this case is divided between the present section, taken exclusively from the First Amended Complaint, and the later discussion on personal jurisdiction, supplemented by Plaintiffs' Response to the Smith Defendants' Motion.

entities, own and operate more than 250 communities in more than twenty-five states. [*Id.* at ¶¶ 29–30]. As part of their business, Messrs. Reynolds and Rolfe, through Niche Investment Networks, LLC, run a series of "boot camps" for would-be manufactured housing developers to learn their business methods. [*Id.* at ¶ 56]. These sessions instruct participants using copyrighted materials owned by RV Horizons. [*Id.* at ¶¶ 56–62]. It was at one of these boot camps that Messrs. Reynolds and Rolfe met Jamie and Ryan Smith approximately ten years ago. [*Id.* at ¶ 30].

At the time, the Smiths owned several failing manufactured home communities and unsuccessfully attempted to bring on Plaintiffs as managers. [*Id.*]. While Messrs. Reynolds and Rolfe declined to manage the Smiths' distressed communities, the Parties decided to combine their skills—the Smiths' aptitude for networking and event speaking and Messrs. Reynolds and Rolfe's skills with "identifying, acquiring, managing, and repositioning manufactured home communities and networking and fundraising with the bootcamp attendees." [*Id.* at ¶ 31]. This began a years-long relationship with the Smiths promoting Plaintiffs' investments to potential investors. [*Id.*]. Initially successful, the relationship would later turn sour.

In 2011, Jamie Smith wrote *Trailer Cash*, a nonfiction book which purportedly contains copyrighted and proprietary information from the Plaintiffs. [*Id.* at ¶¶ 43–45]. Specifically, *Trailer Cash* copies from RV Horizons materials which were used at the boot camps. [*Id.* at ¶ 61]. At some point, the Smiths began holding their own boot camps, using materials from RV Horizons boot camps and mirroring the latter's structure and format. [*Id.* at ¶¶ 56–62].

On or about June 1, 2016, Plaintiffs formed MHC America Fund LLC, Fund 1, and began raising capital. [*Id.* at ¶ 39]. Plaintiffs again used the Smiths to help promote Fund 1 to potential investors, and paid the Smiths approximately $445,000 in 2017 and 2018 in fees and interest from AWA Fund 2 LLC as part of a contract between the Parties regarding Fund 1's promotion. [*Id.* at

¶ 40]. The Smiths accepted the money but never signed the agreements. [*Id.*]. After the Smiths seemingly entered into this agreement, the Smiths began promoting their own fund, Fund 7, to Fund 1's prospective investors. [*Id.* at ¶ 41].

Plaintiffs maintain a confidential database of investor information through a password-protected system known as "Infusionsoft," a contact management system. [*Id.* at ¶ 63]. Plaintiffs also store confidential investment strategies called "turnarounds" on their computer systems. [*Id.* at ¶ 67]. The investor lists and turnaround files are critical to Plaintiffs' business structure. [*Id.*]. When the Smiths began promoting Fund 7 to the investors to whom they were supposed to be promoting Fund 1 (and later MHC America Fund 2 LLC—Fund 2), Plaintiffs allege they used this data, including the turnarounds. [*Id.* at ¶¶ 40–42, 69, 72].

The Smiths' promotion of Fund 7 heavily relied on Elevation Capital's website and associated newsletter. Plaintiffs allege that the website conflates RV Horizons's sterling business reputation with Elevation's and specifically point to four objectionable newsletters issued in 2016 and 2017, dated October 3, November 17, and December 16, 2016 and July 20, 2017. [*Id.* at ¶¶ 40–42]. Plaintiffs also allege that the Smiths have embedded references to Plaintiffs and their employees in the source code of the Elevations Capital website as a search engine optimization trick—i.e., when someone searches for David Reynolds, the embedded references to Mr. Reynolds lead search engines to rate Elevations Capital's website are more pertinent and thus it is more likely to appear despite no visible references to Mr. Reynolds. [*Id.* at ¶¶ 54–55].

In 2016 or 2017, the Smiths began working with Defendant Dahn Corporation to solicit investors for Fund 7. [*Id.* at ¶ 70]. On March 17, 2018, Plaintiffs learned of a letter signed by Ryan Smith on behalf of MHP Portfolio acting as Manager of MHPI III and IV which was sent to those funds' investors without the knowledge or acquiesce of MHPI III and IV's other manager,

RV Horizons. [*Id.* at ¶ 71]. The letter promoted Fund 7, directed readers to an upcoming promotional webinar for Fund 7, and provided a link to Fund 7's website—presumably hosted on Elevation Capital's website mentioned above. [*Id.*]. Plaintiffs do not specify if this letter required use of the Infusionsoft database to access the investors' contact information but the court presumes not in the absence of an affirmative assertion on this point given that MHP Portfolio was a co-manager of those funds and Ryan Smith would have his own access to MHPI III and IV's investors' contact information.

The Smiths, MHP Portfolio, and Dahn discouraged investors from investing in Fund 1 and Fund 2 by falsely stating in the investor materials for Fund 7 that some of Plaintiffs' individual managers were involved with Fund 7 as advisors and acquisition specialists. [*Id.* at ¶ 73]. Further, the Smiths and Dahn prepared a private placement memorandum and other marketing materials representing themselves as having extensive experience in the manufactured home market, despite the fact that neither the Smiths nor Dahn have run a manufactured housing community with any degree of continuity or success. [*Id.* at ¶ 76].

In an attempt to trade on the success and reputation of Plaintiffs, the Smiths and Dahn have used the trademarks and goodwill of the former to promote Fund 7, and have even given specific facts and figures regarding their investment experience and returns which actually correlates to Plaintiffs', not their own. [*Id.* at ¶¶ 78–86]. The Smiths and Dahn have also visited Colorado with the intent of purchasing property for Fund 7 and did so sometime in 2018. [*Id.* at ¶ 92].

## III.    Procedural History

Plaintiffs initiated this action on October 30, 2018. [#1]. Plaintiffs then filed the operative First Amended Complaint on November 20, 2018. [#31]. The Defendants filed their respective Motions to Dismiss, which have recently become ripe for decision, shortly thereafter. Although

the Smith Defendants challenge this court's assertion of personal jurisdiction over them, the court has proceeded with this matter and set substantive deadlines during a Scheduling Conference on January 15, 2019 and established relevant dates governing discovery in this action [#48; #49], with the understanding that the Smith Defendants' participation is with a reservation of their right to contest personal jurisdiction and does not waive that challenge.

## LEGAL STANDARDS

### I. Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to challenge the court's exercise of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). Plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the Defendants. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1069 (10th Cir. 2008). When, as here, the court decides a Rule 12(b)(2) motion to dismiss without holding an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008). "The plaintiff[s] may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). In considering this question, the court must accept all well pleaded facts as true and must resolve any factual disputes in favor of the plaintiff. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). A court may exercise general jurisdiction or specific personal jurisdiction depending on the defendant's degree of relation to the court's jurisdiction and the relation between defendant's contact with the forum and the conduct underlying the litigation.

**General Jurisdiction.** If a defendant has such "continuous and systematic" contacts as to render them essentially at home in the forum State, then a court may exercise general jurisdiction over the defendant and there need be no connection between the conduct underlying the litigation and the defendant's affiliation with the forum. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)). For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Id.*; *see also Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1241 (10th Cir. 2016) (analyzing general jurisdiction after *Daimler AG v. Bauman*, 571 U.S. 117 (2014)). A corporation is at home where it is incorporated or has its principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014); *Am. Fid.*, 801 F.3d at 1241.

**Specific Jurisdiction.** Unlike general jurisdiction, specific jurisdiction is confined to the adjudication of issues deriving from, or connected with, the controversy that establishes jurisdiction. *Goodyear*, 564 U.S. at 919. To establish specific jurisdiction over a non-resident defendant, a plaintiff must show that the exercise of jurisdiction is authorized under the relevant state long-arm statute and does not offend due process. *Wenz*, 55 F.3d at 1506. Because the Colorado Supreme Court has determined that Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124 (2018), is coextensive with due process requirements, *Keefe v. Kirschenbaum & Kirschenbaum, P.C.*, 40 P.3d 1267, 1270 (Colo. 2002), the inquiry is thus simplified into one basic question: whether the exercise of personal jurisdiction comports with the requirements of due process under the Fourteenth Amendment to the United States Constitution. *AST Sports*, 514 F.3d at 1057.

To comport with due process, a court must first ask whether the nonresident defendant has "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *AST Sports*, 514 F.3d at 1057. "[I]f the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *AST Sports*, 514 F.3d at 1057 (quoting *OMI Holdings*, 149 F.3d at 1091)).

## II.    Venue

Venue in this diversity action is governed by 28 U.S.C. § 1391, and in this case Plaintiff relies on § 1391(b)(2). Subsection (b)(2) provides that venue is proper in the judicial district "in which a substantial part of the events or omissions giving rise to the claim occurred." When faced with a challenge to venue under this subsection, courts employ a two-part analysis: First, examining the nature of the claims and the acts or omissions underlying those claims; second, determining whether substantial events material to those claims occurred in the forum district. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). "Under this prong, the Court must determine whether the forum activities played a substantial role in the circumstances leading up to the plaintiff's claim." *Hanson v. Bosley & Bratch, Inc.*, No. 17-CV-01489-PAB-STV, 2018 WL 4491424, at *3 (D. Colo. Sept. 18, 2018).

The substantiality requirement is satisfied upon a showing of "acts and omissions that have a close nexus" to the alleged claims. *Id.* Appellate courts have "caution[ed] district courts to take seriously the adjective 'substantial' . . . . for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere." *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005)

(emphasis in original).  The burden is on the Plaintiff to establish that venue is appropriate in the chosen forum, and the law in the United States Court of Appeals for the Tenth Circuit is divided whether to examine solely Defendants or Plaintiff's actions in undertaking this analysis.  *Bartile Roofs*, 618 F.3d at 1166 & n.11.

## III.     Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible.").  To state a claim that is plausible on its face, a complaint must "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed."  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**ANALYSIS**

I.      **The Smith Defendants' Motion to Dismiss**

The Smith Defendants—Jamie Smith, Ryan Smith, MHP Portfolio, Fund 7, and Elevation Capital Group LLC—have moved to dismiss the Complaint for lack of personal jurisdiction, improper venue, and for failure to state a claim. [#36]. A federal court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Therefore, this court will begin by analyzing personal jurisdiction. Because the court concludes that there is personal jurisdiction over all of the Smith Defendants except MHP Portfolio, the court then proceeds to consider the venue and Rule 12(b)(6) issues as to the remaining Smith Defendants. Because the court further concludes that venue is proper and the First Amended Complaint states a plausible claim for relief in part, the Smith Defendants' Motion to Dismiss is granted in part and denied in part.

A.      **Personal Jurisdiction and Venue**

***Additional Facts Adduced in Plaintiffs' Response.*** In response to the Motion to Dismiss, Plaintiff has offered additional facts to justify the assertion of personal jurisdiction over the Smith Defendants, including an affidavit from Mr. Reynolds, the president and sole shareholder of RV Horizons. [#53; #53-1]. Mr. Reynolds's affidavit contains numerous assertions of fact which are material to the issue of personal jurisdiction. According to Mr. Reynolds, Elevation Capital and Fund 7 share a website which hosts a page titled "Fund 7 – 700+ Unit Storage Facility in Parker, Colorado Now Open" ("the Parker Facility" or "the Facility") which includes a video touting said facility. [#53-1 at ¶ 10]. The Parker Facility is also promoted on Elevation Capital's Facebook and Vimeo pages. [*Id.* at ¶¶ 11–17]. Elevation Capital's Parker Facility page named Ryan Smith

as its author and an associated Facebook page directs prospective investors to contact him if interested in the Facility. [*Id.* at ¶¶ 11, 18]. Moreover, the Private Placement Memorandum for Fund 7 notes that the Fund acquired America360 LLC, which it states owns a facility at 18901 Longs Way in Parker, Colorado, among other locations. [*Id.* at ¶ 19].

Mr. Reynolds further states that Jamie Smith attended one of Niche's boot camps located in Colorado and obtained copyrighted materials from that conference for her own benefit and the benefit of other Defendants. [*Id.* at ¶ 20 (incorporating #31 at ¶¶ 56–62)]. Jamie Smith also received a $20,000 referral fee in the 2017 sale of a mobile home park in Durango, and MHP Portfolio received a $30,000 acquisition fee for a purchase in Berthoud in 2014. [#53-1 at ¶¶ 21, 22]. MHP Portfolio entered into an "Operational Management and Profit Sharing Agreement" for the Berthoud facility and received a $183,000 payment in 2018 when the facility sold. [*Id.* at ¶¶ 23, 24].

Finally, Mr. Reynolds notes that Defendants are invested in MHPI II LLC as noted above, and MHPI II owns,[3] directly or indirectly, an interest in properties in Monte Vista and La Junta, Colorado. [*Id.* at ¶ 25]. Mr. Reynolds further purports to be in possession of expense/reimbursement documentation reflecting that Ryan and Jamie Smith travelled extensively to Colorado regarding the conduct at issue. [#53-1 at ¶ 26].

***The Applicable Legal Standard.*** Although Plaintiffs claim general jurisdiction over Fund 7 in the First Amended Complaint [#31 at ¶ 24], Plaintiffs, in responding to the Smith Defendants' Motion to Dismiss, focus their argument on the court's exercise of specific jurisdiction. [#53 at 8 n.3]. Because the Plaintiffs provide no authority or argument on the point that an out-of-state

---

[3] It is alleged that MHPI II is owned in part by MHP Portfolio and the Smiths own MHP Portfolio. [#1 at ¶¶ 34, 37].

entity like Fund 7 can be subject to this court's general jurisdiction, the court will focus its analysis on whether Fund 7 is subject to this court's exercise of specific personal jurisdiction. Plaintiffs have consistently invoked the court's specific personal jurisdiction over the other Smith Defendants.

This is a tort case, and so the court applies the "effects test" when evaluating whether a defendant has sufficient minimum contacts with the forum to justify the court's assertion of personal jurisdiction. The Tenth Circuit has summarized this test, first formulated in *Calder v. Jones*, 465 U.S. 783 (1984), into three parts: (1) an intentional action; (2) expressly aimed at the forum state, with (3) knowledge that the brunt of the injury would be felt in the forum state. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1072 (10th Cir. 2008); *Impact Prods., Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004) ("This test generally applies to determination of specific jurisdiction in cases of intentional torts, including trademark infringement in which a non-resident defendant has acted outside the forum state in a manner that injures a forum resident." (citation omitted)).

In a case such as this where the tortious conduct involves the misappropriation of business information, any forum connection to the operations of the tortfeasor company will be sufficient to meet plaintiff's *prima facie* burden as attempting to disentangle which specific operations benefitted from which misappropriated trade secret is both practically impossible and premature at this stage. *See, e.g.*, *Retail Serv. Sys., Inc. v. Mattress By Appointment, LLC*, 210 F. Supp. 3d 916, 924–26 (S.D. Ohio 2016) (examining defendant's business activities in the forum without attempting to determine if those activities were related to the trade secret misappropriation or were an unrelated part of the business's operations). In other words, if a company or individual has misappropriated a trade secret and subsequently purposefully directed some of its related

operations in the forum in a manner plaintiff plausibly alleges to be premised on or benefitting from the misappropriation, that will be sufficient. *See ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011). *Calder* and its formulation is not the only way to satisfy the purposeful direction test, *Dudnikov*, 514 F.3d at 1071, but because the court finds either that it is satisfied in this case or that the assertion of personal jurisdiction is so flatly unjustified as to not be a close call, the court need not consider alternate formulations. *Cf. Grynberg v. Ivanhoe Energy, Inc.*, 490 F. App'x 86, 96 n.6 (10th Cir. 2012) (applying only *Calder*/*Dudnikov* because Plaintiff relied only on that theory/formulation).

**The Court has Personal Jurisdiction Over all the Smith Defendants except MHP Portfolio LLC.** The Smith Defendants have moved to dismiss for lack of personal jurisdiction. The facts supporting the assertion of personal jurisdiction over each individual party are naturally closely related, but the court must be careful to distinguish between the individual defendants so as not to conflate one entity's contacts with another's. Therefore, the court will analyze the Motion to Dismiss as applied to each individual party in turn.

First, the court finds that the assertion of specific personal jurisdiction over Jamie Smith is appropriate. Jamie Smith visited Colorado in connection with Fund 7's acquisition of the Parker Facility.[4] [#31 at ¶ 92; #53-1 at ¶ 19]. Jamie Smith is an owner/manager of Fund 7, which has purportedly appropriated Plaintiffs' proprietary information and likeness in the course of promoting its operations, including the Parker Facility.[5] [#31 at ¶¶ 41, 70–92]. To this end, Jamie

---

[4] The court finds that Ms. Smith's other visits to Colorado, for example her January 2018 trip to Vail, are not relevant to this analysis without some basis to find that those trips were connected to the conduct at issue in this litigation.

[5] Although the court has some reservations, the court finds that Plaintiffs are entitled to the reasonable inference that the Parker Facility is related to the misappropriation at issue in this case, especially given that Defendants do not argue to the contrary.

Smith has also solicited Colorado investors for Fund 7, and been at least partially successful in recruiting Colorado residents. [*Id.* at 70; #36 at 9]. Ms. Smith is also the one who attended the 2008 RV Horizons boot camp where she met Messrs. Reynolds and Rolfe and later allegedly misappropriated materials for the Smiths' own bootcamps and her book *Trailer Cash*. [*Id.* at ¶¶ 30, 56–62].

The court finds that Ms. Smith's conduct, as alleged in the First Amended Complaint, meets the requirements of the effects test. In this analysis the court has not relied on Ms. Smith's involvement with, or payments from, the Durango, Berthoud, or Monte Vista communities as Plaintiffs offer no explanation or theory as to how those transactions relate to Fund 7 or the tortious conduct at issue. But the remaining pertinent factual allegations, i.e., that Ms. Smith misappropriated information from RV Horizons, a Colorado corporation, and has used that information to compete in Colorado with RV Horizons and other parts of the Plaintiffs' businesses, are sufficient to establish personal jurisdiction over Ms. Smith. *Impact Prods.*, 341 F. Supp. 2d at 1190. The acquisition of the Parker Facility is particularly probative to this analysis because it demonstrates Ms. Smith's (and others) intentional availment of the laws and protections of the state of Colorado in the course of her tortious conduct directed at Plaintiffs, at least some of whom are Colorado residents. And while the Smith Defendants vigorously deny that they own the Parker Facility (at least directly and wholly), this court respectfully disagrees with the Smith Defendants' argument that "plaintiffs do not allege a single forum-related activity," [#58 at 2], particularly when all facts are drawn in favor of Plaintiffs at this juncture and need only meet a *prima facie* burden. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

Next the court considers the assertion of jurisdiction over Ryan Smith and arrives at the same conclusion. Mr. Smith was closely involved with Fund 7's acquisition of the Parker Facility,

visiting with Ms. Smith to scout locations for Fund 7's investment and even writing promotional material for Elevation Capital's website to promote the Facility. [#53-1 at ¶ 11]. He was also listed as the point of contact for interested investors. [*Id.* at ¶ 18]. Just as with Jamie Smith, Ryan Smith is accused of misappropriating the trade secrets and confidential business information of Colorado residents. [#31 at ¶¶ 56–62]. Although the court is obliged to separately consider the assertion of personal jurisdiction over Jamie Smith and Ryan Smith, the two are alleged to have undertaken much the same conduct, and the court finds that the exercise of personal jurisdiction against Ryan Smith is justified on largely, although not entirely, the same basis as the court's exercise of jurisdiction over Jamie Smith.

The court now turns to Fund 7 and again finds jurisdiction. Fund 7 is a Florida LLC, and Plaintiffs offer no evidence or basis for the court to find that it is "at home" in Colorado. [#31 at ¶ 24]. Therefore, the court will evaluate the assertion of specific jurisdiction over Fund 7 as Plaintiffs argue and ignore the assertion of general jurisdiction in the First Amended Complaint [*id.*]. The court finds that there is jurisdiction over Fund 7 because it is the principal object and primary beneficiary of the Smith Defendants' misappropriation of the Plaintiffs' trade secrets and business reputation. *See generally* [*id.*]. Plaintiffs allege that while the Smiths were supposed to be cultivating investors for Fund 1 and Fund 2, they were instead diverting those investors to Fund 7. *E.g.*, [*id.* at ¶ 41]. And Fund 7 is the mechanism through which the Smiths availed themselves of the benefits of conducting business in Colorado through the purchase of the Parker Facility, a purchase at least in part facilitated through the use Plaintiffs' confidential information and trademarks. [*Id.* at ¶¶ 67–69]. Fund 7 is also the entity which is engaging in the misleading advertising that conflates RV Horizons's success with its own to the latter's detriment. [*Id.* at ¶¶ 46–55]. Insofar as Fund 7 infringed RV Horizons's trademark, that is sufficient to meet the

*Calder* effects test. [*Id.* at ¶¶ 93–100]; *Sys. Designs, Inc. v. New Customware Co.*, 248 F. Supp. 2d 1093, 1097–99 (D. Utah 2003) (collecting cases).

The Smith Defendants argue that the court cannot exercise jurisdiction over Fund 7 because Colorado residents are a tiny, non-voting fraction of its investors and it only owns a small portion of the Parker Facility. [#58 at 6–7]. The court is not persuaded. First, the composition of Fund 7's investors is irrelevant except as it demonstrates solicitation of Colorado residents; the fact that Fund 7 might have been more successful in soliciting investors in other locales is not relevant to its intentional availment of this forum in a tortious manner harming Colorado-resident Plaintiffs. Second, while the Smith Defendants argue that the Fund's ownership in the Parker Facility is a small and attenuated ownership interest, the court resolves any ambiguities over the extent of the fund's interest and control in the facility in favor of Plaintiffs. Under the facts as alleged, the Parker Facility is relevant insofar as it manifests the fruits of Defendants' misconduct and its intentional availment of the forum—the precise ownership interest is not determinative or even particularly relevant. The court finds that the assertion of jurisdiction over Fund 7 is appropriate.

The court next turns to Elevation Capital and also finds personal jurisdiction. Elevation Capital is closely intertwined with Fund 7 and its promotion, specifically of the Parker Facility. Elevation Capital's webpage promotes the Parker Facility on a page "written by Ryan Smith" and showing Fund 7's logo. [#53-1 at ¶¶ 10–18]. Elevation Capital's website also hosts the newsletters which intentionally conflate Plaintiffs' and Defendants' background and accolades in the industry, and includes the search-engine-optimization trick to lead investors searching for Plaintiffs, including Colorado resident Dave Reynolds, to the website. [#31 at ¶¶ 46–55].

Elevation also hosts two videos that promote the Parker Facility and another mobile home park in Denver on the video-hosting website Vimeo. [#53-1 at ¶¶ 13, 14].[6]

The Smith Defendants counter that "these webpages and videos have no connection to the plaintiffs at all." [#58 at 8]. The court respectfully disagrees under the facts as presented and the presumptions afforded Plaintiffs. Plaintiffs allege that Elevation Capital's actions are connected to the misappropriation at issue because Fund 7 is the beneficiary of the misappropriated data and Elevation Capital is helping them profit off that data through advertising its operations and assets in Colorado. That is a sufficient to satisfy Plaintiffs' prima facie burden of establishing personal jurisdiction.

Finally, the court considers jurisdiction over MHP Portfolio. MHP Portfolio is the mechanism by which the Smiths manage MHPI Funds I, II, and III alongside co-manager RV Horizons. [#31 at ¶ 37]. Its connection to the Defendants is clear, but its relation to the tortious conduct at issue is less so given the limited number of allegations specific to MHP Portfolio. The only allegation made in the Complaint or adduced elsewhere is that Ryan Smith used Plaintiffs' confidential investor lists and contact information to solicit investors for Fund 7 from MHPI III and IV investors in a letter "signed on behalf of MHP Portfolio as a Manager of MHPI III and IV." [*Id.* at ¶ 71]. But MHP Portfolio is not the vehicle through which Mr. Smith has an interest in and manages MHPI IV—that would be Salvo Conducto. [*Id.* at ¶¶ 37, 71].

In opposing the Smith Defendants' Motion to Dismiss, Plaintiffs point to other actions taken by MHP but the court finds these to be inapposite to the consideration of its specific jurisdiction. [#53 at 11–12]. The court cannot see the relevance of Fund 7's Colorado investors

---

[6] Only one of the provided links works, but the court again affords the Plaintiffs the reasonable inference that the missing video exists as described.

to the assertion of personal jurisdiction over MHP Portfolio, nor does the court find that MHP's involvement with the Berthoud property discussed above is relevant without some basis to find that the Berthoud property or its management is related to the factual basis for this litigation. Plaintiffs state that there are "ample Colorado contacts relating to the mobile home community business which underlies Plaintiffs' claims," but that is not the standard. [*Id.* at 12]. The assertion of specific personal jurisdiction must be based on a defendant's particular contacts with the forum that form the basis for the litigation; unrelated contacts that unavoidably happen to be in the same industry are simply not relevant. *See AST Sports*, 514 F.3d at 1057.

The court therefore proceeds only considering the Smith letter discussed above. The court finds this to be insufficient. The letter was sent to MHPI III and MHPI IV investors and, presumably, did not require Mr. Smith to misappropriate any data from Plaintiffs' Infusionsoft database as he would have access to those investor lists because he co-managed those LLCs. Indeed, Plaintiffs do not allege that the Infusionsoft database holds the MHPI investor lists. [#31 at ¶ 64]. The essence of Plaintiffs' misappropriation theory rests on the Smith Defendants' alleged misappropriation of proprietary information from Fund 1 and Fund 2, but the letter described above appears to have little relevance to this issue.

On its own merits, the letter shows neither purposeful availment of the forum nor an effect intentionally directed towards the forum with the knowledge that its effects would be felt therein. *Dudnikov*, 514 F.3d at 1072. The court does not even have sufficient information before it to determine if the letter was written during the allegedly tortious conduct that underpins this action— Plaintiffs allege that the letter was discovered on March 17, 2018 but do not specify when the letter was dated and sent despite such information almost assuredly being available. [#31 at ¶ 71]. Plaintiffs do not allege the citizenship of the MHPI Funds—the entities most directly affected by

the letter—but given that they do not argue that the Funds are Colorado residents in the Response, it is fair to assume at this stage that neither MHPI III nor MHPI IV is a Colorado entity. The co-manager of these funds, RV Horizons, is a Colorado corporation, but it was not directly affected by the Smith letter's solicitation; that would be Fund 1 and Fund 2, both of which are Delaware companies. [*Id.* at ¶¶ 5, 6, 8]. MHC America Class C, LLC ("Class C") and MHC America 2 Class B, LLC ("Class B") are Colorado LLCs, but although these entities likely have some relevance to the MHC America Funds, Plaintiffs do not elaborate and the court cannot connect dots for Plaintiffs.[7]

Simply stated, the letter, and any harm it may have caused, does not have a sufficient nexus the circumstances underlying this action to confer specific jurisdiction over MHP Portfolio. And there is no argument made, nor is one apparent to the court, how the letter could manifest either MHP's purposeful availment of the forum or a *Calder* effect targeted at the forum. The court is left without a basis to exercise personal jurisdiction over MHP Portfolio, and therefore the Smith Defendants' Motion to Dismiss is granted solely as to this defendant.

***Venue is Proper and the Exercise of Personal Jurisdiction does not Offend Traditional Notions of Fair Play and Substantial Justice.*** The Smith Defendants assert the venue argument on the same basis as the personal jurisdiction arguments discussed above, and the court rejects these arguments for the reasons discussed above. [#36 at 10–11]. (The court has already determined that the court lacks personal jurisdiction over MHP Portfolio, and so this venue analysis is not concerned with that defendant.) Although the court is not obliged to analyze an issue not independently asserted, the second-prong of the personal jurisdiction analysis is closely linked in

---

[7] As mentioned, the court is left entirely uncertain about what Class B and Class C are and what relevance these entities have to the litigation.

substance and the court finds that venue is proper for largely the same reasons that it finds the exercise of personal jurisdiction proper.

Analyzing whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice "requires a case-specific inquiry into the reasonableness of the exercise of personal jurisdiction over a defendant who has minimum contacts with the forum state." *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1292 (10th Cir. 2007). The court weighs five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Id.* (quoting *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1249 (10th Cir. 2000)). The court finds these factors weigh in favor of exercising jurisdiction.

First, the burden on the defendants attributable to litigating in Colorado is light. Courts have long noted that modern telecommunication and travel infrastructure mitigate the burden in litigating in a distant, even foreign, forum. *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1280 (10th Cir. 2005) (France); *First Am. Mortg., Inc. v. First Home Builders of Fla.*, No. 10-CV-0824-RBJ-MEH, 2011 WL 4963924, at *3 (D. Colo. Oct. 14, 2011) (Florida); *Media Res., Inc. v. Global Paper 3834875 Canada, Inc.*, No. CIV-05-1038-C, 2006 WL 8436512, at *4 (W.D. Okla. May 12, 2006) (Canada). The court is aware that the Smiths will incur additional expense and effort in maintaining litigation in Colorado, and to the end the court has permitted the Smith Defendants' counsel to appear by telephone for the scheduling conference. [#48]. Upon proper motion, the court will be inclined to permit telephonic appearances for out-of-state counsel as is

the court's usual practice. This factor "is of primary concern" and the court finds it clearly weighs in favor of asserting jurisdiction.

Second, the court finds that Colorado has a legitimate interest in resolving the dispute. The parties in this case and the assets at issue sprawl across the country, but several of the injured parties are Colorado residents and Plaintiffs seek to enforce Colorado consumer protection laws, and so the court finds this factor weighs in favor of jurisdiction. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors.").

Third, the Plaintiffs have an interest in convenient and effective relief, which "evaluates whether the plaintiff may receive convenient and effective relief in another forum." *TH Agriculture*, 488 F.3d at 1294. Just as Defendants are not unduly burdened by litigating in Colorado, the court finds that Plaintiffs would not be unduly burdened by litigating in Florida. The court finds this factor is neutral, or perhaps weighs slightly in favor of Defendants. This factor applies mainly when "a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." *Id.* (quoting *OMI Holdings*, 149 F.3d at 1097). No party argues that is the case here.

Fourth, the court analyzes whether the forum state is the most efficient place to litigate the dispute. "Key to this inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *OMI Holdings*, 149 F.3d at 1097. The Smith Defendants make a cursory argument on this point, and there is little before the court at this juncture to permit any

meaningful analysis as to where the witnesses and evidence is this case are physically located. [#36 at 10]. The Scheduling Order identifies individuals the parties intend to depose, but these are mainly yet-to-be-designated Rule 30(b)(6) representatives of the various corporate entities. [#49 at 12–13]. Upon the facts presented to the court, this factor is neutral.

Finally, the court considers the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies. This analysis "focuses on whether the exercise of personal jurisdiction by [forum state] affects the substantive social policy interests of other states or foreign nations." *OMI Holdings*, 149 F.3d at 1097. No party argues this factor is at issue, and the court does not find that Florida's or any other states' interests are discernably affected. Accordingly, this factor weighs in favor of jurisdiction insofar as it does not weigh against it.

In sum, the court finds that the exercise of jurisdiction over the Smith Defendants (less MHP Portfolio) does not offend traditional notions of fair play and substantial justice and further the court finds that the Smith Defendants' venue challenge under Rule 12(b)(3) fails.

**B.** **Whether the First Amended Complaint States a Claim Against the Remaining Smith Defendants**

The remaining Smith Defendants move to dismiss the First Amended Complaint because it constitutes "shotgun pleading," where each count merely incorporates all prior allegations into it and makes it difficult or impossible for a defendant to untangle which facts support which claims. [#36 at 11–12]. The Smith Defendants further argue that each of the counts in the Amended Complaint omit critical information and thus fail to state a plausible claim for relief. Upon review

of the First Amended Complaint, the court finds that it is fatally deficient in several material respects, and the court therefore grants the Smith Defendants' Motion in part as discussed below.[8]

***Counts I and II.*** Count I of the First Amended Complaint asserts a claim for trademark infringement under 15 U.S.C. § 1125(a)(1)(A) against all Defendants. [#31 at ¶¶ 93–100]. The Amended Complaint alleges that Plaintiffs have trademarks in their "names and logos" and Defendants' have engaged in unauthorized use of those trademarks in a manner that is material and likely to cause confusion. [*Id.*]. This count incorporates all prior paragraphs into it. [*Id.* at ¶ 93]. Count II asserts a claim for unfair competition under § 1125, again asserting trademarks in Plaintiffs' names and logos which Defendants' conduct infringed upon. [*Id.* at ¶¶ 101–109]. This count also incorporates "the preceding paragraphs." [*Id.* at ¶ 101].

The Smith Defendants ask the obvious question posed by the First Amended Complaint— what trademarks are at issue and what conduct is alleged to have violated those trademarks? [#36 at 12]. Plaintiffs do not describe their trademarks, do not specify which marks are at issue, and offer no timeframe. Plaintiffs also offer no specific factual support for this claim beyond the incorporation of all preceding paragraphs. [*Id.* at 12–13]. The Smith Defendants consider this a "threadbare recital[] of the elements of [the] cause of action." [#58 at 9].

Plaintiffs counter that they have protectable marks in their names which, although unregistered, enjoy protection nonetheless. [#53 at 16]. Much of Plaintiffs' Response is concerned with the substance of whether their trade names qualify for protection under the Lanham Act. [*Id.* at 16–18]. As the Smith Defendants do not directly challenge this element of Plaintiffs' Complaint, the court finds it unnecessary to address. In their Response, Plaintiffs offer a much clearer

---

[8] Argument relating to MHP Portfolio is disregarded as moot as the court has already determined it lacks jurisdiction over that party.

explanation of which Defendants engaged in which specific facts—notably dropping Counts I and II as alleged against MHP—but that information remains omitted from the critical document—the First Amended Complaint.  [*Id.* at 18–20].  And it is well-settled that Plaintiffs may not amend their operative pleading through a Response.  *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (finding that a plaintiff may not further amend a Complaint by alleging new facts in response to a motion to dismiss).  The First Amended Complaint is thus deficient as presented to the court.

Based on the First Amended Complaint as pled, this court concludes that Counts I and II fail to state a claim.  First, the court find that Plaintiffs' assertion of Counts I and II against all Defendants without any attempt to break down which Defendant engaged in what conduct is insufficient to overcome a challenge brought pursuant to Fed. R. Civ. P. 12(b)(6).  Indeed, it is telling that Plaintiffs voluntarily dismiss Counts I and II against MHP in their Response as there are no allegations that MHP misappropriated any of Plaintiffs' marks.  Further, Counts I and II are clear that Plaintiffs are alleging that Defendants used Plaintiffs' "names *and logos*."  [#31 at ¶¶ 94, 102].  Yet the First Amended Complaint (and Plaintiffs' Response) are entirely bereft of factual allegations regarding which logos are at issue or how or when the remaining Smith Defendants used such marks.  A plausible claim for relief for misappropriating a trademark must allege sufficient facts for the defendants and the court to identify the mark at issue and at least some instances of misuse.  The court finds that Counts I and II fail to state a claim as alleged, and therefore grants the Smith Defendants' Motion to Dismiss as to these claims.  Given the relief provided by this Order, the court finds it unnecessary to consider whether Plaintiffs' names are "descriptive with a secondary meaning" as alleged.

*Counts III and IV.* Counts III and IV of the First Amended Complaint allege that Fund 7, Ryan Smith, and Jamie Smith misappropriated trade secrets in violation of 18 U.S.C. § 1836 (the "Defend Trade Secrets Act" or "DTSA") and the Colorado Uniform Trade Secrets Act ("CUTSA") respectively. [#31 at ¶¶ 110–117]. These counts contain no separate factual allegations themselves, but rather incorporate all preceding paragraphs. [*Id.* at ¶¶ 114, 118].

The remaining Smith Defendants allege that Plaintiffs have failed to allege all elements of a trade secret misappropriation claim. [#36 at 14]. All Plaintiffs assert these Counts, but the First Amended Complaint only plausibly refers to trade secrets owned by RV Horizons and Niche. [*Id.*]. The Smith Defendants take issue with Plaintiffs' failure to specify what the trade secrets precisely are—and argue that the boot camp materials from 2008 are in any event outside the statute of limitations. [*Id.*]. The Smith Defendants further contend that the investor lists cannot constitute trade secrets because those are simply amalgamations of publicly available data and the failure to identify the trade secrets at issue or the timeframe of the misappropriation fatally undermines Counts III and IV because it leaves Defendants unable to determine if any other time-based defense such as the statute of limitations, laches, or waiver, apply. [*Id.* at 15–16].

Plaintiffs' Response centers on Plaintiffs' argument that the investor lists and turnarounds constitute trade secrets, and that Counts III and IV are necessarily timely because the Amended Complaint alleges ongoing breaches. [#53 at 20–23]. This court respectfully agrees, and finds that Counts III and IV state a claim.

Investor lists can, in some instances, constitute trade secrets. *Hertz v. Luzenac Grp.*, 576 F.3d 1103, 1114 (10th Cir. 2009) (customer list can be trade secret under CUTSA). Whether the information in the investor lists constitutes a trade secret is a mixed question of law and fact and, with the inferences afforded Plaintiffs at this stage of the litigation, the court finds that the First

Amended Complaint plausibly alleges that the investor lists and turnarounds constitute trade secrets, and that Ryan and Jamie Smith and Fund 7 misused such information. *See id.* The Smith Defendants' Motion is denied as to Count III and Count IV of the First Amended Complaint, but in so ruling, this court does not pass on whether Plaintiffs will ultimately have sufficient evidence to survive summary judgment and/or prevail on the merits.

*Count V.* Count V of the First Amended Complaint is for violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq.*, asserted against all Defendants, premised on Defendants' unfair or deceptive trade practices. [#31 at ¶¶ 118–121]. To prevail on an unfair trade practices claim under the CCPA, a plaintiff must prove: (1) the defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1259 (D. Colo. 2014) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). Courts in this District evaluating claims under the CCPA apply the heightened pleading standards of Rule 9(b). *See, e.g.*, *Adams v. FedEx Ground Package Sys., Inc.*, No. 11-CV-02333-LTB-CBS, 2013 WL 1164426, at *6 (D. Colo. Mar. 1, 2013); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985).

The remaining Smith Defendants argue that Count V fails to state a claim because the First Amended Complaint fails to allege that there was a significant impact on the public as required to state a claim for a violation of the CCPA, and is not pleaded with particularity under Federal Rule of Civil Procedure 9(b). [#36 at 16–17]. Plaintiffs do not dispute that "most" courts apply Rule 9(b) to CCPA claims, but maintains that the First Amended Complaint passes muster regardless.

[#53 at 24 n.11]. The Response also seeks to clarify which Plaintiffs are bringing this claim, but unfortunately confuses rather than clarifies the matter. The Amended Complaint states that "RV Horizons, Fund 1, Class C, Fund 2, and Class B" bring assert this count against "all defendants." [#31 at 24]. But in the Response, Plaintiffs state "Class C, Fund 2, and Class B are the plaintiffs bringing this claim." [#53 at 24 n.12]. Plaintiffs go on to argue that the deceptive trade practices had a significant public impact because allegations that the remaining Smith Defendants marketed Fund 7 to Fund 1 and Fund 2's investors constitute a sufficient "public impact." [*Id.* at 25–26]. The court will first consider the threshold matter of what pleading standard applies and then turn to whether Plaintiffs have alleged a sufficient public impact.

When a plaintiff alleges fraud or mistake, Rule 9(b) requires that the plaintiff "state with particularity the circumstances constituting fraud or mistake." The rule's purpose is to "to afford [the] defendant fair notice" of a plaintiff's claims and the factual grounds supporting those claims, *George v. Urban Settlement Svcs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (quoting *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997)), such that the defendant is provided the "minimum degree of detail necessary to begin a competent defense." *Fulghum v. Embarq Corp.*, 785 F.3d 395, 416 (10th Cir. 2015). Rule 9(b) does not require any particularity in connection with an averment of intent, knowledge or condition of mind, rather it simply refers to only the requirement that a plaintiff identify the circumstances constituting fraud. *Schwartz*, 124 F.3d at 1252. The Complaint is to be read as a whole and not in piecemeal fashion for this analysis. *Id.*

Rule 9(b) and its heightened pleading standards apply to Count V. The CCPA is designed to protect consumers from fraudulent business practices, and Rule 9(b) is specifically aimed at allegations of fraud. Like the other courts in this District, the court concurs that Rule 9(b) applies

to a claim under the CCPA.  *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011); *Cavitat Med. Techs., Inc. v. Aetna, Inc.*, No. 04-CV-01849-MSK-OES, 2006 WL 218018, at *3 (D. Colo. Jan. 27, 2006).  Applying these standards, the court finds that Count V—although its factual basis could certainly be set forth more clearly—meets this heightened standard as applied to the remaining Smith Defendants.  The Amended Complaint sets forth with particularity the circumstances of the remaining Smith Defendants' misrepresentations. Because the court is proceeding under Rule 12(b)(6) and thus is only concerned with the adequacy of the Complaint, the court disregards the Plaintiffs' inconsistent identification of which Plaintiffs bring Count V against the Defendants.[9]  Upon review of solely the Amended Complaint, the court finds that it specifically identifies Elevation Capital's newsletters and website, Jamie Smith's book, Mr. Smith's solicitation of Fund 7 investors, and the source of Plaintiffs' business secrets and investor lists—the Infusionsoft database.  [#31 at ¶¶ 43–45, 46–55, 63–69].  Although these are not specifically the basis for Count V, rather Count V simply incorporates all preceding paragraphs, the court finds that the Amended Complaint, when read as a whole, "adequately set[s] forth the time and place of [the] alleged unfair or deceptive trade practices."  *HealthONE*, 805 F. Supp. 2d at 1121.  The court next turns to the question of whether Count V adequately alleges a public impact.

To state a claim under the CCPA, the alleged deceptive practice must have had a significant public impact.  *Hall*, 969 P.2d at 235.  The Colorado Supreme Court has provided three factors for a court to consider in evaluating whether the defendant's conduct had a significant public impact: "(1) the number of consumers directly affected by the challenged practice, (2) the relative

---

[9] Nevertheless, this court will order Plaintiffs to file a Second Amended Complaint reflecting the correct Plaintiffs and other amendments required by this court's ruling herein.

sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 149 (Colo. 2003); *see also Alpine Bank v. Hubbell*, 555 F.3d 1097, 1113 (10th Cir. 2009) (same). Plaintiffs argue that allegations establishing that Defendants marketed to Colorado residents are sufficient without more, while the remaining Smith Defendants maintain that is inadequate without a further showing on the *Rhino Linings* factors. [#53 at 25–26; #58 at 13].

The CCPA's public impact requirement is designed to distinguish between public and private wrongs, the CCPA only providing a remedy for the former. *Rhino Linings*, 62 P.3d at 149; *see also Sewell v. Great N. Ins. Co.*, 535 F.3d 1166, 1174 (10th Cir. 2008). Courts have found that an alleged wrong was merely private when the affected parties were only a small, discrete set of individuals. *See, e.g.*, *Sewell*, 535 F.3d at 1174 (two individuals and possibly an estate); *Alpine Bank*, 555 F.3d at 1113 (representations were made to a larger set of individuals but there was no evidence that anyone but plaintiffs were actually harmed/affected by the misconduct); *Tara Woods Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1123 (D. Colo. 2010) (only the plaintiff). By contrast, when the alleged misconduct impacts a large or indefinite group of individuals, that is a sufficient public impact. *Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1063 (D. Colo. 2012) (plaintiff stated a claim under CCPA because "there [was] a consumer market" exposed to the alleged misconduct); *HealthOne*, 805 F. Supp. 2d at 1122 (plaintiff stated a claim because the "misrepresentations were directed to the market generally, and were not merely a private wrong."); *Loughridge v. Goodyear Tire & Rubber Co.*, 192 F. Supp. 2d 1175, 1185 (D. Colo. 2002) (finding a public impact when "a large number of consumers in Colorado were directly affected by the

challenged practice"). At the 12(b)(6) stage, the court accepts Plaintiff's factual averment that a group of people exposed to the deceptive practice were in fact impacted by the practice; determinations to the contrary along the lines of *Alpine Bank* are issues for summary judgment or a jury.

Plaintiffs' allegations in the First Amended Complaint center on Defendants' solicitation to existing investors in the MHPI funds as well as to the general public. [#31 at ¶¶ 41–42, 46–55, 71, 77–78]. The court has little trouble—at this stage—determining that Defendants' alleged misconduct was aimed at the public such that, assuming Plaintiffs' factual allegations, the Defendants' conduct resulted in a significant public impact. The court finds that Count V states a claim, and the Smith Defendants' Motion is denied as to Count V.

**Count VI.** Count VI of the First Amended Complaint is for tortious interference with business relations, asserted against Fund 7, Ryan Smith, and Jamie Smith. [*Id.* at ¶¶ 122–26]. Plaintiffs alleges that these defendants interfered with Fund 1 and Fund 2's business relations by making misleading representations regarding their affiliation with Plaintiffs to putative investors and diverting those investors to Fund 7 instead of Funds 1 and 2. [*Id.*].

The Smiths argue that plaintiffs fail to state a claim because tortious interference under Colorado law requires either a valid contract or a reasonable expectation of a future contractual relationship. [#36 at 18]. Plaintiffs fail to state a claim because they do not allege that the Smiths succeeded in enticing investors in whom Plaintiffs had an expectation of a future contractual relationship. [*Id.* at 18–19]. The Smiths also argue that this claim is preempted by CUTSA. [*Id.*] Finally, Plaintiffs fail to allege any harm to entities other than Funds 1 and 2, the entities Plaintiffs believe would have received the investors instead diverted to Fund 7, yet other Plaintiffs without

any clear or enumerated damage or interest are joined, specifically RV Horizons, Class C, and Class B. [*Id.* at 19].

Plaintiffs counter that diverting investors from Funds 1 and 2 constitutes tortious interferences because all that the claim requires is a "reasonable likelihood or reasonable probability that a contract would have resulted." [#53 at 26–27]. Further, this claim is not preempted by CUTSA because "the claim is premised on tangible customer lists stored in Infusionsoft." [*Id.* at 27 n.13]. The Smiths counter that Plaintiffs have still failed to allege causation—that the Smiths' use of the investor lists actually deprived Fund 1 or Fund 2 of any investors. [#58 at 14]. The court begins by narrowing the parties at issue, then considers whether CUTSA preempts the claim. The court concludes that this claim is preempted and therefore does not consider whether Plaintiffs have adequately alleged the elements of the substantive claim.

First, the court notes that this claim is brought by Fund 1 and Fund 2 in addition to Class B and Class C. This court has previously noted that Class B and Class C, despite being joined as Plaintiffs, are not actually mentioned in the Amended Complaint aside from a reference to their residences and the counts themselves. [#31 at ¶¶ 7, 93–130]. Plaintiffs provide no factual allegations in the First Amended Complaint to establish how Class B and Class C are related to Fund 1 and Fund 2. As it stands, the First Amended Complaint provides no basis for the court to conclude that Class B and Class C suffered any harm, and therefore Count VI does not state a claim as asserted by those entities.[10] The court finds that the Smith Defendants' contention that

_____

[10] This same logic, of course, applies to all the other counts asserted by these parties. But Defendants only challenge their inclusion here (and later in Count VII), and the court declines to *sua sponte* dismiss these entities entirely because there are likely proper parties in substance, just not as pleaded.

RV Horizons suffered no damage to be irrelevant as RV Horizons does not join in Count VI. The court now turns to the preemption issue.

CUTSA contains a statutory provision governing preemption. Colo. Rev. Stat. § 7-74-108 provides that CUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." Courts have held that a CUTSA claim preempts a tortious inference claim under section 108 when the "improper means" used in the torturous inference claim refers solely to the theft and use of trade secrets—i.e., the CUTSA violation. *See Powell Prods., Inc. v. Marks*, 948 F. Supp. 1469, 1474–75 (D. Colo. 1996). But courts have also cautioned that the reach of section 108 is "necessarily narrow," *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1087 (D. Colo. 2012), and "[i]t is neither necessary nor prudent to preclude all common law claims that are connected with the misappropriation of what a plaintiff claims are trade secrets." *Powell Prods.*, 948 F. Supp. at 1474.

Plaintiffs allege that Fund 7 and the Smiths interfered with their business relations by "us[ing] . . . [Plaintiffs'] current and prospective investor lists to induce investors to invest with Defendants." [#31 at ¶ 124]. Plaintiffs' CUTSA theory is based on the misappropriation of trade secrets and while that section of the Amended Complaint does not identify the specific trade secrets at issue, the investor lists appear under the heading "RV Horizons'[s] Trade Secrets" elsewhere in the Complaint. [*Id.* at ¶¶ 63–69, 116]. In their Response, Plaintiffs argue that the tortious interference claim is not preempted because "the claim is premised on tangible customer lists stored in Infusionsoft." [#27 at n.13]. This court fails to see how the distinction between how the lists are stored and the information allegedly misappropriated is material to its analysis.

Plaintiffs cite *L-3* and *Powell Products* in support, but neither are helpful to Plaintiffs. In *L-3*, the court found CUTSA did not preempt an unjust enrichment claim under section 108 because

"L3 has alleged numerous ways in which the Defendants were unjustly enriched by events that do not involve any trade secrets of L3." *L-3*, 863 F. Supp. 2d at 1087. That is not the case here where the Amended Complaint does not allege any way in which the Smiths and Fund 7 interfered with Plaintiffs' business relations apart from the CUTSA violation. Similarly, *Powell Products* held that conversion of trade secret drawings was not preempted by CUTSA insofar as that claim "seeks recovery of the physical items stolen, including blueprints and drawings, which would not be the subject of a misappropriation claim under the [C]UTSA." *Powell Prods.*, 948 F. Supp. at 1475. But otherwise the conversion claim was preempted. *See id.* Plaintiffs do not seek similarly categorically different relief here—there are no tangible objects to replevy—and so the court finds that *Powell Products* provides no help to Plaintiffs. The court thus concludes that the tortious interference claim is based solely on the use of the investor lists taken from Plaintiffs' Infusionsoft database. As such, it is indistinguishable from, and preempted by, CUTSA.

Because the court has determined that this claim is preempted as pleaded, the court need not address the issue of whether Plaintiffs could have had a reasonable expectation of a future contractual relationship in a group of potential investors generally as opposed to a discrete, known individual or set thereof.

***Count VII.*** Count VII of the First Amended Complaint is for unjust enrichment and is asserted against all Defendants. [*Id.* at ¶¶ 127–30]. This claim is based on the Defendants' profiting off Plaintiffs' goodwill, boot camp materials, and investor lists. [*Id.*]. This claim is brought on behalf of RV Horizons, Fund 1, Class C, Fund 2, and Class B. [*Id.*]. The remaining Smith Defendants argue that Count VII fails to state a claim because Plaintiffs' claim for unjust enrichment is preempted by their Lanham Act, DTSA, and CUSTA claims and further because

Plaintiffs neither identify the benefit conferred, nor do they identify any nexus to Class B or Class C. [#36 at 19–20].

Plaintiffs claim that the First Amended Complaint meets the requirements to state a claim for unjust enrichment as the Amended Complaint clearly sets forth numerous benefits accruing to Defendants. [#53 at 27–28]. Plaintiffs do not address the lack of factual allegations regarding Class B and C, nor do they respond to the preemption argument beyond restating the same argument made in response to Count VI [#53 at 28 n.14], and the Smith Defendants do not address the issue in the Reply. [#58 at 14].

Unjust enrichment is a doctrine that allows a party who has suffered a harm to "waive" a traditional tort claim and instead bring a claim based on a fictitious, implied-in-law contract to receive compensation for a benefit unwillingly or unwittingly provided. *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 n.8 (Colo. 2008); Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (2011). To state a claim for unjust enrichment, a plaintiff must allege facts demonstrating that defendant received a benefit at plaintiff's expense and that it would be inequitable for the defendant to retrain that benefit without compensating plaintiff. *DCB Const. Co. v. Cent. City Dev. Co.*, 965 P.2d 115, 119 (Colo. 1998). The court has already discussed the issues in the First Amended Complaint as to Class B and Class C, and so its analysis will focus on preemption and adequacy of the allegations.

The court has also already discussed the principles of preemption under section 108 and will not repeat itself here. The court finds that, given the narrowness of the preemption under section 108 as discussed in *Powell Products*, the unjust enrichment claim here is not preempted. *Powell Prods.*, 948 F. Supp. at 1474. *L-3* is directly on point and rejected application of section 108 to preempt a claim of unjust enrichment. *L-3*, 863 F. Supp. 2d at 1087. Like the *L-3* court,

the court finds that Plaintiffs have "alleged numerous ways in which the Defendants were unjustly enriched by events that do not involve any trade secrets." *Id.* Specifically, the court finds that the allegations in the First Amended Complaint centered on Defendants' misappropriation of the goodwill through Elevation Capital's misleading website, brochures, and videos do not involve allegations of trade secret misappropriation.[11] [#31 at ¶¶ 46–55, 71, 75–76, 79–91, 128–29].

Further, Count VII is based in part on the benefit conferred by the misappropriation of trade secrets, but Count VII is not preempted to any degree because the unjust enrichment claim does not depend on an antecedent finding that the items at issue are trade secrets. *See Powell Prods.*, 948 F. Supp. at 1474 ("Often, a plaintiff will be able to state claims that do not depend upon the information in question qualifying as trade secrets . . . . Defendants could be liable for interference with business relations even if they did not misappropriate any trade secrets from plaintiff."). A central claim of the Smith Defendants' Motion to Dismiss is that the investor lists and boot camp materials do not qualify as trade secrets because the information is publicly available. [#36 at 15]. The Smith Defendants argue that Count VII "depends solely on a finding of protectable trade secrets or trademarks" but the court does not agree; the objects at issue have value independent of their status as a trade secret under CUSTA or DTSA. [*Id.* at 19]. Files from Plaintiffs' Infusionsoft database may have value apart from any trade secret designation it may be possible for the court to hold that such files are not trade secrets but still objects of value transferred from Plaintiffs to Defendants that it would be inequitable for Defendants to retain without payment. The court therefore finds that Count VII is not preempted.

---

[11] At least as currently pleaded. Plaintiffs' failure to specify the marks at issue precludes a finding of preemption at this stage, but the court expresses no opinion as to future preemption arguments when and if the Plaintiffs file an amended complaint setting forth Counts I and II with the requisite particularity.

The court further finds that Count VII states a claim under Rule 12(b)(6). The First Amended Complaint plausibly alleges that Defendants received multiple things of value—investor lists, boot camp materials, the turnarounds, association with RV Horizons's successes—that it would be inequitable for them to retain without payment. *See* Restatement (Third) of Restitution and Unjust Enrichment § 42 & cmt. a. The court therefore finds that this count states a claim and denies the Smith Defendants' Motion in relevant part. The court now turns to Dahn Corporation's Motion to Dismiss.

## II. Dahn Corporation's Motion to Dismiss

Dahn Corporation has moved to dismiss under Rule 12(b)(6). [#38]. Dahn advances several arguments already addressed in substance above and the court need not repeat itself here. For the reasons discussed above, Dahn Corporation's Motion to Dismiss is granted as to Count I (trademark infringement) and Count II (unfair competition). The remainder of Dahn Corporation's Motion to Dismiss is discussed below with reference made to the court's analysis of the Smith Defendants' Motion when possible to minimize unnecessary repetition. For the reasons stated herein, Dahn's Motion to Dismiss is granted in its entirety.

***Count V.*** Count V of the First Amended Complaint alleges a violation of the CCPA. Dahn argues that Count V fails to state a claim because Plaintiffs fail to allege all elements, fail to allege an injury, and fail to plead with particularity. [*Id.* at 8]. Dahn further argues that Plaintiffs fail to allege a public impact and fail to plead with particularity under Rule 9(b). The court has already addressed these latter arguments above, concluding that Plaintiffs do allege a public impact and that Rule 9(b) does apply, the court will therefore focus on the former arguments.[12] The court finds

---

[12] Dahn makes a more detailed argument on the public impact element than the court previously addressed [#38 at 9–12], but the court remains unconvinced on this point. For example, Dahn

that Count V does not meet the heightened pleading requirements of Rule 9(b) as applied to Dahn, and therefore the court grants Dahn's Motion to Dismiss on this point.

The First Amended Complaint addresses Dahn Corporation's involvement in this case only in conjunction with the Smith Defendants. [#31 at ¶¶ 70–92]. Every reference to Dahn's actions is accompanied by references to some or all of the Smith Defendants. [*Id.* at ¶¶ 70, 72, 73, 76, 77, 78, 79, 80, 81, 84, 87, 89, 92]. Dahn argues that this fails to state a claim because the First Amended Complaint does not identify any deceptive trade practices, arguing that this claim is based on trademark infringement and, as discussed, the Amended Complaint does not identify the marks at issue. [#38 at 9]. Further, Plaintiffs have failed to allege that they suffered any injury from Dahn's conduct apart from pleading that Fund 7 has received investors as a result of Defendants' misleading advertising. [*Id.* at 12]. Finally, Dahn argues this claim is not pleaded with particularity as required by Rule 9(b) because Plaintiffs only "vaguely describe" the conduct at issue and do not specifically identify the Defendants making such misrepresentations. [*Id.* at 12–13].

In its Response, Plaintiffs reproduce and restate the relevant factual allegations. [#52 at 2–4]. Upon review, these factual allegations are not new or substantively different from those in the First Amended Complaint, but the court wishes to make clear it is not relying on or considering in any part this part of the Response. In the context of a 12(b)(6) motion, the factual allegations of

---

relies on *Adams v. FedEx Ground Package Sys., Inc.*, 546 F. App'x 772, 776 (10th Cir. 2013) which found that allegations regarding ~3000 injured parties did not constitute plausible allegations of a public impact. [#38 at 11]. The court finds this distinguishable as the *Adams* court was dealing with an employer-employee relationship which does not give rise to a CCPA claim. *Adams*, 546 F. App'x at 776 ("[Plaintiff] alleges she was a consumer who 'bec[a]me an employee under the 'Operation Agreement' (Employment Contract).' But the CCPA does not purport to provide a cause of action for private employment disputes." (internal quotations partially omitted; citation omitted; citing operative complaint)).

the operative Complaint must stand on their own without augmentation or clarifying restatement. *Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015). In substance, the Response mainly focuses on Counts I and II which the court has already addressed. [#52 at 5–11].

In relevant part, Plaintiffs argue that the Amended Complaint plausibly alleges that Dahn has engaged in deceptive or unfair practices under the CCPA by misrepresenting the nature of its affiliation with RV Horizons in the marketing materials for Fund 7. [*Id.* at 12–13]. Further, the Amended Complaint plausibly alleges that the diversion and confusion of investors constitutes a harm to Plaintiffs. [*Id.* at 14–15]. Dahn counters that Plaintiffs do not meet the heightened Rule 9(b) pleading standard as they have merely "lumped Dahn in with the rest of the Defendants." [#59 at 7].

The court agrees that the First Amended Complaint plausibly establishes that Plaintiffs have suffered an injury. Accepting the allegations that the Smith Defendants' actions confused investors and diverted investments from Fund 1 and Fund 2, this resulted in a direct material harm to the Funds sufficient to plausibly state a claim. *See, e.g.*, *Lexton-Ancira Real Estate Fund, 1972 v. Heller*, 826 P.2d 819, 820–21 (Colo. 1992). However, the court finds that as asserted against Dahn, Count V fails to meet the heightened pleading standards of Rule 9(b) and must be dismissed.

Rule 9(b) provides that malice, intent, and other states of mind may be averred generally, but requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir. 1997). This court has previously found that Count V states a claim as to the Smith Defendants because Rule 9(b) is to be read in conjunction with Rule 8, requiring a short and plain statement of the grounds for relief, and in context of the

Complaint as a whole. *Id.* The court found the Amended Complaint just sufficient in this context. But as to Dahn Corporation, the Amended Complaint falls well short of the mark.

Count V, as asserted against Dahn Corporation, is based on the marketing materials used for Fund 7. [#31 at ¶¶ 70–92]. At no point do the Plaintiffs identify the marketing materials, the time such materials were created and published to the public or the specific party responsible for publishing such materials. *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1094 (D. Kan. 2003) ("[W]here fraud is alleged against multiple defendants, blanket allegations of fraud couched in language such as 'by the defendants' are insufficient. Instead, the specifics of the alleged fraudulent activity of each defendant must be set forth."); *Brooks v. Bank of Boulder*, 891 F. Supp. 1469, 1477 (D. Colo. 1995). As the court has noted, all allegations of fact involving Dahn also involve one or more of the Smith Defendants; there are no allegations, general or specific, involving only Dahn. *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (discussing evaluation of claims under Rule 9(b) when asserted against multiple defendants).

The First Amended Complaint does make detailed and specific allegations, but only regarding the Smith Defendants, not Dahn. *E.g.*, [#31 at ¶ 71 (the March 17, 2018 letter by Ryan Smith)]. The Private Placement Memorandum identified in the Amended Complaint is alleged to be misleading, but the parties do not specify how, nor when that Memorandum was published. [*Id.* at ¶ 76]. None of the other considerations the court relied on in deciding the Smith Defendants' Motion as to Count V—Elevation Capital's website, Ryan Smith's letter, *Trailer Cash*, misappropriation of the Infusionsoft Database—apply to Dahn. The factual allegations regarding Dahn are limited to vague references to marketing materials and unsourced quotes. *See, e.g.*, [*Id.* at ¶¶ 80, 83]. This falls short of the Rule 9(b) requirements. Accordingly, Dahn's Motion is granted as to Count V.

***Count VII.*** Dahn has also moved to dismiss the unjust enrichment count asserted against it on the basis that Plaintiffs have not asserted any cognizable claims against Dahn, failed to identify any relevant misconduct, and have failed to assert Dahn has received a benefit at Plaintiff's expense. [#38 at 13]. Plaintiffs counter that the Amended Complaint sets forth benefits—use of the investor lists, trading on Plaintiffs' goodwill—which would be unjust for Dahn to retain without payment. [#52 at 15–16]. The court, given the infirmities discussed above regarding the allegations against Dahn, finds that the First Amended Complaint does not state a claim for unjust enrichment as to Dahn.

Courts have applied Rule 9(b) to unjust enrichment claims when the unjust enrichment is derivative of a deceptive trade practice and/or fraud under the CCPA. *See, e.g.*, *Francis v. Mead Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *3 (D. Colo. Dec. 17, 2010); *Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1184 (D. Colo. 2008). Count VII does not distinguish between Dahn and the Smith Defendants and does not specifically identify its factual predicate, but the only allegations relating to Dahn concern its involvement with the alleged CCPA violation. There is no other plausible interpretation of the Amended Complaint other than that the unjust enrichment claim is predicated on the CCPA claim as alleged against Dahn.[13] Therefore, Rule 9(b) applies and the infirmities discussed above require dismissal.

Dahn's Motion to Dismiss is granted in full.

### III. Leave to File a Second Amended Complaint

Throughout its responses to the Motions to Dismiss, Plaintiffs request leave to file an amended complaint should the motions be granted. *E.g.*, [#52 at 5 n.1]. The court notes that

---

[13] The court notes that it could be misconstruing the Amended Complaint, but that such confusion is the inevitable result of Plaintiffs' ambiguous pleading.

conditional if/then motions are not permitted and further that every such request for relief must be separately made in its own pleading and not folded into a response.  D.C.COLO.LCivR 7.1(d).  To the extent that Plaintiffs seek leave to amend, they should meet and confer with opposing counsel regarding the proposed amendments, proffer a proposed Second Amended Complaint in compliance with D.C.COLO.LCivR 15.1 with the appropriate motion, and so move within fourteen (14) days of this Order.

## IV.     The Florida Case

The Parties have made repeated reference to ongoing litigation in Florida that appears to be related to the present case.  *See, e.g.*, [#36 at 1; #38 at 1, 3].  Local Rule 3.2 requires a party to a case to file a notice identifying all related cases that "have common facts and claims" in addition to at least one party in common.  D.C.COLO.LCivR 3.2(a).  Normally, the absence of a Rule 3.2 notice would indicate that there are no related cases, but the court finds it prudent to not rest on the absence of a notice and instead to require an affirmative showing on this point.  At present, the court is unable to determine whether the Florida case is truly related to the present case or not, and so the court will order the first party to have brought the Florida matter to the court's attention— the Smith Defendants—to file a Notice of Compliance with Local Rule 3.2 either identifying the Florida litigation as a related case or confirming that it is not related.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)     The Smith Defendants' Motion to Dismiss [#36] is **GRANTED IN PART**;

     A.     All counts asserted against defendant MHP Portfolio LLC are **DISMISSED** without prejudice as to that party;

     B.     Count I, Count II, and Count VI are **DISMISSED** without prejudice in their entirety as to the remaining Smith Defendants against whom those claims were asserted;

     C.     Count VI and Count VII are **DISMISSED** insofar as such claims are brought on behalf of Class B and Class C;

(2)     The Smith Defendants' Motion to Dismiss is **DENIED IN ALL OTHER RESPECTS.**

(3)     Dahn Corporation's Motion to Dismiss [#38] is **GRANTED**;

     A.     All counts asserted against Dahn Corporation are **DISMISSED** without prejudice as asserted against Dahn Corporation.

(4)     No later than **March 21, 2019**, Plaintiffs may file an appropriate Motion to Amend as contemplated by this Order; and

(5)     On or before **March 14, 2019**, the Smith Defendants shall file the Notice of Compliance with Local Rule 3.2 identified above.

DATED:  March 7, 2019                                  BY THE COURT:

 

                                            Nina Y. Wang
                                            United States Magistrate Judge