**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02780-NYW

RV HORIZONS, INC.; MHC AMERICA FUND, LLC; MHC AMERICA FUND CLASS C, LLC; MHC AMERICA FUND 2, LLC; MHC AMERICA FUND 2 CLASS B, LLC; MHPS ALUMNI, LLC; MHPS ALUMNI 2, LLC; MHPS ALUMNI 3, LLC; AFFORDABLE HOUSING COMMUNITY FUND 1, LLC; AFFORDABLE HOUSING COMMUNITY FUND 2, LLC; AFFORDABLE HOUSING COMMUNITY FUND 3, LLC; AFFORDABLE HOUSING COMMUNITY FUND 4, LLC; AFFORDABLE HOUSING COMMUNITY FUND 5, LLC; AFFORDABLE HOUSING COMMUNITY FUND 6, LLC; and AWA FUND 3, LLC,

      Plaintiffs,

v.

JAMIE SMITH, an individual; RYAN SMITH, an individual; MHP PORTFOLIO, LLC; MHPI VII, LLC; ELEVATION CAPITAL GROUP, LLC; and DAHN CORPORATION,

      Defendant.

**DAHN CORPORATION'S MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT**

## I.    Introduction

Plaintiffs' Second Amended Complaint does nothing to fix the fatal flaws in their alleged claims against Dahn Corporation ("Dahn"). The only new allegation specific to Dahn is a reference to a link on a Dahn-controlled website entitled "Investor Information" that simply takes the viewer to Elevation's website. Other than that addition, the fact remains that "all allegations of facts involving Dahn also involve one or more of the Smith Defendants; there are no allegations general or specific, involving only Dahn." (Order granting Dahn's Motion to Dismiss Plaintiff's First Amended Complaint, p. 41, ECF. No. 60.)

Dahn highlighted in its prior motion to dismiss that Plaintiffs' claims are part of a transparent effort to harass Dahn and the other Defendants in this suit by attempting to damage their reputation in retaliation for a previously-filed Florida case that does not involve Dahn. Nothing in the Second Amended Complaint changes that fact. Instead, the new allegations in the Second Amended Complaint – which amount to simply referencing a non-descript link on a website – only further confirm that Dahn is not and should not be a part of this case. An innocuous link titled "Investor Information", buried at the bottom of a website for storage units, is woefully insufficient to be the sole basis for dragging Dahn into this multi-jurisdictional fight between Plaintiffs and the Smith Defendants.

Not only do Plaintiffs fail – for a second time – to include allegations specifically against Dahn, but the Second Amended Complaint also makes clear this is not a trademark infringement or unfair competition case. Plaintiffs' First Amended Complaint failed because it did not adequately allege sufficient operative facts. The Second Amended Complaint fails because the facts alleged demonstrate this is not (despite Plaintiffs' attempting to conclude otherwise) a case involving customer confusion as to the source or origin of the goods and services at issue. Instead, Plaintiffs (realizing that they do not have a non-compete provision with the Smiths) are trying to use the Lanham Act and unfair competition claims to create a *de-facto* non-compete provision. Plaintiffs' Complaint, however, glosses over – and fails to allege facts establishing – a key element in trademark actions, which is confusion regarding **the source** of the goods and services.

The alleged infringing material (i.e., the Offering Package) makes clear the Smith Defendants were not using the Plaintiffs' alleged marks as a source identifier, but instead were referring to the Plaintiffs – as separate and distinct entities – in connection with the Smiths' prior

2

49921899.1

experience in the mobile home community ("MHC") market. Plaintiffs may dispute the scope and extent of that experience, but that is not the same issue as whether the Defendants used Plaintiffs' alleged marks in a way that could cause confusion regarding source. The Court only need to look at the various disclaimers and descriptions in the Offering Package to conclude that Plaintiffs' alleged marks were not used by Defendants as marks.

Therefore, the Court should reaffirm its prior ruling, dismiss Dahn from this baseless action against it, and award Dahn its Court costs and attorneys' fees.

## II. Procedural Background

Plaintiffs filed their Second Amended Complaint after the Court granted in part both Dahn's and the Smith Defendants' Motions to Dismiss. The Federal Trademark Infringement (Claim 1) and Federal Unfair Competition claims (Claim 2) were dismissed against all Defendants because Plaintiffs' Complaint was "entirely bereft of factual allegations regarding which logos are at issue or how or when the [Defendants] used such marks." Order, ECF No. 60, p. 26. The Court further noted that "Plaintiffs' assertion of Counts I and II against all Defendants without any attempt to break down which Defendant engaged in what conduct is insufficient to overcome a challenge brought pursuant to Fed. R. Civ. P. 12(b)(6)." *Id.*

The Court also dismissed Plaintiffs' claims for violation of the Colorado Consumer Protection Act ("CCPA") (Claim 5) and unjust enrichment (Claim 9) against Dahn. The Court dismissed those claims because "Plaintiffs have failed to allege that they suffered any injury from Dahn's conduct apart from pleading that Fund 7 has received investors as a result of Defendants' misleading advertisement" and the "factual allegations regarding Dahn are limited to vague

references to marketing materials and unsourced quotes." *Id.* at 39, 41. The amendments and changes in the Second Amended Complaint do not fix any of these deficiencies.

The Second Amended Complaint includes 101 General Allegations, but only four of those allegations specifically pertain to Dahn. All other references to Dahn, as before, merely attempt to lump Dahn's alleged conduct in with the other Defendants. The four Dahn allegations are:

> ¶ 97 – "Dahn's website (which, upon information and belief, is controlled by Brian Dahn) includes an "Investor Information" link, which takes current or potential investors directly to the shared Fund 7 and Elevation Capital Group webpage where the Fund 7 prospectus is available for download, which includes the Offering Package materials. *See* About Dahn Corporation, available at https://www.miniustorage.com/about-dahn-corporation/ (last visited March 16, 2019). Dahn has therefore published the Offering Package—which explicitly and without authorization uses the trademarks for RV Horizons, Alumni 1-3, AHCF 1-6, AWA, and Fund 1—to potential and current investors.

> ¶ 105 – The Private Placement Memorandum contains multiple pages dedicated to touting Dahn's business history (none of which includes manufactured housing community investment or management).

> ¶ 106 – The Private Placement Memorandum explains that Fund 7 "will enter into a property management agreement with Dahn . . . to manage the day-to-day operations of [Fund 7's] storage facilities and mobile home parks." Id. at 033. But Dahn has no experience in managing "the day-to-day operations of . . . mobile home parks." *Id.* Fund 7 intends to pay Dahn to manage its mobile home parks.

> ¶ 109 – In fact, Dahn has zero property management experience for manufactured housing communities, and the property management history and success for manufactured housing communities as listed in the Offering Package belongs to RV Horizons. Potential investors will be misled into thinking that, because Dahn is going to serve as the manufactured housing property manager for Fund 7, that is the entity with the advertised expansive manufactured housing property management history.

The remainder of the new allegations referencing Dahn suffer from the same flaw as Plaintiffs' prior Complaint in that they make no attempt to break down which Defendant engaged

4

in what conduct. In other words, in regards to Dahn, Plaintiffs attempt to revive the previously dismissed claims based solely on the fact that a Dahn-controlled website includes a link to Elevation's website. Other than that allegation, all of the alleged wrongful conduct against Dahn is based on the actions of the Smith Defendants, and none of the allegations show that Dahn engaged in actionable conduct specifically leading to Dahn directly receiving benefits.

### III. Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted

Dahn seeks dismissal of all five claims against it under Fed. R. Civ. P. 12(b)(6). That Rule permits a District Court to dismiss a complaint for failure to state a claim upon which relief can be granted if, as here, it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Polyrock Techs., LLC v. Gen. Steel Domestic Sales, LLC*, No. 04-CV-00617-LTB-BNB, 2005 WL 3157971, at *1 (D. Colo. Nov. 18, 2005) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). "In reviewing the sufficiency of the complaint, all well-pled facts, as opposed to conclusory allegations, must be taken as true and all reasonable inferences must be liberally construed in the plaintiff's favor." *Weiszmann v. Kirkland & Ellis,* 732 F. Supp. 1540, 1543 (D. Colo. 1990). A Court may also take into account "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2017) (internal quotations omitted). Applying this standard to Plaintiffs' claims, they should all be dismissed.

#### a. *Plaintiffs fail to state a Lanham Act claim upon which relief can be granted.*

Plaintiffs' Second Amended Complaint asserts three Lanham Act claims against Dahn: trademark infringement (Claim 1), unfair competition (Claim 2), and (a new claim) contributory

trademark infringement (Claim 3). Even assuming Plaintiffs' allegations are true, each of these claims fail as a matter of law. Not only does the Second Amended Complaint fail to allege any facts demonstrating that Dahn used any of Plaintiffs' alleged marks or that Dahn had any control over any of the other Defendants, but even if there were such allegations, the claims still fail because the alleged use does not constitute actionable infringement.

> ***i.*** **Plaintiffs fail to state a claim for trademark infringement under § 1125(a)(1)(A) or § 1125(a)(1)(B) because they fail to establish that Dahn used any of the alleged marks.**

Plaintiffs attempt to revive their trademark infringement claims by actually identifying the alleged marks and providing details regarding the alleged infringing use of those marks. However, these new allegations do not change the fact that **<u>Dahn</u>** has not and **<u>is not using</u>** any of the Plaintiffs alleged marks. At most, Plaintiffs allege that a Dahn-controlled website includes a link – which does not use any of the alleged marks – that takes the viewer to Elevation's website. That link is insufficient as a matter of law to establish a trademark infringement claim against Dahn.

To prevail on a Lanham Act claim under 15 U.S.C. § 1125(a)(1)(A) for infringing an unregistered trademark, a plaintiff must prove three elements: (1) it owns a valid, protectable mark; (2) defendant used a mark in commerce; and (3) defendant's mark is so similar to plaintiff's that it is likely to cause consumer confusion. *Am. Academy of Husband-Coached Childbirth v. Thomas*, No 10-cv-2899-CMA-MEH, 2010 WL 5184779, at *1 (D. Colo. Dec. 15, 2010).

Similarly, a claim under 15 U.S.C. § 1125(a)(1)(B) for unfair competition requires proof of the following four elements:

> (1) that the defendant made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product; (2) in commerce; (3) that are either likely to cause confusion or mistake as to (a)

>  the origin, association or approval of the product with or by another, or (b) the characteristics of the goods or services; and (4) injury to the plaintiff.

*NetQuote, Inc. v. Byrd*, 504 F. Supp. 2d 1126, 1133 (D. Colo. 2007) (quoting *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1140 (10th Cir. 2006)).

Under either claim, Plaintiffs have to establish that Dahn – as opposed to the Smith Defendants – was either using the alleged marks or was otherwise making false or misleading representations in connection with commercial advertising.  The Second Amended Complaint is void of any such allegations regarding Dahn.  Instead, Plaintiffs' attempt to hold Dahn liable for the alleged infringement of Elevation.  A link on a website, however, is insufficient to meet the use requirement under either § 1125(a)(1)(A) or (B).

The Second Amended Complaint alleges the website www.minustorage.com/about-dahn-corporation includes a link titled "Investor Information", which takes potential investors to the Elevation webpage.  The portion of the webpage the Second Amended Complaint refers to is shown below.



Notably, the link itself makes no use of any of Plaintiffs' alleged trademarks, nor does the link itself contain any false or misleading information. And there is no allegation that Dahn makes use of Plaintiffs' alleged trademarks anywhere else on the website. Instead, the link takes the viewer to Elevation's website. Even if Elevation's website contained infringing material (which it does not), that would still not substantiate a direct infringement claim against Dahn because Dahn itself is not using any of the alleged trademarks in commerce. *See Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, 430 F.Supp.2d 709, 713 (S.D. Ohio 2006) (dismissing direct infringement claim against one co-defendant where the only allegations of use where against the other co-defendant because "[b]efore a person can be held liable for direct trademark infringement, they must have *used* a mark confusingly similar to another person's mark" (emphasis in original)). Under Plaintiffs' theory, anytime a website contains a link to another website (e.g., a list of Google

8

search results) the owner can be held liable on a direct infringement claim if any of those links lead to other webpages that contain infringing material. There is no law to support such an expansive application of the Lanham Act.

> ii. **Plaintiffs further fail to state a claim for trademark infringement under § 1125(a)(1)(A) or § 1125(a)(1)(B) because the alleged use is not actionable infringement.**

Plaintiffs' Lanham Act claims were initially dismissed because Plaintiffs failed to identify any alleged marks and failed to explain in what context Defendants were using those marks. While the Second Amended Complaint still fails to allege use by Dahn, the use the Plaintiffs do allege is not actionable. Trademark infringement and unfair competition is not the same as a copyright or patent. Merely using the Plaintiffs' mark is not sufficient to state a claim; instead the alleged use must result in a likelihood of confusion. *See Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014) ("Whether proceeding under § 32 or § 43(a) of the Lanham Act, the central inquiry is whether the junior user's mark is likely to cause confusion with the senior user's mark." (internal quotations omitted)); *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143 (10th Cir. 2013) ("At all times . . . the key inquiry is whether the consumer is likely to be deceived or confused by the similarity of the marks." (internal quotations omitted)).

Simply concluding that use of the alleged marks is likely to cause confusion is not sufficient to state a claim. District courts have dismissed trademark infringement claims on a motion to dismiss when it is clear based even on the alleged facts there is no likelihood of confusion. *See, e.g., J.G. Wentworth, S.S.C., Ltd. P'ship v. Settlement Funding LLC*, 85 U.S.P.Q.2d 1780, 1786 (E.D. Penn. 2007) (dismissing trademark infringement claim when, based on the allegations, "no reasonable factfinder could find a likelihood of confusion under the set of facts alleged by

plaintiff"); *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, (6th Cir. 2009) (affirming lower court's dismissal of infringement claim when it was clear from the allegations and exhibits in the complaint there was no likelihood of confusion). Even on a motion to dismiss, if it is obvious that consumers would not be confused regarding the source of the defendants' goods or services, then there can be no infringement as a matter of law.

That is especially true when the allegations establish that defendants are not using the alleged trademarks as trademarks, which is the case here. *See Hensley Mfg.*, 579 F.3d at 610 ("[T]he likelihood of confusion analysis also involves a preliminary question: whether the defendants are using the challenged mark in a way that identifies the source of their goods. If they are not then the mark is being used in a 'non-trademark way' and trademark infringement laws . . . do not even apply."). Plaintiffs, in an attempt to get around the flaws in their prior Complaint, now attach the documents they claim contain the infringing use – the Offering Package (attached as Exhibit A to the Second Amended Complaint). At the outset, it is clear that the "goods or services" at issue in this case is a Private Placement Memorandum seeking investors for a new MHC fund. The Offering Package makes clear: "This Private Placement Memorandum ("Memorandum") relates to the sale ("Offering") of Class A Units and Class B Units in MHPI VII, LLC, a Delaware limited liability company (the "Company")." Exh. A, p. 008. Among the many disclosures and disclaimers in the Offering Package is the following statement:

**8.1.10 Company Has No Track Record**

The Company is newly formed and has no operational history. It will be managed by the Manager. However, the members of the Manager that will be making investment decisions on behalf of the Company, have significant prior experience in negotiating, purchasing, operating, managing and selling storage facilities and mobile home parks. See Section 9.2.

<u>Exh. A</u>, p. 045

Any reasonable consumer (in this case a much smaller group consisting of investors with at least $50,000 to invest) would understand that Fund 7 is a separate entity and that it is "newly formed and has no operational history." There is no factual basis from which to draw the conclusion that Fund 7 and the Plaintiffs are the same entities. Rather, Plaintiffs' concern is that Fund 7's use of the alleged marks "is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the services because they are false or misleading representations **regarding the scope of Fund 7, Elevation, the Smiths, and Dahn's experience and their relationship with these Plaintiffs**." Complaint, Dkt. No. 064, ¶ 136 (emphasis added). That concern is insufficient to state a claim for infringement. The issue is not the scope (or lack thereof) of Defendants' prior experience, the issue is whether consumers will be confused as to the source of the goods and services.

The reason the Second Amended Complaint focuses on Defendants' alleged lack of experience, rather than the way alleged marks are being used, is because it is clear from a review of the Offering Package that Plaintiffs' alleged marks are not being used in a way that identifies the source of the goods/services. Rather, the alleged marks are being used to refer to the Smith Defendants' prior experience with those entities. Referring to the Plaintiffs in that context, much like listing the name of a former employer on a resume, is not infringement and does not create a likelihood of confusion as a matter of law.

The Sixth Circuit addressed a similar issue in *Hensley*, which involved a trademark infringement claim when the prior designer of a product designed a new product for a competitor. *Hensley Mfg.*, 579 F.3d at 607-08. The plaintiff owned the trademark HENSLEY in connection

11

with the marketing and sale of a trailer hitch designed by Jim Hensley. Mr. Hensley then went to go work for a competitor, the defendant ProPride, and he designed a new trailer hitch for the defendant. ProPride's marketing materials (attached to the complaint) stated: "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins. That man is Jim Hensley. NOW he has done it again and IMPROVED the PERFORMANCE of his old design." *Id.* Plaintiff argued infringement because consumers would likely be confused that defendant's hitch was made by or affiliated with the HENSLEY hitch.

The Court, however, granted ProPride's motion to dismiss as a matter of law because ProPride was not using the Hensley name as a source identifier, but rather to explain who designed the product. The Court rejected plaintiff's "likelihood of confusion" argument because it was clear from the advertisements that the product being offered was ProPride's and not the plaintiff's. The ads contained ProPride's name, phone number, and website, and they were not using the HENSLEY mark to identify its product. Based on the allegations and exhibits to the complaint, the Court concluded "there is absolutely no confusion as to the source of the product being advertised." *Id.* at 1008.

Similarly, here, the Offering Package, which is attached to the Second Amended Complaint, specifically defines and explains the relationship between Fund 7 and the Plaintiffs with the following definition:

> "Prior Fund" or "Prior Funds" shall mean any of those funds organized and managed by Affiliates of the members of the Manager, including, but not limited to MHPS Alumni 1, LLC; MHPS Alumni 2, LLC; MHPS Alumni 3, LLC; Affordable Housing Community Fund 1, LLC; Affordable Housing Community Fund 2, LLC; Affordable Housing Community Fund 3, LLC; Affordable Housing Community Fund 4, LLC; Affordable Housing Community Fund 5, LLC; Affordable Housing Community Fund 6, LLC; AWA Fund, LLC; MHPI I, LLC; MHPI II, LLC; MHPI III, LLC; MHPI IV, LLC; MHPI V, LLC; and MHC America Fund, LLC.

49921899.1

Ex. A, p. 081.

First, there is no allegation that this statement is false or inaccurate. Each of the entities listed were organized and managed by affiliates of the Smiths (i.e., members of the Manager). The definition specifically acknowledges that the "Prior Funds" were not organized and managed by the Smiths themselves. Second, the Offering Package also makes clear that "[a]n investment in MHPI VII, LLC's Offering is not an investment in the Prior Funds" and "performance of the Prior Funds is not indicative of the performance of MHPI VII, LLC's Offering." Exh A, p. 225.

Plaintiffs may be unhappy that they have parted ways with their former business partners, and that the two groups are now (in Plaintiffs' view) in competition (there is no reason to assume potential investors would only invest in one fund, rather than multiple funds to diversify assets and maximize their investment returns), but that unhappiness does not satisfy the required elements of a trademark infringement or unfair competition claim. Plaintiffs have to allege facts demonstrating that the consumers are likely to be confused regarding the source, origin, or approval of the "goods and services" being offered. There are no such factual allegations in the Second Amended Complaint. Rather, Plaintiffs' new allegations only further demonstrate that any use of Plaintiffs' alleged marks was coupled with a clear explanation that Fund 7 is a different fund, distinct from the prior funds, and there is no guarantee of performance.

### *iii.* **Plaintiffs further fail to state a claim for contributory trademark infringement under § 1125(a)(1)(A) or § 1125(a)(1)(B) because there is no allegation that Dahn controlled the Smith Defendants**

The Second Amended Complaint includes a new claim against Dahn, a claim for contributory infringement. The fact Plaintiffs allege both direct and contributory infringement is both contradictory and telling. The only allegation against Dahn regarding the use of Plaintiffs'

13

alleged trademarks is the "Investor Information" link on its webpage.  If Plaintiffs believe that constitutes direct use of the alleged trademarks, than there is no reason for a contributory claim.  Rather, these conflicting and overlapping claims only further bolster the point that Plaintiffs are grasping at straws and trying to drag Dahn into this dispute by any means possible to tarnish its reputation.

To state a claim for contributory infringement against Dahn, Plaintiffs must allege infringement on the part of a third party, and that Dahn either: (1) intentionally induced a third-party (i.e., the Smith Defendants) to infringe on the mark; or (2) knowingly enabled a third party to infringe on the mark.  *Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 854-55 (1982).  Therefore, to survive a motion to dismiss, Plaintiffs must allege facts showing either that Dahn took actions to induce the alleged infringement or knowingly enabled the alleged infringement.  *Iqbal*, 556 U.S. at 678 ("naked assertions devoid of further factual enhancement" are insufficient to survive a motion to dismiss (internal quotation marks and brackets omitted)).

As explained above, there was no direct infringement as a matter of law.  However, even assuming for the purposes of this motion there was infringement by the Smith Defendants, the Second Amended Complaint still fails to allege any facts supporting their contributory infringement claim against Dahn.  Other than Plaintiffs' new allegation that a Dahn-controlled website includes a non-descript link leading to Elevation's website, there are no new allegations regarding Dahn.  In short, the Second Amended Complaint continues to lump Dahn in with the other Defendants with no factual support.  There are no factual allegations that Dahn in any way helped prepare or create the Offering Package, or that Dahn had the ability to or did control the

14

Smith Defendants. Nor are there any allegations that Dahn <u>intentionally</u> induced the Smith Defendants to infringe or even use the Plaintiffs' alleged marks for the direct benefit of Dahn.

Instead, Plaintiffs claim that because Dahn allegedly could tangentially benefit from the Smith Defendants' infringement, it should be liable as well. But that is not how contributory infringement works. *See Luxottica Group, S.p.A v. Greenbriar Marketplace II, LLC*, 212 F.Supp.3d 1375, 1378 (in order to establish claim of contributory infringement, plaintiff must "demonstrate that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to bring it about (for example by directly controlling or monitoring the third party's conduct)"). A website link and a general allegation that Dahn is helping to promote Fund 7 is insufficient as a matter of law to establish a contributory infringement claim.

### *b. Plaintiffs fail to state a claim against Dahn under the Colorado Consumer Protection Act.*

The Court previously dismissed Plaintiffs' Colorado Consumer Protection Act ("CCPA") claim against Dahn because "[a]t no point do the Plaintiffs identify the marketing materials, the time such materials were created and published to the public or the specific party responsible for publishing such materials." Order, ECF No. 060, p. 41. The Second Amended Complaint does not cure that fatal deficiency. The only new allegation specific to Dahn is, again, the "Investor Information" link on Dahn's webpage. A link leading to Elevation's webpage is not an allegation

that Dahn created or published the Offering Package.  Plaintiffs' CCPA claim against Dahn is still premised on unsubstantiated claims lumping the Smith Defendants and Dahn together.

Section 6-1-113 of the CCPA provides that the "provisions of this article shall be available in a civil action for any claim against any person who has engaged in or caused another to engage in any deceptive trade practice . . . ."  Even assuming that referencing Plaintiffs' entities and their prior success in the Offering Package is somehow a deceptive trade practice that has caused Plaintiffs' damages, the Second Amended Complaint is devoid of any allegation establishing that Dahn engaged in any deceptive trade practice or caused another to engage in any deceptive trade practice.

First, merely including a link on a website that takes the viewer to another website is not engaging in any deceptive trade practice.  Dahn is not the one publishing or providing the Offering Package to anyone.  The Court previously upheld the CCPA claim against the Smith Defendants based, in part, on the allegations regarding the content of Elevation's newsletters and website.  The Second Amended Complaint is still devoid of any allegations regarding Dahn's alleged role in the creation of that website or any decisions regarding the content of that website.

Second, Plaintiffs' reliance on the website link appears to be an argument that Dahn is liable because it "caused another to engage in any deceptive trade practice" but the mere existence of the link is not evidence that Dahn had any control over the content of the Elevation website.  There are no allegations, and certainly no allegations meeting the requirements of Rule 9(b), that Dahn had any input or control over what was included in the Offering Package, including the references to the Plaintiffs.

The Court gave Plaintiffs another bite at the apple to provide additional allegations for its CCPA claim to satisfy the requirements of Rule 9(b). The only new allegation specific to Dahn that Plaintiffs were able to provide is the existence of link that leads to Elevation's website. That is simply not sufficient to establish a CCPA claim as a matter of law, and the Court should reaffirm its dismissal of the CCPA claim as to Dahn.

### c. *The unjust enrichment claim fails because Plaintiffs have not alleged any viable claims.*

Last, Plaintiffs' unjust enrichment claim fails because Plaintiffs fail to state any cognizable claims against Dahn, fail to assert any specific actionable conduct by Dahn, and fail to assert Dahn received a benefit at Plaintiffs' expense. "To state a claim for unjust enrichment, a plaintiff must allege facts showing (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without compensating the plaintiff." *Reich v. Genzyme Corp.*, No. 14-CV-01684-RM-MJW, 2015 WL 13236347, at *11 (D. Colo. Aug. 14, 2015) (citing *Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Construction, LLC*, No. 14-cv-00994-KMT, 2014 WL 6461350, at * 6 (D. Colo. Nov. 18, 2014)).

The Court previously dismissed the unjust enrichment claim against Dahn because it failed to distinguish the factual predicate between Dahn and the Smith Defendants regarding the unjust enrichment the claim. The Second Amended Complaint attempts to get around this issue by reciting – verbatim – the same allegation three times (¶ 200 for the Smiths, ¶ 201 for Elevation, and ¶ 202 for Dahn) to support its unjust enrichment claim. Simply restating the same paragraph three times does not change the fatal flaw that the Plaintiffs fail to distinguish between the Smith

Defendants and Dahn. Further, there is no allegation of a direct benefit to Dahn, a key element to such a claim. Therefore, the Court should, again, dismiss the unjust enrichment claim against Dahn for failure to state a claim.

## IV. Conclusion

Plaintiffs' Second Amended Complaint does nothing to cure the deficiencies that resulted in the Court's prior thorough and well-reasoned Order dismissing Dahn from this action. Plaintiffs' continued efforts to damage Dahn's reputation by punitively dragging it into a groundless suit due to the other Defendants' affirmative suit in Florida continues to be improper and legally insufficient. For the reasons stated above, Dahn respectfully requests that the Court dismiss all of the claims against Dahn for failure to state a claim under Fed. R. Civ. P. 12(b)(6), dismiss Dahn from this case, and award Dahn its Court costs and attorneys' fees incurred in connection with this matter.

DATED: April 17, 2019.

*s/ Christian H. Hendrickson*
Christian H. Hendrickson, #32225
Joseph C. Daniels, #41321
SHERMAN & HOWARD L.L.C.
633 17th Street, Suite 3000
Denver, CO 80202
Telephone: (303) 297 2900
Fax: (303) 298-0940
E-Mail: chendrickson@shermanhoward.com
jdaniels@shermanhoward.com
*Attorneys for the Plaintiff*

49921899.1

## CERTIFICATE OF SERVICE

I certify that on April 17, 2019, a true and correct copy of the foregoing **DAHN CORPORATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

Craig Stewart, Esq.
Jessica J. Smith, Esq.
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202
Phone: (303) 295-8374
Fax: (303) 974-1133
CStewart@hollandhart.com
JJSmith@hollandhart.com

Christopher H. Toll, Esq.
HOLLAND & HART LLP
6380 S. Fiddlers Green Circle, Suite 500
Greenwood Village, CO 80111
Phone: (303) 290-1600
Fax: (303) 223-3262
CToll@hollandhart.com

Michael D. Crosbie, Esq.
mcrosbie@shutts.com
Nicole L. Ballante, Esq.
nballante@shutts.com
SHUTTS & BOWEN LLP
300 S. Orange Ave., Suite 1600
Orlando, Florida 32801
Telephone: 407-835-6796
Fax: 407-849-7275
*Attorneys for non-Dahn Defendants*

 *s/ Diane M. Collier*
Diane M. Collier