# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02780-NYW

RV HORIZONS, INC.;
MHC AMERICA Fund, LLC;
MHC AMERICA Fund CLASS C, LLC;
MHC AMERICA Fund 2, LLC;
MHC AMERICA Fund 2 CLASS B, LLC;
NICHE INVESTMENT NETWORKS, LLC;
MHPS ALUMNI, LLC;
MHPS ALUMNI 2, LLC;
MHPS ALUMNI 3, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 1, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 2, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 3, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 4, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 5, LLC;
AFFORDABLE HOUSING COMMUNITY Fund 6, LLC; and
AWA Fund, LLC,

      Plaintiffs,

vs.

JAMIE SMITH, an individual;
RYAN SMITH, an individual;
MHP PORTFOLIO, LLC;
MHPI VII, LLC;
ELEVATION CAPITAL GROUP, LLC; and
DAHN CORPORATION,

      Defendants.

---

## MEMORANDUM OPINION AND ORDER ON MOTIONS TO DISMISS

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on two motions to dismiss: (1) Defendants Jamie Smith

("Ms. Smith"); Ryan Smith ("Mr. Smith"); MHPI VII, LLC ("Fund 7"), and Elevation Capital

Group LLC's ("Elevation") (collectively, "the Smith Defendants") Motion to Dismiss ("the Smith

Defendants' Motion to Dismiss") [#72, filed April 17, 2019], which seeks dismissal of the Second

Amended Complaint [#64] under Federal Rule of Civil Procedure 12(b)(6); and (2) Defendant Dahn Corporation's ("Dahn" and collectively with the Smith Defendants, "Defendants") Motion to Dismiss ("Dahn's Motion to Dismiss") [#74, filed April 17, 2019], which seeks dismissal under Rule 12(b)(6). Plaintiffs—discussed individually below—filed Responses on May 8, 2019 [#75; #76] to which the Defendants replied on May 22, 2019 [#77; #78]. The undersigned Magistrate Judge fully presides over this case pursuant to 28 U.S.C. § 636(c), the Parties' unanimous consent [#42], and the Order of Reference dated January 4, 2019 [#44]. Upon consideration of the motions and related briefing and in light of the applicable legal standard, the Smith Defendants' Motion to Dismiss is **DENIED** and Dahn Corporation's Motion to Dismiss is **DENIED**.

## BACKGROUND

The court has discussed in detail this action's background in previous rulings, *see, e.g.*, [#60], and discusses it here for context and as it pertains to the pending Motions to Dismiss.

## I.     The Parties

This case involves an array of corporate entities and individuals so the court will begin by briefly discussing these entities and their interrelation.

*Plaintiffs.* Plaintiffs are a series of corporate entities owned by, among others, David Reynolds ("Mr. Reynolds") and Frank Rolfe ("Mr. Rolfe"), and involved in the manufactured housing industry. [#64 at ¶¶ 8–22, 30, 51]. Although neither Mr. Reynolds nor Mr. Rolfe is joined as a Plaintiff in this litigation, their actions are material to the underlying facts.

Mr. Reynolds and Mr. Rolfe's business operations are divided across numerous corporate entities, owned at the highest level by a limited liability company which in turns owns a special purpose entity ("SPE") which owns and operates a manufactured housing community or a grouping thereof. [*Id.* at ¶¶ 34–35]. This case is primarily concerned with the LLCs at the top of

these corporate chains and their relation to Defendants. There are five distinct groupings of Plaintiffs' LLCs which are relevant to this case, with RV Horizons, Inc. ("RV Horizons") at the top.

First, the Alumni Funds—MHPS Alumni LLC, MHPS Alumni 2, LLC, and MHPS Alumni 3, LLC (collectively, "Alumni 1-3")—are member-managed LLCs owned by RV Horizons, discussed below. [*Id.* at ¶¶ 34–36].

Second, the AWA Funds include AWA Fund, LLC and AWA Fund 2, LLC. [*Id.*]. Plaintiffs do not specify which entities or individuals own/operate the AWA Funds (but do explain that because the Offering Package does not use AWA 2's trademarks or investment history, AWA 2 is not joined here as a plaintiff). [*Id.* at ¶ 35 n.1].

Third, the MHPI Funds—MHPI I, LLC; MHPI II, LLC; MHPI III, LLC; MHPI IV, LLC—are managed by RV Horizons and the Smith Defendants. [*Id.* at ¶¶ 35, 36].

Fourth, the Affordable Housing Community Funds ("AHCF")—AHCF 1, AHCF 2, AHCF 3, AHCF 4, AHCF 5, and AHCF 6 (collectively, "AHCF 1-6")—are primarily managed by RV Horizons with MHPI V, LLC owning part of AHCF 6. [*Id.* at ¶¶ 35, 36].

Fifth and finally, Plaintiffs include MHC America Fund, LLC ("Fund 1") and MHC America Fund 2, LLC ("Fund 2"). [#31 at ¶¶ 6–9]. Fund 1 was formed in 2016 and included all of the sponsors previously spread among MHPI 1-4, Alumni 1-3, and AHCF 1-6. [#64 at ¶ 37]. Fund 2 was intended to be a fund into which previous funds were "rolled-up" to simplify fund structure. MHC America Class C, LLC ("Class C") and MHC America 2 Class B, LLC ("Class B") are separate entities that own and promote interest in Funds 1 and 2, respectively. [*Id.*]. As owners of this interest, upon a net capital event, Classes C and B stand to gain a back-end distribution from the funds after annual preferred returns and invested capital contributions are

paid to other members in the funds. [*Id.*]. In sum, Plaintiffs are or own, in whole or part, (1) the Alumni Funds; (2) the AWA Funds; (3) the MHPI Funds; (4) the AHCF Funds; and (5) the MHC Funds, or simply Funds 1 and 2.

*Defendants.* Jamie Smith and Ryan Smith ("the Smiths") are Florida residents who own several corporate entities intertwined with Plaintiffs'. [#31 at ¶ 31; #36 at 3]. Specifically, the Smiths own Colonial Kitchen, LLC—and so own an interest in Alumni 1-3—and MHP Portfolio LLC ("MHP") which is invested in MHPI I, II, and III and Salvo Conducto which owns part of MHPI IV. [#64 at ¶¶ 51, 52]. The Smiths also own MHPI V LLC, which in turn owns part of AHCF 6 as noted above. [*Id.*]. Plaintiffs allege that the Smiths also own MHPI VII, LLC ("Fund 7"). [*Id.* at ¶ 4]. Additionally, the Smiths own or control Defendant Elevation Capital Group, LLC ("Elevation Capital"), which does not appear to own any other corporate entity at issue. [*Id.* at ¶¶ 61–70]. These Defendants are collectively referred to as "the Smith Defendants," and collectively with Defendant Dahn Corporation, "Defendants."

Finally, Dahn Corporation is a California corporation not owned by any other party or entity mentioned herein but alleged to have acted in concert with the Smith Defendants in the alleged misconduct. [*Id.* at ¶¶ 86–131].

## II.    Factual History

The following facts are drawn from Plaintiffs' filings and are taken as true for the purposes of the instant Motions to Dismiss. Plaintiffs are in the business of owning and operating manufactured housing developments—Messrs. Reynolds and Rolfe, through Plaintiffs and other entities, own and operate more than 250 communities in more than twenty-five states and rank as the fifth largest owner of manufactured home communities in the country. [*Id.* at ¶ 30]. As part of their business, Messrs. Reynolds and Rolfe, through Niche Investment Networks, LLC, run a

series of "boot camps" for would-be manufactured housing developers to learn their business methods. [*Id.* at ¶ 72]. These sessions instruct participants using copyrighted materials owned by RV Horizons. [*Id.* at ¶¶ 72–78]. It was at one of these boot camps that Messrs. Reynolds and Rolfe met Jamie and Ryan Smith approximately ten years ago. [*Id.* at ¶¶ 31, 73].

At the time, the Smiths owned several failing manufactured home communities and unsuccessfully attempted to bring on Plaintiffs as managers. [*Id.* at ¶ 31]. While Messrs. Reynolds and Rolfe declined to manage the Smiths' distressed communities, the Parties decided to combine their skills—the Smiths' aptitude for networking and event speaking and Messrs. Reynolds and Rolfe's skills with "identifying, acquiring, managing, and repositioning manufactured home communities and networking and fundraising with the bootcamp attendees." [*Id.* at ¶ 32]. This began a years-long relationship with the Smiths promoting Plaintiffs' investments to potential investors. [*Id.*]. Initially successful, the relationship would later turn sour.

In 2011, Jamie Smith wrote *Trailer Cash*, a nonfiction book which purportedly contains copyrighted and proprietary information from the Plaintiffs. [*Id.* at ¶¶ 58–60]. Specifically, *Trailer Cash* copies from RV Horizons materials which were used at the boot camps. [*Id.* at ¶ 77]. At some point, the Smiths began holding their own boot camps, using materials from RV Horizons boot camps and mirroring the latter's structure and format. [*Id.* at ¶¶ 73–78].

On or about June 1, 2016, Plaintiffs formed MHC America Fund LLC, Fund 1, and began raising capital. [*Id.* at ¶ 54]. Plaintiffs again used the Smiths to help promote Fund 1 to potential investors and paid the Smiths approximately $445,000 in 2017 and 2018 in fees and interest from AWA Fund 2 LLC as part of a contract between the Parties regarding Fund 1's promotion. [*Id.* at ¶ 55]. The Smiths accepted the money but never signed the agreements. [*Id.*]. After the Smiths

seemingly entered into this agreement, the Smiths began promoting their own fund, Fund 7, to Fund 1's prospective investors. [*Id.* at ¶ 56].

Plaintiffs maintain a confidential database of investor information through a password-protected system known as "Infusionsoft," a contact management system. [*Id.* at ¶ 79]. Plaintiffs also store confidential investment strategies called "turnarounds" on their computer systems. [*Id.* at ¶¶ 83–84]. The investor lists and turnaround files are critical to Plaintiffs' business structure. [*Id.* at ¶ 83]. When the Smiths began promoting Fund 7 to the investors to whom they were supposed to be promoting Fund 1 (and later Fund 2), Plaintiffs allege they used this data, including the turnarounds. [*Id.* at ¶¶ 56–57, 88].

The Smiths' promotion of Fund 7 heavily relied on Elevation Capital's website and associated newsletter. Plaintiffs allege that the website conflates RV Horizons's sterling business reputation with Elevation's and specifically point to four objectionable newsletters issued in 2016 and 2017, dated October 3, November 17, and December 16, 2016 and July 20, 2017. [*Id.* at ¶¶ 64–67]. Plaintiffs also allege that the Smiths have embedded references to Plaintiffs and their employees in the source code of the Elevation Capital website as a search engine optimization trick—i.e., when someone searches for David Reynolds, the embedded references to Mr. Reynolds lead search engines to rate Elevation Capital's website as more pertinent and thus it is more likely to appear despite no visible references to Mr. Reynolds. [*Id.* at ¶¶ 70–71].

In 2016 or 2017, the Smiths began working with Defendant Dahn Corporation to solicit investors for Fund 7. [*Id.* at ¶ 86]. On March 17, 2018, Plaintiffs learned of a letter signed by Ryan Smith on behalf of MHP Portfolio acting as Manager of MHPI III and IV which was sent to those funds' investors without the knowledge or acquiescence of MHPI III and IV's other manager, RV Horizons. [*Id.* at ¶ 87]. The letter promoted Fund 7, directed readers to an upcoming

promotional webinar for Fund 7, and provided a link to Fund 7's website—presumably hosted on Elevation Capital's website mentioned above. [*Id.*].

The Smiths and Dahn discouraged investors from investing in Fund 1 and Fund 2 by falsely stating in the investor materials for Fund 7 that some of Plaintiffs' individual managers were involved with Fund 7 as advisors and acquisition specialists. [*Id.* at ¶ 89]. Further, the Smiths and Dahn prepared a private placement memorandum and other marketing materials representing themselves as having extensive experience in the manufactured home market, despite the fact that neither the Smiths nor Dahn have run a manufactured housing community with any degree of continuity or success. [*Id.* at ¶ 92].

In an attempt to trade on the success and reputation of Plaintiffs, the Smiths and Dahn have used the trademarks and goodwill of the former to promote Fund 7, and have even given specific facts and figures regarding their investment experience and returns which actually correlate to Plaintiffs', not their own. [*Id.* at ¶¶ 89–130]. In promoting Fund 7, the Smiths and Dahn have also solicited consumers in the market for manufactured housing community investments via social media and online advertising. [*Id.* at ¶¶ 138–41, 154–56, 193–95]. Additionally, in 2017 the Smiths and Dahn visited Colorado with the intent of purchasing property for Fund 7 and did so sometime in 2018. [*Id.* at ¶ 131].

## III.  Procedural History

Plaintiffs initiated this action on October 30, 2018. [#1]. Plaintiffs then filed their First Amended Complaint on November 20, 2018. [#31]. The Defendants filed their respective Motions to Dismiss shortly thereafter. [#36; #38]. This court issued a Memorandum Opinion and Order on the Defendants' Motions to Dismiss, granting in part and denying in part the Smith Defendants' Motion and granting Dahn's Motion in its entirety. [#60, filed March 7, 2019].

Plaintiffs were granted leave to file an appropriate Motion to Amend their Complaint as contemplated by the Order. [*Id.*]. Plaintiffs then filed the operative Second Amended Complaint on March 22, 2019. [#64]. On April 17, 2019, both the Smith Defendants and Dahn filed Motions to Dismiss Plaintiff's Second Amended Complaint, [#72, #74], and Plaintiffs responded to both Motions to Dismiss on May 8, 2019, [#75, #76]. Defendants filed replies on May 22, 2019, [#77, #78], and the Motions are thus ripe for consideration.

**LEGAL STANDARDS**

### I.      Rule 12(b)(6)

Under Rule 12(b)(6) a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claim(s) "across the line from conceivable to plausible."). To state a claim that is plausible on its face, a complaint must "sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

## ANALYSIS

### I.        The Smith Defendants' Motion to Dismiss

The Smith Defendants—Jamie Smith, Ryan Smith, Fund 7, and Elevation—have moved to dismiss the Complaint for failure to state a claim. [#72]. Specifically, the Smith Defendants move to dismiss the Second Amended Complaint because they "cannot determine the basis for the plaintiffs' trademark claims." [#72 at 3]. The Smith Defendants further argue that each of the counts in the Second Amended Complaint omit critical factual information and thus fail to state a plausible claim for relief. [*Id.*]. Finally, the Smith Defendants argue that Plaintiffs' third claim for contributory trademark infringement must fail because "plaintiffs did not plead Count III in the alternative." [*Id.* at 6]. Upon review of the Second Amended Complaint, the court finds that the Plaintiffs' claims for trademark infringement, unfair competition, and contributory infringement are sufficiently pled, and the court therefore denies the Smith Defendants' Motion as discussed below.

### A.        Counts I and II: Trademark Infringement and Unfair Competition

Count I of the Second Amended Complaint asserts a claim for trademark infringement under 15 U.S.C. § 1125(a)(1)(A) against all Defendants. [#64 at ¶¶ 132–146]. The Second Amended Complaint alleges that Plaintiffs have trademarks in their names and Defendants' have engaged in unauthorized use of those trademarks in a manner that is material and likely to cause confusion. [*Id.*]. Count II asserts a claim for unfair competition under § 1125, again asserting trademarks in Plaintiffs' names which Defendants' conduct infringed upon. [*Id.* at ¶¶ 147–160]. "Courts addressing claims of both trademark infringement and unfair competition address the claims together because they have virtually identical elements[.]" *Cleary Bldg. Corp. v. David A.*

*Dame, Inc.,* 674 F.Supp.2d 1257, 1269 (D. Colo. 2009) (citing *Utah Lighthouse Ministry v. Found. for Apologetic Info. and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008)).

The Smith Defendants argue that Plaintiffs have failed to plead facts sufficient to support a finding that Plaintiffs' names are protectable trademarks. Plaintiffs counter that, because Plaintiffs have exclusively used their names in commerce for many years and consumers only associate the various names with the services provided by the respective companies, they "have established enforceable and protectable trademarks in their names." [#64 at ¶ 134]. Plaintiffs describe their trademarks and specify which marks are at issue. *See* [*id.* at ¶¶ 39–50]. Plaintiffs also allege that the Offering Package for Fund 7 expressly uses the names belonging to RV Horizons, Alumni 1-3, AHCF 1-6, and Fund 1, [*id.* at ¶ 135], and that such use of Plaintiffs' trademarked names is "likely to cause confusion among consumers as to the source, sponsorship, affiliation, or approval of the services because they are false or misleading representations regarding the scope of Fund 7, the Smiths, and Dahn's experience and relationship with Plaintiffs." [*id.* at ¶ 136]. But the Smith Defendants consider this a "threadbare recital[] of the elements of [the] cause of action." [#72 at 3].

To sufficiently allege a trademark infringement claim under Section 1125(a)(1)(A), a plaintiff must allege that (1) it has a protectable mark, and (2) that the defendant's use of that mark is likely to cause confusion in the marketplace. *Adams v. Grand Slam Club/Ovis*, No. 12-cv-2938-WJM-BNB, 2014 WL 103782, at *2 (D. Colo. Jan. 10, 2014). Because the alleged trademarks at issue here are not registered with the United States Patent and Trademark Office, in order to establish that they have a protectable mark, the Plaintiffs must establish either that the identifying mark (a) is inherently distinctive, or (b) has acquired distinctiveness through secondary meaning. *See Weber Luke All., LLC v. Studio 1C Inc.*, 233 F. Supp. 3d 1245, 1251 (D. Utah 2017). "Marks

that are suggestive, arbitrary, or fanciful are considered inherently distinctive and are entitled to protection," whereas descriptive marks are only protected if they have acquired "secondary meaning." *Prince Lionheart, Inc. v. Halo Innovations, Inc.*, No. 06-cv-00324-WDM-KLM, 2008 WL 878985, at *9 (D. Colo. Mar. 28, 2008). A plaintiff may use direct or circumstantial evidence to establish secondary meaning. *Id.* at *10. Permissible circumstantial evidence to establish secondary meaning includes "(1) the length and manner of its use, (2) the nature and extent of advertising and promotion of the mark[,] and (3) the efforts made in the direction of promoting a conscious connection, in the public's mind, between the name or mark and a particular product or venture." *Id.*

*Protectable trademarks in Plaintiffs' names.* In their Response, Plaintiffs identify what they claim each of the foregoing entities' names is classified under (i.e., suggestive, arbitrary, fanciful, or descriptive)—but of course, "[i]t is well-settled that Plaintiffs may not amend their operative pleading through a Response." *See* [#60 at 26, (citing *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) (finding that a plaintiff may not further amend a Complaint by alleging new facts in response to a motion to dismiss))]. The Second Amended Complaint itself does not assign any classification to the entities' names.

Nevertheless, the Second Amended Complaint pleads enough facts, drawing all inferences in favor of Plaintiffs, to support a finding of at least secondary meaning. Plaintiffs allege that they "have been in this industry for many years and have a nationwide presence." [#64 at ¶ 33]. Specifically, Plaintiffs allege that each entity "uses its name in commerce," "has been exclusively doing business under that name since" the entity's formation, and "does business all over the country, including Colorado." [*Id.* at ¶¶ 39-50]. Plaintiffs also provide the date of each entity's formation, [*id.*], and claim that "[p]otential investors would associate the names with only [RV

Horizons, Alumni 1-3, AHCF 1-6, AWA, and Fund 1] and no other company." [*Id.* at ¶ 122]. In other words, Plaintiffs claim that the marks at issue are "capable of distinguishing the services" RV Horizons, Alumni 1-3, AHCF 1-6, AWA, and Fund 1 "provide[] from those of others." [*Id.* at ¶¶ 39-50]. And Plaintiffs allege that they have expended significant resources to generate the history, experience and goodwill behind the marks. [*Id.* at ¶¶ 199, 202]. Moreover, Plaintiffs have collectively "purchased in excess of $375 million of assets including more than 200 mobile home park communities representing over 20,000 lots in 26 states." [*Id.* at ¶ 103]. The foregoing allegations, taken as true and making all inferences in favor of Plaintiffs, constitute circumstantial evidence of secondary meaning even without classifying the respective trademarks in the Second Amended Complaint.

Accordingly, because the Second Amended Complaint sets forth facts sufficient to constitute circumstantial evidence that Plaintiffs' names have developed secondary meaning (at minimum), I conclude that Plaintiffs have adequately pled that they have protectable trademarks to survive dismissal at this stage. Thus, the next issue is whether the Second Amended Complaint sufficiently pleads a likelihood of consumer confusion.

***Likelihood of confusion.*** "Confusion occurs . . . when a mark is likely to deceive purchasers or users as to the source, endorsement, affiliation, or sponsorship of a product." *Adams*, 2014 WL 103782, at *2 (internal quotation and citation omitted).

> To determine whether a likelihood of confusion exists, courts examine six non-exhaustive factors: (1) the degree of similarity between marks; (2) the intent of the alleged infringer in adopting the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks.

*Id.* at *3 (quoting *John Allan Co. v. Craig Allen Co., LLC*, 540 F.3d 1133, 1138 (10th Cir. 2008)). "Under established Tenth Circuit law," whether the Smith Defendants' use of Plaintiffs' marks "is likely to confuse the public in terms of [the Smith Defendants'] being associated with [Plaintiffs]

is a question of fact and should not be determined conclusively on a motion to dismiss." *Id. See also Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1239 (D. Colo. 2009) ("Most courts hold that this fact-intensive question, however analyzed, is not appropriate for determination on a motion to dismiss, but should be determined on summary judgment or at trial."). "Thus, the [c]ourt need only decide whether [Plaintiffs] ha[ve] pled sufficient facts to make a likelihood of confusion plausible." *Adams*, 2014 WL 103782, at *3. "Evidence that the alleged infringer chose a mark with the intent to copy, rather than randomly or by accident, typically supports an inference of likelihood of confusion." *John Allan Co.*, 540 F.3d at 1139 (quoting *Utah Lighthouse Ministry*, 527 F.3d at 1055). "The focus is on whether the defendant sought to derive benefit from the reputation or goodwill of the plaintiff." *Id.* (internal quotation and citation omitted).

In light of the allegations in the Second Amended Complaint, a factfinder could find that the Defendants sought to derive benefit from the goodwill of Plaintiffs. For example, Plaintiffs allege that Elevation (an entity which the Smiths have used to promote Fund 7) falsely claims that RV Horizons is Elevation's management company in its October 3, 2016 and July 20, 2017 newsletters. [#64 at ¶¶ 63-64, 67]. In addition, Plaintiffs aver that in Defendants' Offering Package, they use the trademarks for RV Horizons, Alumni 1-3 AHCF 1-6, AWA, and Fund 1 without authorization. [*Id.* at ¶ 99]. Indeed, Fund 7's Investment Summary clearly identifies Messrs. Reynolds and Rolfe and RV Horizons, Inc., as "Affiliates." [#64-1 at 217-18]. And Plaintiffs allege that the Private Placement Memorandum expressly states that Elevation's

> 'management team and their Affiliates have purchased in excess of $375 million of assets including more than 200 mobile home park communities representing over 20,000 lots in 26 states. Since 2010, the Elevation . . . team and their affiliates have raised over $200 million from private investors in fifteen funds for the purchase of mobile home parks[.]' That significant work experience and related goodwill as it

> pertains to mobile home community investments belongs to the Infringed Plaintiffs,
> not Elevation.

[#64 at ¶ 103 (internal citation omitted) (emphases added)]. Additionally, Plaintiffs contend that the Private Placement Memorandum states that Fund 7's "Prior Funds" include "any of those funds organized or managed by Affiliates of the members of the Manager, including but not limited to [Plaintiffs' entities]." [*Id.* at ¶ 107 (emphasis added)]. And according to Plaintiffs, the Fund 7 marketing materials tout all of the foregoing "Prior Funds" as "accomplished by its managers or affiliates," even though "RV Horizons served as the property manager for the manufactured housing communities, not the Smiths, Elevation or Dahn." [*Id.* at ¶ 108 (emphasis added)].

There are more examples in the Second Amended Complaint. The "Track Record," another document included within the Offering Package,

> expressly includes the returns on investments generated by Alumni 1-3, AHCF 1-
> 6, AWA, and Fund 1. In doing so, the Defendants rely on those entities' protected
> trademarks and falsely represent to potential investors that they were responsible
> for all of these funds' successes, when Defendants in fact are not involved
> whatsoever with those funds.

[*Id.* at ¶ 116]. And Plaintiffs allege that "the property management history and success for manufactured housing communities listed in the Offering Package belongs to RV Horizons," therefore creating the risk that "[p]otential investors will be misled into thinking that, because Dahn is going to serve as the manufactured housing property manager for Fund 7, that it is the entity with the advertised expansive manufacturing housing property management history." [*Id.* at ¶ 109].

Plaintiffs have also alleged that the Smith Defendants' use of Plaintiffs' marks in the Fund 7 marketing materials will "cause current or potential investors to believe that they are investing with RV Horizons and Plaintiffs' funds when, in fact, they are not." [*Id.* at ¶ 130]. Moreover, Plaintiffs allege that the Defendants' "unauthorized use in commerce of Plaintiffs' trademarks . . .

is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' service and is likely to cause consumers to believe, contrary to fact, that Defendants' services are offered, authorized, endorsed, or sponsored by Plaintiffs." [*Id.* at ¶ 143]. *See Health Grades*, 634 F. Supp. 2d at 1242 ("In fact, the very nature of [the] product . . . carries with it at least the possibility that consumers will consider [Fund 7]'s use of [Plaintiffs]' marks . . . an implied endorsement by [Plaintiffs] of [Fund 7] and the services it provides.").

"[T]he posting of Plaintiff[s'] [names] onto a . . . website[] is likely to cause confusion as to Plaintiff[s'] affiliation or grant of authority to use the trademark." *See Grady v. Nelson*, No. 12-cv-03004-RM-KMT, 2014 WL 7143852, at *7 (D. Colo. Dec. 15, 2014). And here, the Smith Defendants included Plaintiffs' names in the Fund 7 marketing material available on Elevation's website—repeatedly and implicitly referring to Plaintiffs as affiliates—allegedly "causing the false image of approval, affiliation or sponsorship by Plaintiff[s']." *See id.* Accordingly, I conclude that Plaintiffs have, at this juncture, sufficiently pled "actionable trademark infringement by [the Smith] Defendant[s]." *Id.*

***Whether Plaintiffs have alleged that the Smith Defendants are using the marks.*** The Smith Defendants further argue that the Second Amended Complaint fails to allege that the Smith Defendants are using the Plaintiffs' names as marks. [#72 at 5]. In support of this contention, the Smith Defendants contend that "various plaintiff entities were identified by name in a few pages of the 242 page 'Offering Package'", and the Smith Defendants' even liken their use of Plaintiffs' names to "disclos[ing] that they may serve investors Coca-Cola® or provid[ing] property managers with Apple iPads®." [#72 at 6]. But Plaintiffs allege that the Offering Package repeatedly refers to the Plaintiffs as "Affiliates," *see* [#64 at ¶¶ 103, 107–08, 111–14, 117, 119], and specifically in the context of mobile housing community investment and management to

bolster the credibility of the managers behind Fund 7, *see* [*id.* at ¶¶ 90, 91, 99, 115, 116]. Thus, the analogy advanced by the Smith Defendants ignores the nature of Defendants' purported use of Plaintiffs' marks.

A plausible claim for relief for misappropriating a trademark must allege sufficient facts for the defendants and the court to identify the mark at issue and at least some instances of misuse. The court finds that Counts I and II are sufficient to survive dismissal at this stage, and therefore denies the Smith Defendants' Motion to Dismiss as to these claims.

### B.    Count III: Contributory Trademark Infringement

Count III of the Second Amended Complaint alleges claims of contributory trademark infringement under 15 U.S.C. § 1125(a) against Ryan Smith, Jamie Smith, Elevation, and Dahn. [#64 at 40-45]. "Contributory infringement occurs when the defendant either (1) intentionally induces a third party to infringe on the plaintiff's mark or (2) enables a third party to infringe on the mark while knowing or having reason to know that the third party is infringing, yet failing to take reasonable remedial measures." *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1249 (10th Cir. 2013).

The Smith Defendants contend that Count III fails because Plaintiffs did not plead Count III in the alternative. [#72 at 6]. This court

> rejects the [Smith] Defendants' contention that the Plaintiffs were not permitted to plead alternate theories . . . , or that the alternate theories needed to be explicitly delineated in the complaint. As set forth in Federal Rule of Civil Procedure 8(d)(2), a party pleading in the alternative does not have [to] separately identify the statements as alternative theories in separate counts or factual allegations. Rather, Rule 8(d)(2) states that '[i]f a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.' Fed. R. Civ. P. 8(d)(2). In addition, pursuant to Federal Rule of Civil Procedure 8(d)(3), 'a party may state as many separate claims or defenses as it has regardless of consistency.' Fed. R. Civ. P. 8(d)(3).

*Fagan v. U.S. Carpet Installation, Inc.*, 770 F.Supp.2d 490, 496 (E.D.N.Y. 2011). For reasons discussed above and below, Plaintiffs have sufficiently pled claims of direct trademark infringement against both the Smith Defendants and Dahn Corporation. Accordingly, even if Plaintiffs' claim against the Smith Defendants for direct trademark infringement fails, it is still plausible that Plaintiffs' similar claim against Dahn Corporation succeeds. Thus, even if the Smith Defendants are not found liable for direct infringement, the facts in the Second Amended Complaint could nevertheless support a finding that the Smith Defendants (a) enabled a third party (Dahn Corporation) to directly infringe on Plaintiffs' marks, and (b) failed to take reasonable measures to remedy Dahn Corporation's infringement. *See, e.g.*, [#64 at ¶¶ 132–46].

For the foregoing reasons, I conclude that Plaintiffs have stated claims for direct trademark infringement, unfair competition, and contributory trademark infringement against the Smith Defendants. The Smith Defendants' Motion to Dismiss is therefore **DENIED** in its entirety.

## II. Dahn Corporation's Motion to Dismiss

Dahn Corporation has moved to dismiss under Rule 12(b)(6). [#74]. Dahn advances several arguments already addressed in substance above and the court declines to repeat those here. For the reasons discussed above, Dahn Corporation's Motion to Dismiss is denied as to Count I (trademark infringement), Count II (unfair competition), and Count III (contributory trademark infringement). The remainder of Dahn Corporation's Motion to Dismiss is discussed below with reference made to the court's analysis of the Smith Defendants' Motion when possible to minimize unnecessary repetition. For the reasons stated herein, Dahn's Motion to Dismiss is **DENIED**.

### A. Counts I and II: Trademark Infringement and Unfair Competition

Dahn argues that Plaintiffs' claims for trademark infringement and unfair competition under § 1125 fail because (1) they fail to establish that Dahn used any of the alleged marks, and

(2) the alleged use is not actionable infringement. Because the court has already discussed similar arguments at length above, it focuses only on the former argument as it has not been disposed of by the court's ruling on the Smith Defendants' Motion to Dismiss. Plainly contrary to Dahn's argument, Plaintiffs have alleged that Dahn used their protectable marks, at least by creating with Elevation and the Smith Defendants the Offering Package for Fund 7 and by soliciting investors and purchasers of their services using the Offering Package and other commercial advertising. *See e.g.*, [#64 at ¶¶ 135, 137, 138, 139, 143]. Accordingly, I conclude that Plaintiffs have sufficiently pled claims for trademark infringement and unfair competition against Dahn. Therefore, Dahn's Motion to Dismiss in this regard is **DENIED**.

### B. Count III: Contributory Trademark Infringement

Dahn advances a more particularized argument in favor of its Motion to Dismiss Count III than did the Smith Defendants. Specifically, Dahn contends that the Plaintiffs were required and failed to allege facts showing either that Dahn (1) took actions to induce the alleged infringement, or (2) knowingly enabled the infringement. [#74 at 14].

But Plaintiffs allege that Dahn either induced the alleged infringement or enabled the infringement (and is therefore liable for contributory trademark infringement) because Dahn is facilitating Fund 7's Offering Package [#64 at ¶¶ 6, 99, 101, 110], contributed to the creation of the Offering Package, [*id.* at ¶ 137], controls Fund 7, [*id.* at ¶¶ 95, 97], and benefits from the successes of Fund 7, [*id.* at ¶¶ 106, 108, 109]. And as discussed above, the Second Amended Complaint alleges facts that could, if true, establish that Dahn induced or enabled the Smith Defendants (a "third party") to infringe on Plaintiffs' marks. Accordingly, I find that the Plaintiffs have sufficiently stated a claim for contributory trademark infringement against Dahn.

## C.    Count VI: Colorado Consumer Protection Act

Plaintiffs also allege that Fund 7, Elevation, the Smiths, and Dahn violated the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. § 6-1-101 *et seq.*, a claim premised on Defendants' unfair or deceptive trade practices.  [#64 at ¶¶ 190-96]. The Smith Defendants do not move to dismiss Count VI.  Defendant Dahn, however, argues that Count VI fails to state a claim because "at no point do the Plaintiffs identify the marketing materials, the time such materials were created and published to the public or specific party responsible for publishing such materials." [#74 at 15 (quoting Order, #60 at 41)].  Dahn argues that because the "only new allegation specific to Dahn is. . . the 'Investor Information' link on Dahn's webpage," the Second Amended Complaint has failed to cure the "fatal deficienc[ies]" this court previously found in Plaintiffs' First Amended Complaint. [#74 at 15].  Dahn further argues that Plaintiffs fail to allege "that Dahn had any input or control over what was included in the Offering Package[.]"  [*Id.*].

In Response, Plaintiffs argue that the Second Amended Complaint "attaches the Offering Package, alleges when it was created, and alleges that Dahn created and is distributing it." [#75 at 13].  For example, Plaintiffs allege that "Dahn created [Fund 7], which is promoted by the Smith[] [Defendants] and Dahn."  [#64 at ¶ 4].  *See also* [*id.* at ¶ 101 (in the Private Placement Memorandum within the Offering Package, "the Smiths, Dahn, and Elevation (who all created the document) are misrepresenting to potential investors by trading on the Infringed Plaintiffs' 'significant prior experience' as it pertains to 'mobile home parks.'"); *id.* at ¶ 123 ("Dahn . . . contributed to the creation of the Track Record because the Track Record contains multiple references to Dahn's business history[.]")].  And Plaintiffs further allege that "Dahn's website . . . includes an 'Investor Information' link, which takes current or potential investors directly to the shared Fund 7 and Elevation Capital Group webpage where the Fund 7 prospectus is available for

download, which includes the Offering Package materials." [*Id.* at ¶ 97]. According to Plaintiffs, "Dahn has therefore published the Offering Package—which explicitly and without authorization used the trademarks for RV Horizons, Alumni 1-3, AHCF 1-6, AWA, and Fund 1—to potential and current investors." [*Id.*]. Plaintiffs further argue that the foregoing allegations are supported by the facts that (1) Dahn's biographies appear in the Offering Package, and (2) Dahn's involvement in Fund 7's business strategy is listed throughout the Offering Package. [*Id.* at ¶¶ 106, 110; #75 at 13].

To prevail on a claim under the CCPA, a plaintiff must prove: (1) the defendants engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury. *Greenway Nutrients, Inc. v. Blackburn*, 33 F. Supp. 3d 1224, 1259 (D. Colo. 2014) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)). Courts in this District evaluating claims under the CCPA apply the heightened pleading standards of Rule 9(b). *See, e.g.*, *Adams v. FedEx Ground Package Sys., Inc.*, No. 11-CV-02333-LTB-CBS, 2013 WL 1164426, at *6 (D. Colo. Mar. 1, 2013); *Duran v. Clover Club Foods Co.*, 616 F. Supp. 790, 793 (D. Colo. 1985).

***Elements of Plaintiffs' CCPA claim.*** The Second Amended Complaint alleges that (1) "[t]he Offering Package, which was created by . . . Dahn," and "uses the names, history, goodwill, and success belonging to [Plaintiffs], . . . constitutes an unfair or deceptive trade practice because it misleadingly suggests to Colorado consumers that Fund 7 . . . and [the Defendants] are associated with the Plaintiffs," [#64 at ¶ 192]; (2) in the course of Dahn's business and as an active participant in Fund 7, Dahn has solicited investors through its website and has distributed the Offering

Package to potential investors in Colorado and, in so doing, has advanced false or misleading statements of fact in commercial advertising that are likely to deceive consumers, [*id.* at ¶ 193]; (3) "Dahn's unfair or deceptive trade practices significantly impact the public as actual or potential consumers of Dahn's services or property," [*id.*]; (4) Dahn's creation and promotion of Fund 7's false advertising "has the potential of diverting current or potential investors away from Funds 1 and 2 . . . to Fund 7," [*id.* at ¶ 130]; and (5) "Fund 7 has already obtained investors through its unfair and deceptive trade practices," [*id.*]. Accordingly, I find the facts as alleged in the Second Amended Complaint sufficient to support a claim under the CCPA against Dahn. I turn now to whether, notwithstanding allegations supporting each of the five elements of a CCPA claim against Dahn, Plaintiffs have pled their claim with the requisite particularity.

***Particularity under Rule 9(b).*** Dahn further argues that Plaintiffs fail to plead with particularity under Rule 9(b). The court finds that Count VI in the Second Amended Complaint meets the heightened pleading requirements of Rule 9(b) as applied to Dahn, and therefore the court denies Dahn's Motion to Dismiss on this point.

Rule 9(b) and its heightened pleading standards apply to Count VI. The CCPA is designed to protect consumers from fraudulent business practices, and Rule 9(b) is specifically aimed at allegations of fraud. Like the other courts in this District, the court concurs that Rule 9(b) applies to a claim under the CCPA. *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 805 F. Supp. 2d 1115, 1120 (D. Colo. 2011); *Cavitat Med. Techs., Inc. v. Aetna, Inc.*, No. 04-CV-01849-MSK-OES, 2006 WL 218018, at *3 (D. Colo. Jan. 27, 2006). Rule 9(b) provides that malice, intent, and other states of mind may be averred generally, but requires specificity as to "the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1252 (10th Cir.

1997).  The Complaint is to be read as a whole and not in piecemeal fashion for this analysis.  *Id.* at 1252.

Applying these standards, the court finds that Count VI meets this heightened standard as applied to Dahn.  Count VI, as asserted against Dahn, is based on the Offering Package used for Fund 7.  [#64 at ¶¶ 190–96].  And this time, the Plaintiffs do identify the marketing materials, the time such materials were created and published to the public, and the specific party responsible for publishing such materials.  *See, e.g.*, [*id.* at ¶¶ 92, 95–97].  For example, upon review of the Second Amended Complaint, the court finds that it specifically identifies Dahn's website and a link to Elevation Capital's website (and thus the Fund 7 Offering Package) therein.  [*Id.* at ¶¶ 95–97].  And these are specifically the basis for Count VI.  *See* [*id.* at ¶ 193].  Therefore, this court finds that the Second Amended Complaint "adequately set[s] forth the time and place of [the] alleged unfair or deceptive trade practices."  *HealthONE*, 805 F. Supp. 2d at 1121.

Whereas in the previous Order this court noted that all allegations of fact in the First Amended Complaint involving Dahn also involved one or more of the Smith Defendants, the Second Amended Complaint includes specific allegations involving only Dahn.  *See, e.g.*, [#64 at ¶¶ 97, 193]; *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (discussing evaluation of claims under Rule 9(b) when asserted against multiple defendants).  For example, the Private Placement Memorandum identified in the Second Amended Complaint is alleged to be misleading and Plaintiffs specify that the Memorandum was a collective effort by the Defendants and published on April 1, 2017 as part of the Offering Package for Fund 7. [#64 at ¶ 95].  And at least one of the other considerations the court relied on in deciding the Smith Defendants' Motion as to Plaintiffs' CCPA claim in the previous Order—Elevation Capital's website—applies to Dahn.  *See, e.g.*, [*id.*

at ¶ 97].  This satisfies the Rule 9(b) requirements.  Accordingly, Dahn's Motion is denied as to Count VI.

### D.        Count VII: Unjust Enrichment

Count VII of the Second Amended Complaint is for unjust enrichment and is asserted against all Defendants.  [*Id.* at ¶¶ 197–203].  This claim is based on the Defendants' profiting off Plaintiffs' goodwill, boot camp materials, and investor lists,  and is brought on behalf of RV Horizons, Fund 1, Class C, Fund 2, and Class B.  [*Id.*].  Again, the Smith Defendants do not challenge this claim, but Dahn argues that Count VII fails to state a claim against Dahn because Plaintiffs fail to "assert any specific actionable conduct by Dahn, and fail to assert Dahn received a benefit at Plaintiffs' expense." [#74 at 17].

Unjust enrichment is a doctrine that allows a party who has suffered a harm to "waive" a traditional tort claim and instead bring a claim based on a fictitious, implied-in-law contract to receive compensation for a benefit unwillingly or unwittingly provided.  *Robinson v. Colorado State Lottery Div.*, 179 P.3d 998, 1007 n.8 (Colo. 2008); Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. b (2011).  "To state a claim for unjust enrichment, a plaintiff must allege facts showing (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without compensating the plaintiff." *Reich v. Genzyme Corp.*, No. 14-cv-01684-RM-MJW, 2015 WL 13236347, at *11 (D. Colo. Aug. 14, 2015) (citing *Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, No. 14-cv-00994-KMT, 2014 WL 6461350, at *6 (D. Colo. Nov. 18, 2014)).  Courts have applied Rule 9(b) to unjust enrichment claims when the unjust enrichment is derivative of a deceptive trade practice and/or fraud under the CCPA.  *See, e.g.*, *Francis v. Mead*

*Johnson & Co.*, No. 1:10-CV-00701-JLK, 2010 WL 5313540, at *3 (D. Colo. Dec. 17, 2010); *Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1184 (D. Colo. 2008).

Dahn argues that the deficiencies in Plaintiffs' First Amended Complaint, as addressed by this court in its previous Order on the Parties' Motions to Dismiss, remain in the Second Amended Complaint. [#74 at 17]. Specifically, Dahn argues that Plaintiffs have again failed to distinguish the factual predicate between Dahn and the Smith Defendants. [*Id.*].

In Response, Plaintiffs cite to the Private Placement Memorandum, which "explains that Fund 7 'will enter into a property management agreement with Dahn . . . to manage the day-to-day operations of Fund 7's storage facilities and mobile home parks.' . . . Fund 7 intends to pay Dahn to manage its mobile home parks." [#64 at ¶ 106]. Plaintiffs further contend that "Dahn is an active participant in Fund 7: it created Fund 7, acts as a property manager for Fund 7's manufactured housing communities, and is currently promoting Fund 7 on its own website." [#75 at 14; #64 at ¶¶ 4, 6, 97, 106]. And thus, "through that involvement," argue Plaintiffs, "Dahn is unfairly benefitting from Plaintiffs' confidential, proprietary investor lists (which Dahn knows or should know that the Smiths misappropriated from the Plaintiffs' Infusionsoft)." [#75 at 14; #64 at ¶ 86]. Accordingly, Plaintiffs contend, "Dahn should not be permitted to retain these benefits (*e.g.*, use of the investor list and trading on the Plaintiffs' goodwill through the deceptive use of Plaintiffs' names) at the expense of Plaintiffs." [#75 at 14; #64 at ¶¶ 6, 99, 124, 130, 202].

And in the Second Amended Complaint, Plaintiffs allege that:

**(1) Dahn received a benefit** ("Plaintiffs' goodwill, trademarks, and trade secrets" including "bootcamp materials and investor lists," [#64 at ¶¶ 199, 202]);

**(2) at Plaintiffs' expense** ("Plaintiffs' incurred significant efforts and expenses to generate the history, experience, goodwill, bootcamp materials, and investor lists" from which "Dahn has received benefits," [*id.* at ¶¶ 199, 202]);

**(3) under circumstances that would make it unjust for Dahn to retain the benefit without compensating Plaintiffs** ("[The] marketing materials . . . constitute an unfair trade practice because it would cause current or potential investors to believe that they are investing with RV Horizons and Plaintiffs' funds," thereby creating "the potential of diverting current or potential investors away from Funds 1 and 2, which RV Horizons manages, to Fund 7." [*Id.* at ¶ 130]. Indeed, "Fund 7 has already obtained investors through its unfair and deceptive trade practices. . . As explained in the Offering Package, Fund 7's ownership [of two Colorado self-storage] facilities . . . is to further the investment strategy for Fund 7 – that is, for Fund 7 to acquire and manage self-storage facilities and manufactured housing communities." [*Id.* at ¶ 131]).

In light of the foregoing allegations, the court finds that Count VII states a claim under Rule 12(b)(6). The Second Amended Complaint plausibly alleges that Defendants received multiple things of value—investor lists, boot camp materials, the turnarounds, association with RV Horizons's successes—that it would be inequitable for them to retain without payment. *See* Restatement (Third) of Restitution and Unjust Enrichment § 42 & cmt. a. The court therefore finds that this count states a claim and denies Dahn's Motion in relevant part. Moreover, like Count VI discussed above, Count VII distinguishes between Dahn and the Smith Defendants and specifically identifies its factual predicate. Therefore, Rule 9(b) is satisfied.

Dahn's Motion to Dismiss is **DENIED**. In denying Defendants' respective Motions to Dismiss, this court specifically does not pass on the merits of whether ultimately Plaintiffs will be able to survive summary judgment, if filed, or prevail at trial on any issue, including but not limited

to whether any of Plaintiffs' identified marks have secondary meaning necessary to confer protection under the Lanham Act or whether Defendant Dahn contributed to the alleged acts of the remaining Defendants to confer liability on it personally.

## CONCLUSION

For the reasons set forth herein, it is **ORDERED** that:

(1)     The Smith Defendants' Motion to Dismiss [#72] is **DENIED**; and

(2)     Dahn Corporation's Motion to Dismiss [#74] is **DENIED**.


DATED:  November 15, 2019                    BY THE COURT:

                                                                  Nina Y. Wang
                                                                  United States Magistrate Judge