**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02780-NYW

RV HORIZONS, INC.; MHC AMERICA FUND, LLC; MHC AMERICA FUND CLASS  C, LLC; MHC AMERICA FUND 2, LLC; MHC AMERICA FUND 2 CLASS B, LLC;  MHPS ALUMNI, LLC; MHPS ALUMNI 2, LLC; MHPS ALUMNI 3, LLC; AFFORDABLE HOUSING COMMUNITY FUND 1, LLC; AFFORDABLE HOUSING COMMUNITY FUND 2, LLC; AFFORDABLE  HOUSING COMMUNITY FUND 3, LLC; AFFORDABLE HOUSING COMMUNITY FUND 4, LLC; AFFORDABLE HOUSING COMMUNITY FUND 5, LLC;  AFFORDABLE HOUSING COMMUNITY FUND 6, LLC; and AWA FUND 3, LLC,

     Plaintiffs,

v.

JAMIE SMITH, an individual; RYAN SMITH, an individual;
MHP PORTFOLIO, LLC; MHPI VII, LLC; ELEVATION CAPITAL GROUP, LLC; and DAHN CORPORATION,

     Defendants.

---

**DAHN CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

---

I.    <u>Introduction</u>

     While couched as a trademark or unfair competition case, this case is nothing more than an improper misapplication of trademark and unfair competition law in an attempt to create a non-compete when there was never a non-compete in place.  There is no dispute that Ryan Smith and Jamie Smith (the "Smiths"), owners of Fund 7, were business partners of David Reynolds ("Reynolds") and Frank Rolfe ("Rolfe"), owners of the Plaintiffs, for over a decade.  As is apparent, there has been a falling out amongst these former business partners, which has resulted in a slew of litigation in numerous forums, including this case.

     However, as the undisputed facts demonstrate, there is no case here.  Defendants, *with the assistance and approval of Plaintiffs' own Senior Vice President and General Counsel*, prepared

a Private Placement Memorandum that included a Track Record and Investment Summary.  Those documents accurately stated that Affiliates, *i.e.*, Reynolds and Rolfe, of the Members of the Manager, *i.e.*, the Smiths, owned and managed certain Prior Funds, and then provided historical information regarding those Funds.  This accurate summary is not trademark infringement, or a CCPA violation, or a situation of unjust enrichment.  Rather, Plaintiffs' owners are simply upset that two of their business partners, who were very successful at raising investor capital, decided to start their own fund.

Worse yet, with absolutely no factual basis, Plaintiffs are not only going after their former business partners, but they have also dragged Dahn Corporation ("Dahn") into this lawsuit merely because Dahn, which has decades of self-storage experience, is the Smiths' new business partner in a fund involving both manufactured housing and self-storage properties.  As the undisputed facts also demonstrate, there is no case against Dahn.  Rather, Plaintiffs are attempting to manufacture a case – and demand over $22 million in damages – to harass Defendants and stifle legitimate competition.  For the reasons discussed herein, each of Plaintiffs' claims against Dahn Corporation should be dismissed.

## II.   <u>Statement of Material Facts</u>

1.      Plaintiffs are each separate corporate entities.  Other than RV Horizons, each of the Plaintiffs is an entity that raises capital from investors and then uses that capital to purchase and manage mobile home communities ("MHCs").  Second Amended Complaint ("Complaint"), Dkt. 64, ¶¶ 8-22; Plaintiffs' Organizational Chart (Depo. Exh. 17), attached hereto as **Exhibit 1.**

2.      RV Horizons is a property management company that identifies potential MHCs, negotiates for acquisitions, and manages MHCs.  Compl. ¶ 38; Deposition of David Reynolds, Oct. 1, 2019 ("Reynolds Depo."), pp. 38:18-39:13, excerpts attached hereto as **Exhibit 2**.

3.      The common thread between each of the Plaintiffs is that they are owned, in part, and generally controlled by Reynolds and Rolfe.  Reynolds and Rolfe are not parties to this action. Compl. ¶ 30; Plaintiffs' Organizational Chart, Exh. 1.

4.      Twelve of the fifteen Plaintiffs, which are various entities and funds with some connections to Reynolds and Rolfe, each assert that it owns a single, protected trademark capable of distinguishing its services.   **Exhibit 3**, attached hereto, provides a listing of each alleged trademark by Plaintiff.

5.      The Smiths first met Rolfe and Reynolds nearly ten years ago.  In 2010, the Smiths, Reynolds, and Rolfe decided to combine their respective experiences.  The Smiths, Reynolds, and Rolfe have worked together in the MHC space to generate returns for their investors.  Compl.¶ 32; Affidavit of Ryan Smith (R. Smith Aff.) ¶ 8, attached hereto as **Exhibit 4.**

6.      The first MHC fund the Smiths were involved in with Reynolds and Rolfe was MHPI I, LLC, which was launched in February 2010.  The Smiths were also involved in several other MHC funds with Reynolds and Rolfe, including MHPI II, LLC, MHPI III, LLC, and MHPI IV, LLC (collectively, MHPI I-IV).  Compl. ¶ 35.

7.      The most recent fund in which the Smiths have been involved with Reynolds and Rolfe is MHC America Fund, LLC, one of the Plaintiffs in this case.  R. Smith Aff. ¶ 8, Exh. 4.

8.      MHC America Fund was formed in 2016, and it included all of the sponsors previously spread among MHPI I, LLC, MHPI, II, LLC, MHPI III, LLC, MHPI IV, LLC, MHPS Alumni, LLC, MHPS Alumni 2, LLC, MHPS Alumni 3, LLC, Affordable Housing Community Fund 1, LLC, Affordable Housing Community Fund 2, LLC, Affordable Housing Community Fund 3, LLC, Affordable Housing Community Fund 4, LLC, Affordable Housing Community Fund 5, LLC, and Affordable Housing Community Fund 6, LLC.  Compl. ¶ 37.

3

9.      Generally with these funds, the individuals (*i.e.*, the Smiths, Reynolds, and Rolfe) do not have a direct ownership interest in the fund; rather, their ownership interest is through another LLC (which LLC may be managed by yet another entity).  However, the Smiths, Reynolds, and Rolfe were all referred to as Principals of MHC America Fund.   MHC America Fund presentation (RVH_Fed_054441) (identifying Ryan Smith as a Principal of MHC America Fund) is attached hereto as **Exhibit 5**; MHC America Investment Summary (RVH_Fed_055636) (identifying Ryan and Jamie Smith as "Officers of the Members of the Manager" and touting their experience in "market evaluation, property analysis, management systems, due diligence and investor relations" related to mobile home communities) is attached hereto as **Exhibit 6**.

10.     MHC America Fund marketed itself through various means, including publishing a Track Record and Investment Summary, and through seminars and presentations.   In these various marketing materials, MHC America Fund would often collectively refer to the various funds owned, in part, by Reynolds and Rolfe, and include the funds with which the Smiths were involved.  *Id.*

11.     The MHC America Fund Private Placement Memorandum was prepared by Peter Reinert, Esq., with the law firm of Lowndes, Drosdick, Doster, Kanter & Reed, P.A., in Orlando, Florida.  Deposition of Peter Reinert, Oct. 3, 2019, p. 7:18-8:14, excerpts attached hereto as **Exhibit 7**; R. Smith Aff. ¶ 9, Exh. 4.

12.     The MHC America Investment Summary states:  "The members of the Manager (and their Affiliated companies) are estimated to own or control the 3rd largest number of MHCs, and the 5th largest number of mobile home lots in the country, with 199 MHCs and over 20,000 lots under management in 26 states."   MHC America Fund Investment Summary, Ex. 6 [RVH_Fed_055636].  The Track Record then included information regarding those "Prior Funds"

that included the Plaintiffs in this case as well as the MHPI I-IV funds, with which the Smiths were affiliated. A copy of MHC America's Track Record is attached hereto as **Exhibit 8**. (RVH_Fed_079272).

13.     Beginning in 2016, the Smiths decided to start their own fund – MHPI VII, LLC ("Fund 7") – and to partner with Dahn. Fund 7 would include a combination of both self-storage facilities, which Dahn had been successfully operating for decades, and manufactured housing communities. R. Smith Aff. ¶¶ 5-7, Exh. 4.

14.     In connection with the formation of Fund 7, the Smiths again retained the legal services of Peter Reinert. R. Smith Aff. ¶ 9, Exh. 4; Reinert Depo p. 7:24-8:14, Exh. 7.

15.     In connection with the formation of Fund 7, Dahn was separately represented by DLA Piper. Dahn does not have a direct ownership interest in Fund 7; rather, Dahn is the general partner of KMD Investments I, which is a 50% percent owner of MHPI VII Manager, LLC, which is the manager of Fund 7. Declaration of Nancy K. Naeve ("N. Naeve Dec."), March 6, 2020, ¶ 4, attached hereto as **Exhibit 9**.

16.     Dahn does not have the ability to unilaterally control or make decisions for Fund 7. Dahn is the general partner of KMD Investments I, which is a 50% percent owner of MHPI VII Manager, LLC, which is the manager of Fund 7, and a Smith-controlled entity owns the other 50% interest in the manager of Fund 7. N. Naeve Dec. ¶ 5, Exh. 9.

17.     Based on his work and relationship with the Smiths, including work for MHC America Fund, Mr. Reinert was introduced to Reynolds and Rolfe. Eventually, Reynolds asked Mr. Reinert to take a position as RV Horizons' Senior Vice President and General Counsel. Reinert Depo. p. 60:7-61:4, Exh. 7.

18.     Mr. Reinert accepted the offer, and on April 17, 2017, became RV Horizons' Senior Vice President and General Counsel.  Mr. Reinert also maintained a position at Lowndes, staying on with the firm and continuing his representation of Fund 7 and MHC America Fund through June 25, 2018, at which point Mr. Reinert informed the Smiths that he and Lowndes would no longer be representing the Smiths or any of their entities.  Reinert Depo. p. 6:19-7:17, Exh. 7; June 25, 2018 letter from Reinert to the Smiths (Depo. Exh. 18), attached hereto as **Exhibit 10**.

19.     During this time period, the Smiths were aware that Mr. Reinert would be taking a position with RV Horizons, and were aware that he became RV Horizon's Senior Vice President and General Counsel on April 17, 2017.  R. Smith Aff. ¶ 9, Exh. 4.

20.     Mr. Reinert was the primary drafter of the Private Placement Memorandum ("PPM") for Fund 7, and he used the MHC America Fund PPM as a template for preparing the Fund 7 PPM.  Reinert Depo pp. 24:15-25:4, 62:5-22, 79:22-80:7, Exh. 7.

21.     The PPM includes a definition of "Prior Funds", which included the Plaintiffs in this case.  In early drafts of the PPM, prepared by Mr. Reinert, the definition of "Prior Funds" stated that "Prior Funds" "shall mean any of those funds organized and managed by the members of the Manager . . ."  Excerpt of draft of Fund 7 Private Placement Memorandum p. 58 (LOWNDES – 0162), attached hereto as **Exhibit 11**.

22.     On April 11, 2017, while the Smiths were working with Mr. Reinert on drafts of the PPM, Ms. Smith provided several comments and questions to Mr. Reinert, including the following:  "Definition 'Prior Fund' or 'Prior Funds', this needs to add the word affiliates as Ryan and I did not organize/manage all of those funds."  Mr. Reinert responded with "[t]he requested change is made in the attached revised PPM and Operating Agreement."  Mr. Reinert did not raise any issue with Fund 7's use of the word "Affiliate" or reference to the Plaintiffs in the definition

of "Prior Funds."  Email exchange between Ms. Smith, Mr. Reinert, and others, April 11-12, 2017 (LOWNDES-01942-1947), attached hereto as **Exhibit 12**.

23.     On April 20, 2017, three days after Mr. Reinert became RV Horizons' Senior Vice President and General Counsel, Mr. Smith provided Mr. Reinert, along with one of his associates, Mr. Strickland, at Lowndes, with copies of the Track Record and Investment Summary, and asked "Peter, can you review the documents included below?"  And Mr. Smith made clear that "Once the exhibits are finalized, I will work to incorporate content into the website and prepare the Offering Package for digital distribution.  At this point, my hope is to have all of this done by tomorrow so we can launch on Monday."  Email exchange between Mr. Smith, Mr. Reinert, and others, April 20-21, 2017 (Depo. Ex. 23), attached hereto as **Exhibit 13**.

24.     On April 21, 2017, after conferring with Mr. Reinert and getting his approval, Mr. Strickland responded to Mr. Smith and stated:  "The track record and investment summary look good (however, in the investment summary, footnote 2 on page 2 cuts off mid-sentence)." *Id.*; Reinert Depo. p. 71:5-11, Exh. 7 (confirming that he spoke with Mr. Strickland and agreed the documents looked good).

25.     Mr. Smith then responded "Great catch . . . . I will now incorporate into the new website and send to review before sending to prospective investors."  Exh. 13.

26.     Mr. Reinert reviewed and approved the Track Record and Investment Summary after he took the position as Plaintiff RV Horizon's Senior Vice President and General Counsel, yet raised no issues or concerns with either the Smiths or Dahn.  Reinert Depo. pp. 70:5-71:24, Exh. 7.

27.     Dahn did not direct or control the decision to use any of Plaintiffs' alleged trademarks in the Offering Materials.  Rather, Dahn's role in the creation of the Track Record and

Investment Summary was limited to providing information regarding Dahn and the self-storage industry.  N. Naeve Dec. ¶ 6, Exh. 9.

28.     Fund 7 was officially launched in May 2017, and the Smith Defendants began providing the Offering Materials to prospective investors.  R. Smith Aff. ¶ 5, Exh. 4.

29.     By May 11, 2017, Plaintiffs were aware that Defendants had launched Fund 7. After discovering the launch of Fund 7, Plaintiffs did not raise any concerns with Fund 7's Offering Materials, even though they were publically available.  Email exchange between Eric Siragusa, the Smiths, Reynolds, and Rolfe, May 11, 2017 (Depo. Ex. 11), attached hereto as **Exhibit 14**.

30.     Plaintiffs contend that they did not learn that Fund 7's Offering Materials contained Plaintiffs' alleged trademarks until approximately March 2018.  Reynolds Depo. pp. 217:12-219:7, Exh. 2; email exchange between Mr. Siragusa, Mr. Rolfe, and Mr. Reynolds, March 15, 2018 (Depo. Exh. 91), attached hereto as **Exhibit 15.**

31.     In the summer of 2018, Fund 7 revised the Track Record and removed all references to the Plaintiffs, except for MHC America Fund.  The revised Track Record is attached hereto as **Exhibit 16**; R. Smith Aff. ¶ 13, Exh. 4.

32.     At all relevant times, Dahn maintained a website at www.miniustorage.com (the "Mini U Storage Webpage").  The Mini U Storage Webpage contains a link labelled as "Investor Information."  If someone clicks on the "Investor Information" link, they are redirected to a new domain – www.elevationfund.com.   Dahn does not own or control the website www.elevationfund.com.  N. Naeve Dec. ¶ 7, Exh. 9.

33.     Nowhere on the Mini U Storage Webpage are any of the Plaintiffs' alleged marks used.  N. Naeve Dec. ¶ 8, Exh. 9.

### III.   **Plaintiffs Acquiesced to Fund 7's Use of the Alleged Marks**

Even if Plaintiffs are able to establish they have protectable marks and Defendants' use of those alleged marks was likely to cause confusion, both of which are disputed, Plaintiffs' trademark claims still fail as a matter of law under the doctrine of acquiescence. "[A]cquiescence is an equitable doctrine that permits the court to deny relief in an action for trademark infringement if the evidence shows that the owner of the mark has, through his works or conduct, conveyed his consent to the defendant's use of the mark." *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 940 (7th Cir. 2016); *Creative Gifts, Inc. v. UFO*, 235 F.3d 540, 547-548 (10th Cir. 2000) (explaining acquiescence defense). Acquiescence "prevents the trademark owner from impliedly permitting another's use of his mark and then attempting to enjoin that use after the junior user has invested substantial resources to develop the mark's goodwill." *Hyson USA*, 821 F.3d at 940.

Other courts have "distilled [the] acquiescence doctrine into three elements: (1) the senior user actively represented that it would not assert a right or claim; (2) the [senior user's] delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." *Id.* at 941 (citing decisions from the 2d, 9th, and 11th Circuits); *see also Hodgdon Powder Company, Inc. v. Alliant Techsystems, Inc.*, 497 F.Supp.2d 1221, 1235 (D. Kan. 2007) (using the same elements). Here, the undisputed facts demonstrate that Plaintiffs acquiesced to Defendants' use of the alleged marks.

#### (A)   *Plaintiffs Actively Represented That Defendants Could Use the Alleged Marks*

Plaintiffs' trademark infringement claim is premised on the fact that the Fund 7 Offering Materials used the Plaintiffs' alleged marks in the Investment Summary and Track Record. Plaintiffs have no evidence that the alleged marks were used in any other way by the Defendants. However, it is undisputed that Peter Reinert acted as legal counsel for Fund 7, that he was the

primary drafter of the Fund 7 PPM, and – most importantly – that he reviewed and approved the Track Record and Investment Summary after being hired as an executive by RV Horizons.

These facts are critical – and dispositive – because not only was Mr. Reinert legal counsel for Fund 7, but he was also the Senior Vice President and General Counsel for *Plaintiff* RV Horizons when he reviewed and approved the Track Record and Investment Summary.  Mr. Reinert's testimony establishes the first element of an acquiescence defense.  Mr. Reinert, as RV Horizon's Senior Vice President and General Counsel, actively represented to Mr. Smith that the Investment Summary and Track Record "looked good."  Mr. Reinert gave no indication that the use of the Plaintiffs' alleged trademarks in the Investment Summary and Track Record was in anyway improper, unauthorized, or would subject Fund 7, or any of the other Defendants, to a trademark infringement claim. Therefore, Mr. Reinert, while acting on behalf of RV Horizons, actively consented to Fund 7's use of the alleged marks in the Track Record and Investment Summary.

    **(B)**    ***Plaintiffs' Delay in Asserting Their Rights Was Not Excusable***

While RV Horizon's Senior Vice President and General Counsel had knowledge of the Track Record and Investment Summary as early as April 2017, it was not until almost a year later, in March 2018, that Plaintiffs raised any issues with the reference to the Prior Funds in the Investment Summary and Track Record.  And when Plaintiffs finally raised the issue with Defendants, Fund 7 promptly made changes to the Track Record and Investment Summary.  There is no excuse for Plaintiffs' delay of almost a year before raising concerns regarding the use of Plaintiffs' alleged trademarks.

**(C)**    *Plaintiffs' Delay Has Caused Undue Prejudice*

Finally, Plaintiffs' delay has caused undue prejudice to the Defendants.  Plaintiffs are seeking over $22 million in damages based on the assumption that, from the launch of Fund 7 through April 2018, everyone who invested in Fund 7 would have made the exact same investment in either MHC America Fund or MHC America Fund 2 but for Defendants' alleged infringement. Putting aside the fact that Plaintiffs have no evidence to support this assumption, it is highly prejudicial for RV Horizons' Senior Vice President and General Counsel to draft and approve Fund 7's Offering Materials and then – years after the fact – for RV Horizons to claim that Plaintiffs are entitled to $22 million in damages based on Defendants' use of those Offering Materials for a year with no objection from Plaintiffs.  Plaintiffs simply cannot have it both ways. It cannot approve the Offering Materials, make no objection for almost a year, and then claim damages based on those same documents.

## IV.    No Reasonable Jury Could Find a Likelihood of Confusion

Trademark infringement and unfair competition are not the same as a copyright or patent. Merely using the Plaintiffs' mark is not sufficient to state a claim; instead, the alleged use must result in a likelihood of confusion.  *See Hornady Mfg. Co., Inc. v. Doubletap, Inc.*, 746 F.3d 995, 1001 (10th Cir. 2014) ("Whether proceeding under § 32 or § 43(a) of the Lanham Act, the central inquiry is whether the junior user's mark is likely to cause confusion with the senior user's mark." (internal quotations omitted)).

Here, Plaintiffs are each separate legal entities alleging its trademark has been infringed by all Defendants.  Plaintiffs cannot simply argue that a potential investor reviewing the Fund 7 Offering Materials would be confused that Fund 7 is somehow part of, sponsored by, or affiliated with "the Plaintiffs."  Rather, each Plaintiff has the burden of establishing that the Defendants' use

of <u>its</u> alleged mark is likely to cause confusion.  The individual Plaintiffs have failed to provide any evidence of a likelihood of confusion regarding <u>its</u> alleged mark.

In denying the Defendants' Motion to Dismiss, this Court noted:  "But Plaintiffs alleged that the Offering Package repeatedly refers to the Plaintiffs as "Affiliates," . . . and specifically in the context of mobile housing community investment and management to bolster the credibility of the managers behind Fund 7."  Dkt. 84 pp. 15-16.  However, the Offering Materials do not refer to the Plaintiffs as "Affiliates."  Rather, the Offering Materials refer to Reynolds, Rolfe, Siragusa, and RV Horizons as "Affiliates" of the Members of the Manager, *i.e.*, the Smiths.  *See* Complaint Ex. A, pp. 217-218.

This is not a semantic argument because it is undisputed that the Smiths were (and to some degree still are through MHC America Fund) affiliated with Reynolds, Rolfe, Siragusa, and RV Horizons.  Mr. Reynolds even admitted that the Smiths would "be allowed to say we have ten years of experience working with Dave [Reynolds] and Frank [Rolfe]."  Reynolds Depo. p. 181:8-16, Exh. 2.  In other words, Plaintiffs are not claiming that a potential investor reviewing the Offering Materials would be confused that Fund 7 is affiliated with Affordable Housing Community Fund 2, for example.  Rather, Plaintiffs – collectively – are claiming that a potential investor may be led to believe that Reynolds and Rolfe are somehow involved with Fund 7 because the Smiths have worked with Reynolds and Rolfe.

This is not a proper trademark infringement claim.  Plaintiffs, in reality, Reynolds and Rolfe, are attempting to use the Lanham Act as a backdoor way to create a non-compete provision with their former business partners.  It is for this reason that a prerequisite of a claim for trademark infringement requires evidence that the alleged mark is being used as a source identifier.  *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) ("[T]he likelihood of confusion

analysis also involves a preliminary question:  whether the defendants are using the challenged mark in a way that identifies the source of their goods.  If they are not then the mark is being used in a 'non-trademark way' and trademark infringement laws . . . do not even apply.").

The Sixth Circuit addressed a similar issue in *Hensley*, which involved a trademark infringement claim when the prior designer of a product designed a new product for a competitor. *Hensley Mfg.*, 579 F.3d at 607-08.  The plaintiff owned the trademark HENSLEY in connection with the marketing and sale of a trailer hitch designed by Jim Hensley.  Mr. Hensley then went to work for a competitor, the defendant ProPride, and he designed a new trailer hitch for the defendant.  ProPride's marketing materials stated:  "Only one man has ever designed a trailer hitch that effectively eliminates trailer sway before it begins.  That man is Jim Hensley.  NOW he has done it again and IMPROVED the PERFORMANCE of his old design."  *Id.*  Plaintiff argued infringement because consumers would likely be confused that defendant's hitch was made by or affiliated with the HENSLEY hitch.

The court, however, granted ProPride's motion to dismiss as a matter of law because ProPride was not using the Hensley name as a source identifier, but rather to explain who designed the product.  The Court rejected plaintiff's "likelihood of confusion" argument because it was clear from the advertisements that the product being offered was ProPride's and not the plaintiff's.  The ads contained ProPride's name, phone number, and website, and they were not using the HENSLEY mark to identify its product.  The court concluded "there is absolutely no confusion as to the source of the product being advertised."  *Id.* at 1008.

Similarly, here, Plaintiffs are concerned that if a potential investor sees historical information regarding the Plaintiffs' funds in Fund 7's Offering Materials, the potential investor is going to assume that Reynolds and Rolfe are somehow involved in Fund 7.  But that

assumption – even if true – does not mean Defendants are using the Plaintiffs' alleged marks as a source identifier.  Rather, the Fund 7 Offering Materials are clear that Fund 7 is a separate fund, and it is also clear that Reynolds and Rolfe are not Managers of Fund 7.  To the extent there is any confusion regarding Reynolds' and Rolfe's involvement in Fund 7, that alleged confusion is not based on the use of the Plaintiffs' alleged marks, but it is based on the fact that these parties were business partners in MHC funds for almost a decade.  As noted, Plaintiffs described the Smiths' experience and relationship to Plaintiffs' principals almost identically to the Smiths' Fund 7 descriptions to which Plaintiffs now object.  *See* Siragusa email, June 30, 2016 (Depo. Ex. 7), attached hereto as **Exhibit 17**.

Plaintiffs may be unhappy that they have parted ways with their former business partners, and that the two groups are now, in Plaintiffs' view, in competition, there is no reason to assume potential investors would only invest in one fund, rather than multiple funds to diversify assets and maximize their investment returns, but that unhappiness does not satisfy the required elements of a trademark infringement or unfair competition claim.  Each of the Plaintiffs has to allege facts demonstrating that consumers are likely to be confused regarding the source, origin, or approval of the "goods and services" being offered.  Plaintiffs have no evidence to meet their burden.

## V.   Plaintiffs Have No Evidence That *Dahn* Used Any of the Alleged Marks

For the reasons discussed above, Plaintiffs' trademark claims should fail as a matter of law against all Defendants.  Additionally, Plaintiffs' claims of trademark infringement against Dahn further fail as a matter of law because there is no evidence that Dahn – as opposed to the Smith Defendants or Fund 7 – have used any of the alleged trademarks.  After extensive discovery, Plaintiffs' trademark claim against Dahn is still premised solely on the fact that a Dahn-controlled website includes a link that, if clicked, takes the viewer to Elevation's website.

It is undisputed that the Plaintiffs' alleged marks are not used on the Dahn-controlled website, and it is undisputed that Dahn does not own or control the Elevation website.

To prevail on a Lanham Act claim under 15 U.S.C. § 1125(a)(1)(A) for infringing an unregistered trademark, a plaintiff must prove three elements:  (1) it owns a valid, protectable mark; (2) defendant used a mark in commerce; and (3) defendant's mark is so similar to plaintiff's that it is likely to cause consumer confusion.  *Am. Academy of Husband-Coached Childbirth v. Thomas*, No 10-cv-2899-CMA-MEH, 2010 WL 5184779, at *1 (D. Colo. Dec. 15, 2010); *see also NetQuote, Inc. v. Byrd*, 504 F.Supp.2d 1126, 1133 (D. Colo. 2007) (identifying similar elements for a claim under 15 U.S.C. § 1125(a)(1)(B)).

Under either claim, Plaintiffs have to establish that Dahn – as opposed to the Smith Defendants or Fund 7 – was either using the alleged marks or was otherwise making false or misleading representations in connection with commercial advertising.  Plaintiffs have no facts or basis to claim that Dahn used any of the alleged marks.  Instead, their argument is that Dahn assisted or participated in the Smith Defendants' use of the alleged marks in the Offering Materials. As a matter of law, that is insufficient to establish a direct infringement claim against Dahn.  *See Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, 430 F.Supp.2d 709, 713 (S.D. Ohio 2006) (dismissing direct infringement claim against one co-defendant where the only allegations of use were against the other co-defendant because, "[b]efore a person can be held liable for direct trademark infringement, they must have *used* a mark confusingly similar to another person's mark" (emphasis in original)).

## VI.    <u>Plaintiffs Have No Evidence That Dahn Controlled the Smith Defendants</u>

Plaintiffs have no evidence of direct infringement by Dahn; instead, their argument is that Dahn is liable because it assisted the Smith Defendants in their alleged infringement of the alleged

marks.   In other words, Plaintiffs are arguing that Dahn should be liable under a theory of contributory infringement.

To state a claim for contributory infringement against Dahn, Plaintiffs must prove that Dahn either:  (1) intentionally induced a third party, *i.e.*, the Smith Defendants,  to infringe on the mark; or (2) knowingly enabled a third party to infringe on the mark.  *Inwood Labs., Inc. v. Ives Labs, Inc.*, 456 U.S. 844, 854-55 (1982).  This Court, in its Order denying Dahn's Motion to Dismiss Plaintiffs' Second Amended Complaint, allowed Plaintiffs' contributory infringement claims against Dahn to proceed because "the Second Amended Complaint alleges facts that could, if true, establish that Dahn induced or enabled the Smith Defendants, a "third party", to infringe on Plaintiffs' mark.  Dkt. 84, p. 18.

The record in this case is devoid of any facts establishing that Dahn induced or enabled the Smith Defendants.   The undisputed and uncontroverted evidence is that Dahn's role and participation in the creation of the Offering Materials was to provide information regarding Dahn and the self-storage industry.   While Dahn was aware of the contents of the Offering Materials, there is no evidence that Dahn had any involvement in the decision to refer to the Plaintiffs in the Offering Materials.   Rather Plaintiffs' argument is based on the fact that Dahn has an ownership interest in Fund 7, and through that ownership interest it could have opposed Fund 7's use of the alleged marks.  *See* Reynolds Depo. pp. 210:16-212:6, Exh. 2.

As a matter of law, a claim of contributory infringement cannot be based solely on having an ownership interest in the allegedly infringing entity.  *See Luxottica Group, S.p.A v. Greenbriar Marketplace II*, *LLC*, 212 F.Supp.3d 1375, 1378 (N.D. Ga. 2016) (in order to establish a claim of contributory infringement, plaintiff must "demonstrate that the defendant actively and materially furthered the unlawful conduct—either by inducing it, causing it, or in some other way working to

bring it about (for example by directly controlling or monitoring the third party's conduct)").  A website link and a general allegation that Dahn is helping to promote Fund 7 is insufficient as a matter of law to establish a contributory infringement claim.

## VII.  Plaintiffs' Have No Evidence Supporting Their Colorado Consumer Protection Claim ("CCPA") Against Dahn

To prevail on a claim under the CCPA, a plaintiff must prove:  (1) the defendant engaged in an unfair or deceptive trade practice; (2) the challenged practice occurred in the course of defendant's business; (3) the challenged practice significantly impacts the public as actual or potential consumers of the defendant's goods or services; (4) the plaintiff suffered injury in fact to a legally protected interest; and (5) the challenged practice caused the plaintiff's injury.   *Greenway Nutrients, Inc. v. Blackburn*, 33 F.Supp.3d 1224, 1259 (D. Colo. 2014) (citing *Hall v. Walter*, 969 P.2d 224, 235 (Colo. 1998)).

First, Plaintiffs' CCPA claim fails because referring to the Plaintiffs in the Offering Materials is not an unfair or deceptive trade practice.  Plaintiffs' CCPA claim is based on the same facts as their trademark infringement claim – *i.e.*, that the Fund 7 Offering Materials' references to the Plaintiffs are likely to deceive consumers.  For the reasons already discussed, Defendants' references to the Plaintiffs in the Offering Materials were accurate and do not constitute trademark infringement and do not qualify as an unfair or deceptive trade practice.

In addition, Plaintiffs' CCPA claim further fails because there is no evidence that the challenged practices complained of significantly impact the public.  While there is a private right of action under the CCPA, the Act is not meant to remedy purely private transactions.  *See Hall v. Walter*, 969 P.2d 224, 234 (Colo. 1998) ("Thus, if a wrong is private in nature, and does not affect the public, a claim is not actionable under the CCPA.").  Considerations relevant to whether the alleged conduct significantly impacts the public include:  "(1) the number of consumers directly

affected by the challenged practice; (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice; and (3) evidence that the challenged practiced has previously impacted other consumers or has the significant potential to do so in the future." *Henson v. Bank of America*, 935 F.Supp.2d 1128, 1142 (q*uoting Rhino Linings USA v. Rocky Mountain Rhino Lining Inc.,* 62 P.3d 142, 149 (Colo. 2003)).

It is undisputed that the relevant consumer in this case is limited to accredited investors who meet the requirements under Regulation D, Rule 506(c) of the SEC regulations. As such, the potential customers here must have a net worth over $1 million or annual income over $200,000. *See* 17 C.F.R. § 230.501(a) (providing definition of accredited investor).

Accordingly, none of the considerations listed above demonstrate a significant public impact. The number of alleged "consumers" – especially consumers in Colorado – is very small. The sophistication and bargaining power of the consumers is very high. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 125 (1953) (explaining that private offerings are exempt from SEC registration requirements because they are only offered to potential investors "who are shown to be able to fend for themselves" in these types of transactions). And there is no evidence that the reference to the Prior Funds in the Offering Materials has impacted any consumers. Mr. Reynolds even testified that most investors would understand that the Track Record contains historical information regarding the Prior Funds, and they would realize that an investment in Fund 7 is not an investment in any of the Prior Funds. Reynolds Depo., p. 193:8-19, Exh. 2.

Instead, Plaintiffs' CCPA claim – along with all of their other claims – is nothing more than an improper effort to use the CCPA to effectively enforce a nonexistent non-compete against the Smiths. There is no evidence to support the theory that a potential investor saw a reference to MHPS Alumni, for example, in the Offering Materials, and based on that was confused that

MHPS Alumni was involved with Fund 7. Rather, what Plaintiffs are upset about is that the Smiths started their own fund and are accurately highlighting their prior experience with Rolfe and Reynolds. If Rolfe and Reynolds did not want the Smiths to start their own fund, then they should have obtained a non-compete at the outset of their business relationship. They cannot now attempt to use the CCPA, or the Lanham Act, as a way to enforce a nonexistent non-compete agreement, or to silence the Smiths from describing their prior relevant experience.

## VIII.   No Evidence To Support Unjust Enrichment Claim Against Dahn

"To state a claim for unjust enrichment, a plaintiff must allege facts showing (1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without compensating the plaintiff." *Reich v. Genzyme Corp.*, No. 14-cv-01684-RM-MJW, 2015 WL 13236347, at *11 (D. Colo. Aug. 14, 2015) (citing *Hottinger Excavating & Ready Mix, LLC v. R.E. Crawford Constr., LLC*, No. 14-cv-00994-KMT, 2014 WL 6461350, at *6 (D. Colo. Nov. 18, 2014)).

There are 15 separate and distinct Plaintiffs in this case. Therefore, each Plaintiff – to the extent that Plaintiff is seeking an unjust enrichment claim – must establish the elements above. Plaintiffs cannot survive summary judgment by generally alleging that Dahn has received a benefit at the collective expense of the Plaintiffs. Each Plaintiff must identify what benefit Dahn received at that Plaintiff's expense, and identify why it would be unfair to retain those benefits.

Dahn attempted to address this issue in its discovery requests to the Plaintiffs. Specifically, Dahn served the following interrogatory to each of the Plaintiffs: "Identify the benefits You claim Dahn received based on Your efforts and expenses and the factual and legal basis for Your contention that it would be unfair for Dahn to retain those benefits." Plaintiffs' Responses to

Dahn's First Interrogatories and Requests for Production, p. 11 (Rog. 15), attached hereto as **Exhibit 18**.

In response, the Plaintiffs provided the following collective response:

Plaintiffs object to this request as premature.  The Plaintiffs' damages will be proved by expert testimony, and the time for expert disclosures has not yet come.  Plaintiffs will supplement this response through expert disclosures.  Subject to and notwithstanding the forgoing objections, Plaintiffs state that Dahn's actions damaged Plaintiffs.

After multiple extensions, Plaintiffs finally served their expert disclosures on January 29, 2020.  Plaintiffs' damages expert – Jon S. Ahern – disclosed four opinions.  The first three opinions addressed Plaintiffs' alleged lost profit damages, which are not applicable to an unjust enrichment claim.  And the summary of Mr. Ahern's fourth opinion states:  "Defendants' unjust enrichment, which I understand is a monetary remedy also available to Plaintiffs based on their legal claims, cannot be fully calculated from the available information."  Expert Report of Jon S. Ahern, Jan. 29, 2020, p. 27, attached hereto as **Exhibit 19**.

In response to Dahn's Motion to Dismiss Plaintiffs' Second Amended Complaint, this Court stated:  "The Second Amended Complaint plausibly alleged that Defendants received multiple things of value – investor lists, boot camp materials, the turnarounds, association with RV Horizon's successes – that it would be inequitable for them to retain without payment."  Order p. 25.  Yet, after over a year of discovery and ample opportunity to prepare expert reports, Plaintiffs have failed to provide any evidence supporting the allegations that Dahn has been unjustly enriched at the expense of any of the Plaintiffs.

For these reasons, Dahn requests entry of summary judgment in its favor on all claims for relief.

DATED:  March 6, 2020.                    s/ Joseph C. Daniels
                                          Christian H. Hendrickson
                                          Joseph C. Daniels
                                          SHERMAN & HOWARD L.L.C.
                                          633 Seventeenth Street, Suite 3000
                                          Denver, Colorado 80202
                                          Telephone:  (303) 297 2900
                                          Facsimile:  (303) 298-0940
                                          E-Mail:  chendrickson@shermanhoward.com
                                                   jdaniels@shermanhoward.com
                                          *Attorneys for the Defendant Dahn
                                          Corporation*

## CERTIFICATE OF SERVICE

I certify that on March 6, 2020, a true and correct copy of the foregoing **DAHN CORPORATION'S MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

Craig Stewart, Esq.                  Christopher H. Toll, Esq.
Jessica J. Smith, Esq.               HOLLAND & HART LLP
HOLLAND & HART LLP                   6380 S. Fiddlers Green Circle, Suite 500
555 Seventeenth Street, Suite 3200   Greenwood Village, CO 80111
Denver, CO  80202                    CToll@hollandhart.com
CStewart@hollandhart.com
JJSmith@hollandhart.com

Michael D. Crosbie, Esq.
Nicole L. Ballante, Esq.
SHUTTS & BOWEN LLP
300 South Orange Avenue, Suite 1600
Orlando, FL 32801
mcrosbie@shutts.com
nballante@shutts.com

                                          s/ Denise S. Davis
                                          Denise S. Davis

Active/51399386.1

21