## UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

RV HORIZONS, INC., et al.,

               Plaintiffs,                      Civil Action No. 1:18-cv-02780-NYW

vs.

JAMIE SMITH, et al.,

               Defendants.

_____/

## SMITH DEFENDANTS' MOTION TO EXCLUDE
## THE TESTIMONY OF JON AHERN AND BEN BRABAND

The defendants, Jamie Smith, Ryan Smith, MHPI VII, LLC ("Fund 7"), and Elevation Capital Group, LLC ("Elevation") (collectively, the "Smith Defendants"), pursuant to Federal Rules of Evidence 403 and 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L.Ed. 2d469 (1993), move to exclude as inadmissible the testimony of Jon Ahern and Ben Braband, experts retained by the plaintiffs in this case. Mr. Ahern determined damages for entities that are *not* parties in this case, using a fundamentally flawed assumption provided by counsel for the plaintiffs. Mr. Braband has offered opinions that are wholly irrelevant to the matters at issue in this case. Neither should be permitted to testify.

## I.     INTRODUCTION

On January 29, 2020, the plaintiffs disclosed Jon Ahern, of Alvarez & Marsal Dispute and Investigations, LLC, and Ben Braband, of Saddleback Valley Communities, LLC, as experts in this case. In conjunction with this disclosure, the plaintiffs served copies of the separate expert reports prepared by Mr. Ahern and Mr. Braband (the "Ahern Report" and the "Braband Report," respectively).[1]

---

[1] A copy of the Ahern Report, without attachments, is attached as **Exhibit "A."** A copy of the Braband Report is attached as **Exhibit "B."**

In the Ahern Report, Mr. Ahern purports to have examined the underlying facts of the case in order to render an expert opinion. Mr. Ahern makes four separate conclusions regarding the plaintiffs' alleged damages. These conclusions rest on the wholly unfounded assumption that in the absence of the Smith Defendants' allegedly improper actions, *all* of Fund 7's investors would have invested with two of the plaintiffs. But Mr. Ahern's assumption is belied by the evidence. Mr. Ahern's testimony should be excluded because the opinions rendered by Mr. Ahern lack a proper foundation, the methodology adopted by Mr. Ahern is faulty, and the probative value of Mr. Ahern's testimony, if any, would be outweighed by the danger of unfair prejudice under Rule 403 of the Federal Rules of Evidence.

Mr. Braband's testimony should also be excluded. Mr. Braband offers two opinions: (1) the property management fees paid to the plaintiff, RV Horizons, Inc. ("RV Horizons"), for the properties it managed were consistent with, if not less than, market-based compensation received by other property managers in the manufactured home community industry; and (2) RV Horizons is a reputable property manager for manufactured home communities. These opinions are wholly irrelevant to the issues before the Court in this case. Additionally, Mr. Braband's opinions are not supported by sufficient facts and data. Finally, in the event the Court finds Mr. Braband's opinions to be relevant and supported by a proper foundation, his testimony should be excluded under Rule 403 as unfairly prejudicial.

## II.   FACTUAL AND PROCEDURAL HISTORY

### A.   The Parties

Fund 7 was formed in April 2017 and launched in May 2017. [Doc. 97-1, ¶ 5]. Fund 7 was formed as an investment fund that invests in mobile home communities and self-storage facilities. [Doc. 97-1]. Since 2010, Jamie and Ryan Smith have worked on various investment

funds with the principals of the plaintiff entities, David Reynolds and Frank Rolfe. [Doc. 97-1, ¶ 8]. Until recently, they still worked together as principals of the manager of one of the plaintiffs, MHC America Fund, LLC ("MHC America Fund"). [Doc. 97-1, ¶ 8]. RV Horizons has provided property management services for several of the mobile home park communities owned by funds in which the Smiths and the plaintiffs have been involved.

### B.   The Fund 7 Offering Package

The Fund 7 Offering Package includes, among other things, the Fund Private Placement Memorandum (PPM), an affiliate Track Record, and the Fund 7 Limited Liability Agreement. [Doc. 64-1]. This lawsuit rests entirely on the identification in the Fund 7 Offering Package of some of the plaintiff entities as being owned or managed by "affiliates" of the members of the Fund 7 manager (i.e., Jamie and Ryan Smith). [Doc. 64-1, p. 81]. This information was included at the end of the Fund 7 Offering Documents, in the section titled "Track Record." [Doc. 97-1, ¶ 10]. The names of the plaintiff entities were disclosed to show that some of the plaintiffs were managing other funds in which Mr. Smith and Mrs. Smith had participated or with which they were affiliated, or through which Fund 7 may be making an investment. *Id.*

Peter Reinert, the general counsel for Mr. Reynolds' and Mr. Rolfe's entities, created the Fund 7 Offering Package. [Doc. 97-1, ¶ 9]. Because the Smiths had worked with the plaintiffs and their principals in the past and Fund 7 was contemplating an investment in some of the plaintiff entities, Mr. Reinert required the Fund 7 Track Record to list the plaintiff entities as Prior Funds of *members* of the manager of Fund 7. [Doc. 98-4, pp. 76-77; p. 134, ll. 7-22]; [Doc. 98-3, p. 19, ll. 3-10]; [Doc. 98-6, p. 71, ll. 8-19; p. 82, ll. 2-15; p. 83, ll. 9-20]. Because of this requirement by Mr. Reinert, Jamie Smith insisted on Mr. Reinert adding the term "affiliates" because she and Ryan Smith did not manage each of the funds listed. [Doc. 98-3, p. 47, ll. 2-22];

*see also* [Doc. 97-10, p. 3 (Mrs. Smith: "Definition 'Prior Fund' or 'Prior Funds': this needs to add the word affiliates as Ryan and I did not organize/manage all of those funds."). Mr. Reinert made those changes in the Fund 7 Offering Documents. [Doc. 97-10, p. 2 (Mr. Reinert: "The requested change is made in the attached revised PPM and Operating Agreement.")].

After the parties determined that Fund 7 would not invest in MHC America Fund, the Track Record and all references to the plaintiffs were removed from the Fund 7 Offering Package. [Doc. 97-1, ¶ 13].

### C.   Fund 7 Investors

Investors in Fund 7 are sophisticated. [Doc. 98-2, p. 64, ll. 1-7; Doc. 98-5, pp. 69-70, ll. 20-25, 1-2]. Fund 7 requires a minimum investment of $50,000.00. [Doc. 97-1, ¶ 15]. There is no evidence that the Smith Defendants downloaded or used the plaintiffs' investor lists. [Doc. 98-3, p. 79, ll. 4-10]; [Doc. 98-1, pp. 122-123, ll. 18-25, 1-4]. Instead, the Smith Defendants' investor list comprises actual or potential investors who have requested to be part of the Elevation database, or who are personally acquainted with the Smiths. [Doc. 98-6, pp. 143-144, ll. 13-25, 1; pp. 150-151, ll. 23-25, 1-19]. This database is separate and apart from the plaintiffs' purported investor list. [Doc. 98-6, p. 191, ll. 14-24].

Mr. Reinert testified that he is not aware of any unfair promotion of Fund 7 by the Smiths. [Doc. 98-3, p. 51, ll. 3-5]. In fact, not a single investor has testified that they would have invested elsewhere if they had known the plaintiff entities were not involved with Fund 7. Instead, the evidence is overwhelming that many investors in Fund 7 invested precisely because the plaintiff entities' members were *not* involved. For example:

> ● Aaron Cook, who invested $700,000.00 in Fund 7 through an entity, CoveMark SMP Fund, submitted an affidavit stating that he learned of Fund 7 through a contact, Jeremy Roll. Mr. Cook previously invested in funds managed by Mr. Reynolds and Mr. Rolfe and had not been pleased

with the performance of those funds. Mr. Cooke stated that he was never confused about Fund 7's management structure, nor did Fund 7's Offering Documents cause him confusion. Finally, Mr. Cooke stated that he would not have caused any entity he manages to invest in Fund 7 had Mr. Reynolds, Mr. Rolfe or Mr. Siragusa been involved, that he chose not to invest in MHC America Fund 2, LLC, and that he does not plan on investing with Mr. Reynolds, Mr. Rolfe, or Mr. Siragusa in the future. [Doc. 97-13].

- Paul Moore, whose entity Wellings Income Fund I, LLC invested a total of $2,000,000 in Fund 7, submitted an affidavit stating that he learned of Fund 7 through his contact, Jeremy Roll. Mr. Moore did not know who Mr. Reynolds or Mr. Rolfe were until late 2019, and never heard of MHC America Fund 2, LLC until February 2020. Mr. Moore stated that he was never confused about the management structure of Fund 7 and knew that the managers of Fund 7 were the Smiths and Dahn Corporation. Finally, Mr. Moore stated that he would not have considered an investment into MHC America Fund 2, LLC because he had no knowledge of its existence until February 2020. [Doc. 97-13].

- Hunter Thompson, whose entity invested $13,804,500.00 into Fund 7, submitted an affidavit stating that he previously invested in funds managed by Dave Reynolds, Frank Rolfe, and Eric Siragusa and was not pleased with the communication and transparency of those funds. Mr. Thompson stated that he was presented with the opportunity to invest in MHC America Fund 2, LLC, but declined due to the profile of the assets, the uncertainty regarding the outcome of previous funds in which he had invested, and the lack of transparency on the part of the managers of those funds—Mr. Reynolds, Mr. Rolfe, and Mr. Siragusa—with respect to the communication of the anticipated outcome of the previous funds' performance. Mr. Thompson will not invest with these individuals again. Finally, Mr. Thompson stated that he knew that Mr. Reynolds, Mr. Rolfe, and Mr. Siragusa were not involved in the management of Fund 7, and that he was never confused about Fund 7's management structure. [Doc. 97-13].

- Jamie Smith, who since 2010 has sponsored and managed five funds with Mr. Reynolds, Mr. Rolfe, or Mr. Siragusa, submitted an affidavit stating that in August 2018, she received a solicitation for her entities JR Smith Holdings LLLP and MHPI V, LLC to consider making an investment into MHC America Fund 2, LLC. Mrs. Smith stated that, under no circumstances, would she cause any entity which she managed, or any of her affiliates, to invest in MHC America Fund 2, LLC, or any fund managed by Mr. Reynolds, Mr. Rolfe, or Mr. Siragusa. This is due to her concerns over their management practices, breaches of fiduciary duties

and operating agreements, self-dealing, overbilling, and more. [Doc. 97-13].

- Mark Khuri submitted an affidavit stating that he previously invested in several funds managed by David Reynolds, Frank Rolfe, and Eric Siragusa. Mr. Khuri stated that he did not invest in MHC America Fund, LLC or MHC America Fund 2, LLC because he had not been pleased with the performance and transparency of the funds managed by Mr. Reynolds, Mr. Rolfe, and Mr. Siragusa. Mr. Khuri stated that he learned of Fund 7 from his contact, Jeremy Roll, who connected him with Ryan Smith. After researching Fund 7, Mr. Khuri caused two separate entities he managed to invest in Fund 7. Mr. Khuri was not confused about Fund 7's management structure, nor did the Fund 7 Offering Documents cause him confusion. Mr. Khuri knew that Mr. Reynolds, Mr. Rolfe, and Mr. Siragusa were not involved with Fund 7. [Doc. 97-13].

These investors – whose affidavits were collected over the course of a few days – amount to $20,368,500.00 invested in Fund 7. This doesn't even take into account the investments made by Dahn Corporation's employees and family members.

As the statements made by Fund 7 investors under oath make clear, the Smith Defendants did not mislead investors looking to invest in Fund 7. *See also* [Doc. 97-1, ¶ 31]. The Smith Defendants did not divert investors away from MHC America Fund or MHC America Fund 2. *Id.* In fact, between the launch of Fund 7 and February 28, 2018, when MHC America Fund closed to new investment—the same time period the plaintiffs argue they were diverting investments to Fund 7—Ryan Smith and Jamie Smith were responsible for raising as much as $45,000,000 for MHC America Fund. [Doc. 97-1, ¶ 31].

### D.    The Lawsuit

The plaintiffs initially filed this lawsuit on October 30, 2018. The plaintiffs' claims rely on the plaintiffs' position that the Smith Defendants "used Plaintiffs' confidential and proprietary investor lists without authorization, intentionally mispresented to Colorado investors the scope of Defendants' experience by relying on Plaintiffs' trademarks, experience, and goodwill, falsely

advertised to Colorado investors, and unfairly traded on Plaintiffs' names, experience, and goodwill for manufactured housing community projects." [Doc. 64, ¶5]. Some individual members (but not parties here) of the LLCs that represent the promote interest of two of the plaintiffs—MHC America Fund and MHC America Fund 2—have now claimed damages in excess of twenty-two million dollars. Mr. Ahern has not identified a single dollar of damages for the named plaintiffs, including RV Horizons.

## III.   ARGUMENT

### A.   LEGAL STANDARD

Rule 702 of the Federal Rules of Evidence, titled "Testimony by Expert Witnesses," provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion if:
>
> (a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)   the testimony is based on sufficient facts or data;
>
> (c)   the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.

Before expert testimony can be admitted pursuant to Fed. R. Evid. 702, the Court must serve as a gatekeeper to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Bill Barrett Corp. v. YMC Royalty Company, LP*, 918 F. 3d 760, 770 (10th Cir. 2019) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). This Court has explained:

> To fulfill that gatekeeper function, courts within the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") conduct a two-part inquiry. First, this court considers whether the expert's

> proffered testimony has a reliable basis in the knowledge and experience of his or her discipline by conducting a preliminary inquiry into the expert's qualifications and the admissibility of the proffered evidence, i.e. whether the reasoning or methodology underlying the testimony is valid. Second, the court considers whether the proposed testimony is sufficiently relevant to the issues presented to the factfinder. The party offering the expert opinion bears the burden of establishing its admissibility, including the foundational requirements by a preponderance of the evidence.

*Harrington v. Aerogelic Ballooning, LLC*, No. 18-cv-02023, 2019 WL 2613334, *5 (D. Col. April 25, 2019) (internal citations omitted), *adopted in part,* 2019 WL 5095683 (August 8, 2019). A district court has wide latitude concerning the admissibility of expert testimony. *Norris v. Baxter Healthcare Corp.*, 397 F. 3d 878, 883 (10th Cir. 2005).

Rule 702 requires that any expert opinion be based on sufficient facts or data. *Mooring Capital Fund, LLC v. Knight*, 388 Fed. Appx. 814, 820 (10th Cir. 2010). An expert's proposed testimony "must be supported by appropriate validation—i.e. 'good grounds,' based on what is known." *Squires ex rel. Squires v. Goodwin*, 829 F. Supp. 2d 1041, 1050 (D. Colo. 2011) (quoting *Mitchell v. Gencorp, Inc.*, 165 F. 3d 778, 781 (10th Cir. 1999)). As the court in *James River Ins. Co. v. Rapid Funding, LLC* explained:

> The plain language of 702 requires an expert to base his or her opinion on sufficient facts or data. Even if an expert presents impeccable credentials, he or she cannot speculate or jump to an opinion without factual support. A party's failure to support expert opinion with sufficient facts and data requires exclusion of the unsupported evidence. Thus, ***admissible expert opinion requires a foundation based on facts*** that allow the expert to express a reasonably accurate conclusion as opposed to conjecture or speculation.

No. 07-cv-01146-CMA-BNB, 2009 WL 481688, *7-8 (D. Colo. Feb. 24, 2009) (emphasis added and internal citations, ellipses, and quotation marks omitted), *reversed on other grounds*, 658 F. 3d 1207 (10th Cir. 2011).

8

In the Tenth Circuit, the "assessment of the sufficiency of the facts and data used by the witness is a quantitative, rather than qualitative, analysis." *A.R. by Pacetti v. Corporation of President of Church of Jesus Christ of Latter-Day Saints*, No. 12-cv-02197-RM-KLM, 2013 WL 5463518, *5 (D. Colo. Sept. 30, 2013) (citing Fed. R. Evid. 702, Advisory Committee Notes to 2000 Amendments); *see also United States v. Lauder*, 409 F. 3d 1254, 1264 n. 5 (10th Cir. 2005) (the reference to "sufficient facts and data" in Rule 702 "calls for a quantitative rather than qualitative analysis"). Accordingly, the proponent of expert testimony "must first show that the witness gathered sufficient facts and data to formulate the opinion." *Pritchett v. I-Flow Corp.*, No. 09-cv-02433-WJM-KLM, 2012 WL 1059948, *4 (D. Colo. Mar. 28, 2012); *see also U.S. v. Crabbe*, 556 F. Supp. 2d 1217, 1223 (D. Colo. 2008) (this inquiry concerns whether the expert "obtained the amount of data that the methodology itself demands").

Notwithstanding the Tenth Circuit's focus on the amount or volume of the data examined by the proposed expert, "[w]hen expert opinion is not supported by sufficient facts to validate in the eyes of the law, or when indisputable record facts contradict  or  otherwise  render  the opinion unreasonable, it cannot support a jury's verdict and will be excluded." *Pioneer Centres Holding Company Employee Stock Ownership Plan and Trust v. Alerus Financial, N.A.*, 858 F. 3d 1324, 1342 (10th Cir. 2017) (quoting *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S.Ct. 2578, 125 L.Ed. 168 (1993)); *see also Birse v. CenturyLink, Inc.*, No. 17-cv-02872-CMA-NYW, 2020 WL 1062902, *7, n.1 (D. Colo. Mar. 5, 2020) (quoting the Supreme Court's opinion in *Brooke* for the proposition that "[e]xpert testimony is useful as a guide to interpreting . . . facts, but it is not a substitute for them" and noting that the plaintiffs in the case were "attempting to use an expert's bottom line conclusion as a substitute for the facts").

In addition to the requirement that expert opinions be based on sufficient facts and data, expert testimony must also be relevant in order to be admissible. *Sanchez v. Duffy*, 416 F. Supp. 3d 1131, 1148 (D. Colo. 2018). In order to be relevant, "expert testimony must logically advance a material aspect of the case and be sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Hobdy v. Wells Fargo Bank, National Association*, No. No. 17-cv-1168-WJM-KMT, 2019 WL 132137, *1 (D. Colo. Jan. 8, 2019) (internal citations and quotations omitted); *see also* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action"). Even if an expert's opinion is scientifically valid, the testimony must "fit" the case in order to be admissible. *Etherton v. Owners Ins. Co.*, 829 F. 3d 1209, 1217 (10th Cir. 2016); *see also Bitler v. A.O. Smith Corp.*, 400 F. 3d 1227, 1234 (10th Cir. 2005) ("[e]ven if an expert's proffered evidence is scientifically valid and follows appropriately reliable methodologies, it might not have sufficient bearing on the issue at hand to warrant a determination that it has relevant 'fit'").

**B.     AHERN'S TESTIMONY MUST BE EXCLUDED**

**i.     Ahern's Testimony Lacks a Proper Foundation**

Mr. Ahern's opinion testimony must be excluded because it wholly rests on "facts" supplied by the plaintiffs and their counsel—facts that are completely contradicted by record evidence. Appendix C to the Ahern Report identifies the documents and information on which Mr. Ahern's opinions rest. The legal filings considered by Mr. Ahern in preparing his report were limited to pleadings and non-evidentiary motions, and the responses and orders related to those non-evidentiary motions. Mr. Ahern relied on "[d]iscussions with Plaintiff personnel: David Reynolds, Frank Rolfe, and Eric Siragusa," and the bare allegations made by the plaintiffs

in their pleadings. *See* Ahern Report, Appendix C; Ahern Report, ¶¶ 17-20. For example, the

Ahern Report states:

> Plaintiffs allege that Defendants were unfairly promoting Fund 7 and actively discouraging investors from Plaintiffs' MHCA 1 and MHCA 2 funds, which resulted in the diversion of investor capital away from Plaintiffs' MHCA 1 and MHCA 2 funds and into Defendants' Fund 7.

Ahern Report, ¶ 18. Based on allegations such as this one, rather than facts in evidence, Mr.

Ahern concludes that "Plaintiffs' damages are reasonably calculated as the lost profits suffered

by Plaintiffs from Defendants' diversion of investor funds into Fund 7 and away from Plaintiffs'

funds." Ahern Report, ¶ 21.

This particular opinion, and the other opinions included in the Ahern Report, rest on the

faulty assumption that but for the defendants' allegedly improper conduct, *all* of the investors in

Fund 7 would have invested in the plaintiffs' funds. Indeed, Mr. Ahern acknowledges as much

throughout his report:

> 29.  If Defendants had not engaged in alleged misconduct, the "but for" scenario ***assumes that certain capital raised for Fund 7 would instead have been raised for, and used in, MHCA 1 and, later, MHCA 2*** . . .

> 30.  Based on discussions with Plaintiffs' counsel, I have been asked to calculate Plaintiffs' damages ***assuming that, if Defendants' alleged misconduct had not occurred, the investor capital raised by Fund 7 through February 28, 2018 would instead have been raised for MHCA 1. In addition, I have been asked to assume that investor capital raised by Fund 7 during March 2018 and April 2018 would instead have been raised for MHCA 2.***

> \*\*\*

> 32.  Thus, for purposes of calculating Plaintiffs' damages in this matter, ***I assume that MHCA 1 would have had an additional $28.88 million raised from June 2017 through February 2018 [the amount raised by Fund 7 during this period] and that MHCA 2 would have had an***

> ***additional $15.87 million raised during March and April 2018 [the amount raised by Fund 7 during this period].***

33.    As described above, an appropriate framework for analyzing Plaintiffs' damages in this matter is lost profits, which compares Plaintiffs' profits "but for" Defendants' alleged misconduct to Plaintiffs' actual profits (which are zero, since Plaintiffs did not receive any of the investor contributions that were wrongfully diverted to Fund 7). Therefore, ***I analyzed Plaintiffs' damages assuming that MHCA would have had an additional $28.88 million and MHCA 2 would have had an additional $15.87 million.*** The profits Plaintiffs would reasonably be expected to earn from leveraging, investing and managing the additional contributions equals Plaintiffs' damages . . .

***

51.    As described in the first section of this report, it is my opinion that Plaintiffs' damages in this matter are reasonably measured by a lost profits calculation that compares Plaintiffs' profits in a "but for" scenario to Plaintiffs' profits in an "actual" scenario. ***For the "but for" scenario, I assume Plaintiffs would have received an additional $44.75 million of investor capital and in the "actual" scenario they did not.*** Thus, Plaintiffs' lost profits can be reasonably calculated as the net present value of the additional profits they would have earned from the $44.75 million, as set forth in this section of my report.

These selections make clear that Mr. Ahern's opinions rest exclusively on the assumption that *all* the investments in Fund 7 were investments improperly diverted from MHC America Fund and MHC America Fund 2. Indeed, Mr. Ahern was asked to make this faulty assumption by plaintiffs' counsel. Ahern Depo., p. 16, ll. 11-25. But this assumption ignores, and is in fact contradicted by, the actual evidence that many of the investors in Fund 7 would not invest with entities managed by or in any way related to Mr. Reynolds, Mr. Rolfe, and Mr. Siragusa, and that investors were not confused into believing that Fund 7 was affiliated with these individuals. [Doc. 97-13]. Indeed, the plaintiffs have not presented testimony *from a single* Fund 7 investor who was confused or who would have invested elsewhere if he or she knew that Mr. Reynolds and Mr. Rolfe were not involved in Fund 7.

When Mr. Ahern was asked to explain this preposterous assumption—given that the evidence shows that investors would have never invested in MHC America Fund or MHC America Fund 2—he offered no explanation and, instead, waffled between his assumption being that "100 percent of Fund 7 investor contributions through April 2018 would instead have gone to Plaintiffs" and "there are or could be other investors that didn't invest in Fund 7 that would have invested in [MHC America Fund] or [MHC America Fund 2] but for the alleged misconduct." Ahern Depo., p. 36, ll. 5-22 and p. 48, ll. 7-14.

Indeed, Mr. Ahern states that "the specifics of this investors list are not presented to say that these exact same investors would have invested this exact same amount in the same month as the plaintiffs' funds . . . rather that in aggregate this total, had it been raised for [MHC America Fund and MHC America Fund 2], could have been achieved or would have been achieved." Ahern Depo., p. 40, ll. 2-11. A few minutes later Mr. Ahern reverts back to his original assumption, stating that "here what actually happened is that these investors invested in Fund 7. They did not invest – or most of them, as far as I know at least, did not invest in [MHC America Fund] or [MHC America Fund 2], and that what we're dealing with is a but-for world." Ahern Depo., p. 53, ll. 4-8.

These statements are clearly contradictory. And, just as Mr. Ahern can't reasonably assume that 100% of investors in Fund 7 would have invested with the plaintiffs, he can't reasonably assume that there are other investors that didn't invest in Fund 7, but would have invested in MHC America Fund or MHC America Fund 2 but for the alleged misconduct. This contradicts the plaintiffs' own claims in this case. Additionally, Mr. Ahern failed to take into account that Fund 7 offers investments into different types of properties (mobile home communities and self-storage facilities) than the plaintiff funds. Ahern Depo., p. 118, ll. 1-11.

In short, Mr. Ahern did not gather sufficient facts and data to formulate his opinion because he did not gather *any* facts or data relating to investment decisions. Under these circumstances, Mr. Ahern's testimony lacks a proper foundation and must be excluded. *See, e.g.*, *Conroy v. Vilsack*, 707 F. 3d 1163, 1170 (10th Cir. 2013) (affirming district court's exclusion of expert testimony and noting that expert's obliviousness to certain key facts indicated that his opinion could not possibly rest on a reliable foundation); *Huerta v. Bioscrip Pharmacy Svcs.*, 429 Fed. Appx. 768, 773 (10th Cir. 2011) (district court's exclusion of expert testimony based on erroneous factual assumptions was proper); *Abold v. City of Black Hawk*, No. 03-cv-00299, 2005 WL 5807816, *4 (D. Colo. July 18, 2005) (expert testimony "consisting of unsupported speculation that is not tied to the facts of the case" should be excluded because it "would not aid the jury in its determination and is not grounded upon a reliable basis").

### ii.   Ahern's Methodology Was Faulty

Mr. Ahern's testimony is also not admissible because his methodology is faulty. Indeed, Mr. Ahern did not calculate damages "attributable to the individual listed plaintiffs." Ahern Depo., p. 21, ll. 4-6. And instead calculated damages allegedly sustained by *non-parties*. Mr. Ahern testified that "for MHC America Fund 1 and 2, my calculations are not necessarily for that entity in total but rather a subset of the promote interest or the ownership interest in those funds, because as discussed in my report, I carved out the actual ownership percent of the Smiths from [MHC America Fund] . . . so even what I calculated is not specifically or completely a damage amount for [MHC America Fund and MHC America Fund 2] but rather for a subset of the ownership class." Ahern Depo., p. 21, ll. 9-20. When asked if he could identify the names of the ownership entities for which he calculated damages, Mr. Ahern stated "I cannot." Ahern Depo., p. 21, ll. 21-23. Now, the plaintiffs seek damages based on Mr. Ahern's report. Yet, Mr. Ahern

admitted that his damages calculations weren't for any of the plaintiffs. For this reason, Mr.

Ahern's testimony should be excluded.

> ### iii. Even if the Court Finds that Ahern's Testimony is Admissible Under Rule 702, it Should be Excluded under Rule 403 Because the Probative Value is Substantially Outweighed by the Danger of Unfair Prejudice.

If the Court determines that Ahern's testimony satisfies Rule 702, such testimony should

still be excluded under Rule 403. Rule 403 of the Federal Rules of Evidence, titled "Excluding

Relevant Evidence for Prejudice, Confusion, Waste of Time, or Other Reasons," provides:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

The Tenth Circuit has explained that even if evidence satisfies the criteria of Rule 702, "it

must still survive the rigors of Rule 403 which permits the district court to exclude evidence

where its probative value is substantially outweighed by the danger of unfair prejudice,

confusion of the issues, or misleading the jury." *United States v. Call*, 129 F. 3d 1402, 1405

(10th Cir. 1997) (internal quotations and citations omitted); *see also Mueller v. Swift*, No. 15-cv-

1974-WJM—KLM, 2017 WL 3175804, *3 (D. Colo. July 21, 2017) (expert testimony, like any

other evidence, is subject to exclusion if it fails the balancing test set forth in Rule 403); *Koch v.

Kaz USA, Inc*., No. 09-cv-02976-LTB-BNB, 2011 WL 4087842, *3 (D. Colo. Sept. 13, 2011)

("evidence deemed admissible under Rule 702 may still be excluded under Rule 403"). District

courts have "considerable discretion" in performing the Rule 403 balancing test. *U.S. v. Tenorio*,

809 F. 3d 1126, 1130 (10th Cir. 2015).

Mr. Ahern's testimony is purely speculative as it assumes foundational "facts" that have

no evidentiary basis. It would be unfairly prejudicial for a jury to hear Mr. Ahern's opinions

because the admission of such testimony potentially legitimizes the plaintiffs' false narrative that, but for the defendants' conduct, all of Fund 7's investors would have invested with the plaintiff entities. This narrative has been contradicted and is not supported by the evidence on record in this matter. It would also be prejudicial for the jury to hear Mr. Ahern's opinions concerning the amount of damages sustained because his lost profits model sets forth damages sustained by non-parties—the entities that have the ultimate ownership interest in MHC America Fund and MHC America Fund 2. Further, the introduction of such evidence would confuse the issues for trial and potentially mislead a jury concerning the issues to be determined. As the district court in *Three Crown Limited Partnership v. Salomon Bros., Inc.*, 906 F. Supp. 876 (S.D.N.Y. 1995) explained when it excluded certain proffered expert testimony under Rule 403:

> [T]he greater danger is that the jury may accept as fact not just the faulty assumptions on which he relied, but may also accept the conclusions that are drawn through his use of these assumptions. When the assumptions made by an expert are not based on fact, the expert's testimony is likely to mislead a jury, and should be excluded by the district court.

*Id.* at 894 (quoting *Tyger Const. Co. v. Pensacola Const. Co.*, 29 F. 3d 137, 144 (4th Cir. 1994)). Courts in this circuit have routinely exercised their discretion to exclude expert testimony under Rule 403 where the proffered testimony is deemed unfairly prejudicial or confusing. *See, e.g., Toy v. American Family Mutual Ins. Co.*, No. 12-cv-01683)-PAB-MJW, 2014 WL 1288836, *4 (D. Colo. Jan. 31, 2014) (excluding proffered expert testimony under Rule 403 where it carried a substantial risk of confusing the jury); *Montes v. Town of Silver City*, No. 03-1465, 2005 WL 8163860, *2 (D.N.M. July 12, 2005) (excluding expert testimony under Rule 403 where testimony raised "a substantial danger of unfair prejudice, confusion of the issues, or misleading the jury"). Similarly, in this instance, the Court should exercise its discretion to exclude Mr.

Ahern's testimony as being unfairly prejudicial to the defense, and likely to cause confusion of the issues and mislead the jury.

### C.      BRABAND'S TESTIMONY MUST BE EXCLUDED

#### i.      Braband's Testimony is Not Relevant to the Issues in This Case

In his report, Mr. Braband offers two "expert" opinions: (1) that the property management fees charged by RV Horizons were consistent with other property managers in the manufactured home community industry; and (2) that RV Horizons is a reputable property manager for manufactured home communities. While such opinions may have been relevant in other disputes between the parties,[2] these opinions have no relevance to this case which concerns whether the defendants committed trademark infringement, engaged in unfair competition, misappropriated the plaintiffs' trade secrets or engaged in other improper conduct in order to divert investors from the plaintiffs to Fund 7.

The reasonableness, or not, of the management fees charged by RV Horizons is not an issue in this case, nor is RV Horizons' reputation. The Second Amended Complaint contains no allegations concerning the reasonableness of the fees charged by RV Horizons, nor would such allegations be necessary to establish any of the plaintiffs' claims. Indeed, it is not even clear why RV Horizons is a plaintiff in this case. RV Horizons is not a fund from which investment could have been diverted and such diversion is the sole basis for the damages claimed in this case. Under these circumstances, the proffered expert testimony concerning the alleged reasonableness of RV Horizons' fees and the reputability of the company are not relevant and do not "fit" the case. As a result, Mr. Braband's testimony should be excluded. *See*, *e.g.*, *Doe v. Board of County*

---

[2] In his report, Mr. Braband acknowledges that he has offered similar testimony—concerning the alleged reasonableness of the fees charged by RV Horizons—in several other matters. *See* Braband Report, p. 3.

*Commissioners of Payne County, Oklahoma*, 613 Fed. Appx. 743, 746 (10th Cir. 2015) (affirming district court's exclusion of expert testimony that was not relevant to issues in case); *Jaffrey v. PorterCare Adventist Health System*, No. 15-cv-02297-NYW, 2017 WL 5624572, *6 (D. Colo. Nov. 22, 2017) (excluding expert testimony concerning whether defendant failed to follow internal procedures or best practices where not relevant to claims made in case); *Lester v. City of Lafayette, Colorado*, No. 13-cv-01997-CMA-MJW, 2014 WL 3359305, *1 (D. Colo. July 9, 2014) ("if the expert testimony does not relate to any issue in the case, the testimony is not relevant").

### ii.    Braband's Testimony Lacks a Proper Foundation

Like Mr. Ahern's testimony, Mr. Braband's testimony also lacks a proper foundation because it is not based on "sufficient facts or data" as required by Rule 702. In the "Introduction" to his report, Mr. Braband indicates that he reviewed the parties' pleadings, the motions to dismiss and related briefings filed in the case, and the Court's order on the motions to dismiss. *See* Braband Report, p. 2. In the "Facts and Data" section of his report, Mr. Braband states that "[i]n forming my opinion in this matter, I reviewed the operating agreements for the Funds, the SAC [Second Amended Complaint] and other pleadings in the case, and the property management agreements." *See* Braband Report, p. 3. Notably absent from this list of "facts and data" reviewed by Mr. Braband is any mention of invoices, billing records, or other documentation of the actual amounts of the property management fees charged by RV Horizons. Without reviewing the specific amounts charged by RV Horizons, how can Mr. Braband opine as to the reasonableness of these fees? Indeed, he cannot and his testimony must be excluded because he failed to gather *any* data to support the opinions he reached.

### iii.    Braband's Testimony Should Be Excluded Under Rule 403

If relevant at all, Mr. Braband's proffered testimony—that RV Horizons' fees were reasonable and that RV Horizons is a reputable company—would be unfairly prejudicial to the Smith Defendants under Rule 403. This testimony does nothing more than bolster the plaintiffs' position that they, rather than the defendants, are the "good guys" in this case. Likewise, the admission of such testimony could confuse the issues and mislead the jury as the crux of the case concerns whether investments were improperly diverted from two of the fund plaintiffs—MHC America Fund and MHC America Fund 2—to Fund 7, not whether RV Horizons, a non-fund plaintiff, is a good company that charges reasonable fees.

Any potentially probative value of Mr. Braband's testimony is substantially outweighed by the danger of unfair prejudice, and the potential for confusing the issues and misleading the jury as to the evidence they should consider when evaluating the claims brought by the plaintiffs. Because none of these claims concern the reasonableness of RV Horizons' fees or its reputation, the Court should exercise its discretion under Rule 403 to exclude Mr. Braband's testimony. *See*, *e.g.*, *Mueller*, 2017 WL 3175804 at *7 (excluding expert testimony where probative value "would be substantially outweighed by the significant risks of prejudice, confusion of the issues, and misleading the jury").

## IV.    CONCLUSION

For the reasons set forth more fully above, the Smith Defendants respectfully request the Court exclude for all purposes the testimony of Jon Ahern and Ben Braband, both offered on behalf of the plaintiffs, and for such further and other relief as the Court deems just and proper.

WHEREFORE, Defendants, Jamie Smith, Ryan Smith, MHPI VII, LLC, and Elevation Capital Group, LLC, respectfully request the Court enter an order excluding the testimony of Jon Ahern and Ben Braband, and for such further and other relief as the Court deems just and proper.

Dated: April 24, 2020.

>/s/ Michael D. Crosbie
>**Michael D. Crosbie, Esq. (Trial Counsel)**
>Florida Bar No. 72575
>mcrosbie@shutts.com
>**Nicole L. Ballante, Esq.**
>Florida Bar No. 125356
>nballante@shutts.com
>**SHUTTS & BOWEN LLP**
>300 South Orange Avenue, Suite 1600
>Orlando, Florida 32801
>Telephone:  407-423-3200
>Facsimile:  407-425-8316
>*Attorneys for Smith Defendants*

## CERTIFICATE OF SERVICE

I certify that on April 24, 2020, I filed the foregoing using the Court's CM/ECF system which will send a copy to all counsel of record.

>/s/ Michael D. Crosbie
>Michael D. Crosbie

## CERTIFICATE OF COMPLIANCE WITH RULE 7.1

In accordance with D.C.Colo.LCivR Rule 7.1(a) and NYW Civil Practice Standard 7.1, the undersigned contacted counsel for the plaintiffs on April 24, 2020, to discuss the issues raised in this Motion. Mr. Stewart has advised that the plaintiffs will not agree to the exclusion of their expert witnesses, Mr. Ahern and Mr. Braband.

>/s/ Michael D. Crosbie
>Michael D. Crosbie

ORLDOCS 17646664 1