

## Saddleback Valley Communities, LLC

**24040 Camino Del Avion Monarch Beach, CA 92629- Ph (949) 415-5000**

### EXPERT REPORT OF BEN BRABAND

Regarding the matter of

*MHP Portfolio, LLC, derivatively on behalf of MHPI I, LLC, MHPI II, LLC, MHPI III, LLC, and MHPI IV, LLC v. RV Horizons, Inc.*, AAA Case No. 01-19-0000-7894

Prepared for:

Baker & Hostetler LLP

Dated:

January 17, 2020

### EXHIBIT B

## INTRODUCTION

I have been engaged to provide expert testimony in the matter of MHP Portfolio, LLC, derivatively on behalf of MHPI I, LLC, MHPI II, LLC, MHPI III, LLC, and MHPI IV, LLC v. RV Horizons, Inc., AAA Case No. 01-19-0000-7894.

It is my understanding that one of the issues in this arbitration proceeding involves the amount of the property management fees for the following funds that maintain interests in special-purpose entities ("SPE") owning manufactured home communities: MHPI I, LLC ("MHPI I"), MHPI II, LLC ("MHPI II"), MHPI III, LLC ("MHPI III"), and MHPI IV, LLC ("MHPI IV") (collectively, the "MHPI Funds"). My understanding is based on having reviewed the Second Amended Demand for Arbitration, dated August 9, 2019 (the "Second Amended Demand for Arbitration"), wherein Claimant alleges in paragraphs 9 and 10 that RV Horizons, Inc. ("RV Horizons") charged "exorbitant" property management fees or fees "that were above market rate" with respect to property management services for the manufactured home communities owned indirectly by the MHPI Funds. This report does not address any issues related to pass-through expenses or overall operating expenses, neither of which are raised in the Second Amended Demand for Arbitration.

It is my opinion that the property management fees paid to RV Horizons for these properties are consistent with, if not less than, market-based compensation received by property managers in the manufactured home community industry.

## BACKGROUND AND QUALIFICATIONS

Following my service in the military and employment with the Los Angeles Police Department, I began investing in manufactured home communities, purchasing my first community in 2005.

Since that time, my primary business focus has been as an owner and operator of manufactured home communities. Since 2005, I have owned over 50 communities, and today own 34 communities, with an approximate market value of $230 million. The communities that I own, or have owned, are primarily located in the western United States, including Utah, Wyoming, Kansas, Colorado, Arizona, New Mexico, and Missouri. In addition to ownership of these communities, I also operate a property management company, Saddleback Valley Communities ("Saddleback"), which performs property management services for the parks that I own. Saddleback's company structure includes an internal "back" office, middle or centralized management, and front-line employees.

I have served as the president of the Colorado and Utah Manufactured Housing Association and have testified before the Colorado legislature with respect to proposed legislation affecting manufactured home community industry. I have also done consulting work for real estate investment firms and banks and provided deal analysis with respect to potential investment or financing in manufactured home communities. I am also a member of the Rocky Mountain Housing Association and the Manufactured Housing Institute.

I have previously testified in an AAA proceeding, DTR MHP Management, LLC, Colonial Kitchen, LLC, and WaterTree Capital, LLC v. MHP Management, LLC, AAA Case No. 01-18-0003-4595, providing expert testimony with respect to the reasonableness of property management fees and pass-through expenses charged by RV Horizons for manufactured home communities owned indirectly by MHC America Fund, LLC.

For providing my expert opinion in this matter, I am being compensated at a rate of $150.00 per hour.

## FACTS AND DATA

It is my understanding that the MHPI Funds are funds organized to raise equity to acquire manufactured home communities, specifically by owning interests in SPEs that wholly own the respective manufactured home community. Impact MHC Management, LLC ("Impact") and its predecessor RV Horizons provide the property management services for each manufactured home community owned indirectly by the MHPI Funds. Dave Reynolds is the principal for both RV Horizons and Impact.

In forming my opinion in this matter, I reviewed the following financial statements with respect to the MHPI Funds: the MHPI-I consolidated financials for year-end 2016, the MHPI-I consolidated financials for year-end 2017, the MHPI-I draft financial statement for year-end 2018, the MHPI-II consolidated financials for year-end 2016, the MHPI-II consolidated financials for year-end 2017, the MHPI-II draft financial statement for year-end 2018, the MHPI-III consolidated financials for year-end 2016, the MHPI-III consolidated financials for year-end 2017, the draft financial statement for year-end 2018, the MHPI-IV consolidated financials for year-end 2016, the MHPI-IV consolidated financials for year-end 2017, and the MHPI-IV draft financial statement for year-end 2018 (collectively, the "Financial Statements"). In addition to the Financial Statements, I reviewed the Second Amended Demand for Arbitration, the operating agreements for the SPEs owned in whole or in part by the MHPI Funds; the property management agreements for each manufactured home community owned indirectly by the MHPI Funds; and allocation spreadsheets.

## ANALYSIS AND CONCLUSIONS

When considering management fees charged by a management company, with respect to a manufactured home community, it is important to understand that fee-based management companies charge clients in different ways. Essentially, fee-based management is a contractual agreement between ownership and the property management company for oversight, development and betterment of a community. Some agreements only require the management company to collect rents and report any problems to the owner. Other agreements ask management to handle all issues in the community and to only notify the owner with a periodic financial report. It is truly in the hands of owner as to what responsibilities the management company will assume. Some fee-based management companies charge a percentage of gross rents, others charge a flat fee, and others employ an a la carte structure. Fee-based management can encompass many tasks beyond collecting rent: for example, overseeing maintenance projects, new home delivery, sales, leasing of the new or existing homes, and many other items not associated with collecting rent and processing payments.

The management fee can also be referred to as an offsite management fee or baseline management fee.  The composition and condition (physical and economic) of the relevant property has a lot to do with the input and expertise required, as well as the appropriate associated fees of fee structure.

In the manufactured home community industry, properties are often categorized in the following manner: Core, Core-Plus, Value-Add, and Opportunistic (Distressed).

3

Core properties generally feature characteristics such as stabilized occupancy, investment-grade tenants, long lease terms, high quality construction with little to no immediate capital needs and locations in highly desirable areas (relative to property type) in major markets. Properties in this risk profile are generally limited to the "major" property types including multifamily, office, industrial or retail.  Total expected returns for core properties are typically comprised mostly of income with a small degree of capital appreciation.

Core-plus properties are generally similar to core  properties, but have a slightly higher degree of risk and potential for slightly higher returns than core properties. Examples of this difference may include the potential to increase net operating income ("NOI") in the in the short- to mid-term by leasing a small amount of vacant space or backfilling a maturing tenant lease with one at a higher rate. Properties within the core-plus risk profile are considered more conservative investments than those in the value-add or opportunistic profiles and are generally constrained to the "major" property types of multifamily, office, industrial and retail, though there may be exceptions. Like core properties, those in the core-plus profile are typically of newer vintage and in good physical condition. Core-plus properties have returns that are expected to be derived from current income with a much smaller component of returns from appreciation.

Value-add is a term given to describe one of the four major risk profiles of commercial real estate investment properties. Value-add properties have a higher degree of risk, and higher potential returns, than core and core-plus risk profiles, but less risk and lower potential returns than properties in the opportunistic category. Properties in this risk profile may be experiencing below market occupancy or rental rates and may require substantial capital improvements and/or marketing efforts in order to attract new prospects and retain existing tenants. Total returns from value-add properties are generally projected to be split between income and appreciation. However, the exact breakdown of returns depends on degree of value-add activity which ranges from "light" value-add (in which returns would be more heavily distributed to income than appreciation) to "heavy" or "deep" value-add (in which total returns would be more skewed toward appreciation than income).

Opportunistic or distressed properties exhibit the greatest risk but highest potential returns within the four major commercial real estate risk profiles (core, core-plus, value-add and opportunistic). These properties are classified by the need for substantial physical improvement, operational improvements and/or lease-up in order to reach stabilization. Examples include new development, converting property uses, such as converting a warehouse to loft apartments, or complex legal situations such as purchasing a property out of bankruptcy or foreclosure. The opportunistic risk profile may also include "niche" property types or locations in unproven markets. Total returns for opportunistic properties are typically projected to be mostly derived from appreciation with only a small portion from current income. Initial yields for opportunistic properties are often very low, and the property may even exhibit negative cash flow until the investor is able to execute on their business plan for the asset.

The prices at which these properties trade can provide insight to not only the risk investors assess from category to category but also the effort required to achieve the targeted return.  As you might imagine, the effort and expense to manage and stabilize a distressed property is drastically different than a stabilized (core) property with no deferred maintenance. It follows that the price that one pays to a  management company can vary dramatically related to this issue.

4

Most management companies charge 4-6% of gross revenue for the core or core-plus category. This is because the effort, input and expense allow for a lower fee. It is more of a challenge to find management companies who will take on the value-add and distressed category properties. However, those who do typically have a fee structure in the 8 to 12% of gross revenue range. My company charges 4% of gross revenue as a fee we describe as "Off-Site Management Fee", and also charge each manufactured housing community for various direct and pass-through expenses. I've created this fee structure to be both competitive with the market, compliant with lender/debt constraints and to cover my actual costs to provide the various services without losing money. The reason my company charges only 4% for value-add and opportunistic properties, and likely the primary reason RV Horizons charges 4-5% is because the primary incentive and real economic benefit is derived from the ownership/equity position we have in the property itself. When this dynamic exists, the owner and management company are aligned in keeping operating expenses as low as possible in an effort to maximize profit and increase the value of the property. The difference here is that we occupy an owner-operator perspective, which is in contrast to a third-party fee-based manager.

Lastly, as an owner I've had occasion to solicit proposals for such services in new geographic areas where I did not have the infrastructure in place at the time to provide my own property management services. The proposals I received were consistent with the above, including a fee of 5% of gross income, plus pass-through expenses.

My analysis of the 2018 data for the MHPI Funds concluded that management fees, as a percentage of gross income, ranged from 4% to 4.93%. My analysis of the data for 2017, through October 2017, found that management fees, as a percentage of gross income, ranged from 3.65% to 5.19%, the latter pertaining to MHPI I, which only comprised four properties at the time. My analysis of the 2016 data found that management fees, as a percentage of gross income, ranged from 4.8% to 5.0%. To complete the analysis properly for 2016 and 2017 one must refer to the expanded expense detail found in the "management fee breakdown" documents by fund.

It is my opinion that these fees are reasonable and consistent with industry standard. As set forth above, these ranges are consistent with what would be charged for core and core-plus properties. The reasonableness of these fees is further confirmed by the fact that this range would be appropriate for core or core-plus properties, whereas it appears that some of these properties would fall into categories warranting a greater fee in the market. It is my opinion that the allegations that the fees charged by RV Horizons for the MHPI Funds are "exorbitant" or above market are without merit.

*[signature]*

1-17-2020