IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-02780-NYW

RV HORIZONS, INC., et al.,

    Plaintiffs,

        vs.

JAMIE SMITH, et al.,

    Defendants.

**PLAINTIFFS' RESPONSE IN OPPOSITION TO THE
SMITH DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF JON AHERN
AND BEN BRABAND**

Plaintiffs RV Horizons, Inc.; MHC America Fund, LLC; MHC America Class C, LLC; MHPS Alumni, LLC; MHPS Alumni 2, LLC; MHPS Alumni 3, LLC; Affordable Housing Community Fund 1, LLC; Affordable Housing Community Fund 2, LLC; Affordable Housing Community Fund 3, LLC; Affordable Housing Community Fund 4, LLC; Affordable Housing Community Fund 5, LLC; Affordable Housing Community Fund 6, LLC; AWA Fund 3, LLC; MHC America Fund 2, LLC;  MHC America 2 Class B, LLC (collectively, "Plaintiffs"), through their counsel Holland & Hart LLP, hereby submit this Response in Opposition to defendants Jamie Smith, Ryan Smith, MHPI VII, LLC, and Elevation Capital Group, LLC's (collectively, the "Smiths") motion to exclude the testimony of Jon Ahern and Ben Braband. Dkt. 112.

**INTRODUCTION**

The Smiths treat their Rule 702 motion as one for summary judgment and essentially argue that Plaintiffs' damages expert Jon Ahern should be required to establish a separate damages number for every claim for every party in Plaintiffs' case. But that's neither his job as a retained expert nor the standard courts apply in evaluating whether expert testimony is allowable.

1

The Smiths make three arguments: *First*, they suggest that Ahern's but-for assumption upon which he premises his lost profits analysis is flawed and lacks foundation. But his assumption in this instance is entirely consistent with how the Tenth Circuit evaluates damages for claims at issue in this case. His assumption is also reasonable and factually supported, and efforts to discredit his assumption based on untested affidavits from undisclosed witnesses are premature. *Second*, the Smiths suggest Ahern's methodology is flawed because he determined damages for entities that are not parties to the case. This is plainly not true. His lost profits calculation focuses on two specific Plaintiffs and there is nothing confusing or imprecise about the scope of his analysis. *Third*, the Smiths claim unfair prejudice under Federal Rule of Evidence 403 if Ahern testifies. But the Court can address these concerns in trial rather than in connection with a *Daubert* motion.

Concerning Braband, the Smiths suggest that his opinions are irrelevant, lack adequate factual support, and are similarly prejudicial. The Court should reject these arguments as well. Braband's opinions are relevant to the foundation and assumptions in Ahern's damages calculations and are premised on a sufficient foundation based on his personal knowledge and review of pertinent documents. And to the extent the Smiths can formulate legitimate Rule 403 objections, the Court will be better positioned to rule on them at trial.

**FACTUAL BACKGROUND**

MHC America Fund, LLC ("America Fund") and MHC America Fund 2, LLC ("America Fund 2") are just the two most recent investment funds run by the principals behind Plaintiffs, Dave Reynolds, Frank Rolfe, and Eric Siragusa. Both America Fund and America Fund 2 have "sponsor" entities that are responsible for promoting the funds to investors, and in return, those sponsor funds receive the back-end upside when the funds are successful. For

America Fund, the sponsor entity is MHC America Class C, LLC ("Class C"), and for America Fund 2, the sponsor entity is MHC America Class B, LLC ("Class B"). Class C and Class B are both members of their respective funds, and these members receive certain fees while the funds are open and, upon a liquidation event, participate in the "waterfall," whereby proceeds flow from the fund, down through the various investor classes.

Ahern was asked to calculate Plaintiffs' lost profits only related to the sponsor entities Class C (America Fund) and Class B (America Fund 2). It was these two funds that were open and accepting new investors during the time the Smiths were unfairly competing against Plaintiffs using Plaintiffs' trademarks, trade secrets, history, and goodwill. That's not to say that the other earlier Plaintiff funds (the three Alumni funds, the six AHCF funds, and AWA Fund 3) were not harmed by Defendants' conduct—Ahern was simply not asked to opine on their actual damages. Ahern also was not asked to testify about RV Horizons' actual damages. Even though he did not opine on their actual damages, Ahern still analyzed materials related to Plaintiffs' earlier funds and RV Horizons.

Central to Ahern's lost-profits analysis is the fact (to which Dave Reynolds will testify) that RV Horizons handled the asset management for *all* of the Plaintiff funds (the three Alumni funds, the six AHCF funds, AWA Fund 3, America Fund, and America Fund 2). The Smiths ignore in their criticisms of Ahern that America Fund and America Fund 2 are investment funds that can only be successful if the underlying assets generate sufficient income for distributions to investors. It was RV Horizons, run by Dave Reynolds, that actually identified, purchased, maintained, improved, and sold the underlying manufactured housing communities. It was because of RV Horizons' successful asset-management efforts that Plaintiffs' collectively have the "track record" that they do. Reynolds (who has gone unchallenged as a non-retained expert

on these very issues) will testify to as much. Ahern will then rely on Reynolds' testimony about the Plaintiffs' track record to conduct his lost profits analysis for the next two funds with assets managed by RV Horizons, namely, America Fund and America Fund 2.

Not only that, it was this "track record" that the Smiths and Dahn used in the Fund 7 Offering Package to divert investors away from America Fund and America Fund 2 and to Fund 7. In the Fund 7 Offering Package, it was the Smiths who chose to use the trademarks belonging to ten different plaintiffs all in one fell swoop when Fund 7 claimed to have the "track record" of these earlier ten funds when, in fact, that "track record" was because of work done by RV Horizons.[1]

## LEGAL STANDARD

In evaluating whether an expert opinion is admissible, the Court must first determine whether the expert is qualified by "knowledge, skill, experience, training, or education" to render an opinion. *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). A key issue is whether the expert testimony will aid the jury in its determination of a critical issue in the case. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir. 1991). "The Tenth Circuit takes a liberal approach to the question of whether proffered expert testimony will assist the jury. Doubts about whether an expert's testimony will be useful should generally be resolved in favor of admissibility unless there are strong factors such as time or surprise favoring exclusions." *Cook v. Rockwell Int'l Corp.,* 580 F.Supp.2d 1071, 1083 (D. Colo. 2006).

---

[1] The vast majority of the Smiths' factual background is irrelevant to the question of whether Ahern's opinions should be permitted at trial. For example, the Smiths' misappropriation of Plaintiffs' trademarks in the Fund 7 Offering Package goes to liability, not damages. And Ahern only testifies regarding damages. Plaintiffs' response to the Smiths' motion for summary judgment rebuts the Smiths' factual contentions and will not be repeated here. *See* Dkt. 110.

Second, if the expert is qualified, the Court must consider whether the opinions are reliable. *See Ralston*, 275 F.3d at 969. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993). Thus, it is "the specific relation between an expert's method, the proffered conclusions, and the particular factual circumstances of the dispute that renders testimony both reliable and relevant." *NetQuote, Inc. v. Byrd*, No. 07-cv-00630 DME-MEH, 2008 WL 2442048, at *6 (D. Colo. April 29, 2008) (not reported) (citing *Bitler v. A.O. Smith Corp.,* 391 F.3d 1114, 1121 (10th Cir. 2004)).

The Court is not charged with weighing the correctness of an expert's testimony, however. *Id.* Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* (citing *Daubert*, 509 U.S. at 596). Ultimately, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 advisory committee note ("the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.") (internal citations omitted).

## ARGUMENT

I. **Ahern's Opinions Have A Proper Foundation.**

    A. **The Smiths disregard the law on damages for Plaintiffs' trade secret misappropriation claims.**

The Smiths make significant effort to characterize Ahern's opinions as speculative and without factual support. Specifically, they argue that Ahern's but-for assumption is faulty

5

because it ignores evidence that many Fund 7 investors would not invest with entities related to Reynolds, Rolfe, or Siragusa and that investors were not confused about any affiliation between these individuals and Fund 7. *See* Dkt. 112 at 12. The Smiths then cite three cases in purported support of their argument that, because Ahern did does not render his opinion on facts related to investment decisions and premised his lost profits analysis on a "but-for" assumption, his testimony lacks proper foundation and must be excluded. *Id.* at 14 (citing *Conroy v. Vilsack*, 707 F.3d 1163, 1170 (10th Cir. 2013), *Huerta v. Bioscrip Pharm. Svcs.,* 429 Fed Appx. 768, 773 (10th Cir. 2011), and *Abold v. City of Black Hawk*, 2005 WL 5807816, *4 (D. Colo. July 18, 2005)). But these cases do not address the claims Plaintiffs are pursuing here, and in citing these cases, the Smiths have ignored the way courts evaluate damages for Plaintiffs' claims.[2]

    The Lanham Act provides that if a plaintiff establishes a violation of a right of a trademark registrant, then a plaintiff is entitled to recover (1) defendant's profits,[3] (2) any damages sustained by plaintiff, and (3) the cost of the action. For example, to recover actual damages in a trademark case, a plaintiff "shall be required to prove defendant's sales only." 15 U.S.C. § 1117(a). Once a plaintiff establishes evidence of sales, the burden shifts to the defendant to provide proof of what costs or deductions should not be considered as part of plaintiff's recovery.

---

[2] *Conroy* is a Title VII case involving various claims arising out of the United States Forest Service's hiring decisions. *See Conroy,* 707 F.3d at 1167. *Huerta* is a products liability case involving claims for strict products liability, negligence, negligent misrepresentation, a violation of the New Mexico Unfair Trade Practices Act, and breach of warranty. *See Huerta*, 429 Fed. Appx. at 781. And *Abold* is a 42 U.S.C. § 1983 case. *See Abold*, 2005 WL 5807816, at *1.

[3] When dealing with an infringer's ill-gotten gains, the standard is different. In assessing a defendant's profits in a trademark case, a plaintiff "shall be required to prove defendant's sales only." *Id.* Once a plaintiff establishes evidence of sales, the burden shifts to the defendant to provide proof of what costs or deductions should not be considered as part of plaintiff's recovery.

With respect to actual damages, the Lanham Act does not require that an exact dollar amount of actual damages be shown, only that the plaintiff establishes that it suffered actual damages. *Klein-Becker USA, LLC v. Englert*, 711 F.3d 1153, 1161 (10th Cir. 2013); *McCarthy on Trademarks and Unfair Competition* § 30:79 (5th Ed.) ("Plaintiff need only make a prima facie showing of reasonably forecast profits, whereupon defendant has the burden of proving, if it can, that plaintiff's losses were caused by something other than defendant's own wrongful conduct."); *see also Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 526 (10th Cir. 1987) ("While this court does not necessarily believe that each Spinit sale resulted in a corresponding loss of sale by Zebco, the theory provides an upper range for an award of damages".). Of course, 15 U.S.C. § 1117(a) also permits the Court to exercise its discretion and adjust damages based on the circumstances of the case if the amount of recovery based on profits is either inadequate or excessive.

Moreover, the fact that damages may not be computed with exact mathematical certainty does not deny a plaintiff the right to submit the issue of damages to the fact finder. *See Brunswick*, 832 F.2d at 525 ("Although the quantum of damages, as distinguished from entitlement, must be demonstrated with specificity, courts may engage in some degree of speculation in computing the amount of damages, particularly when the inability to compute them is attributable to the defendant's wrongdoing.") (quotations omitted). At the same time, there is a balance: lost profits cannot be based on surmise, conjecture, or speculation. *Nanodtex Corp. v. Defiant Technologies*, 349 Fed. Appx. 312, 321 (10th Cir. 2009) (unpublished). "For reasons . . . already outlined, whatever faults one might find with [proffered expert's] testimony and pro forma, they were better than that, representing a reasonable effort to assess a but-for world, not just something dreamed up or demanded." *Id.*; *see also King & King Enterprises v.*

*Champlin Petroleum Co.*, 657 F.2d 1147, 1158 (10th Cir. 1981) ("If the calculations upon which the loss of profits are based are estimated in any reasonable way and the underlying assumptions on which the accountant relied are not without support in the record, the calculations may be upheld as a valid means of measuring loss of profits.").

For trade secret misappropriation claims, both the Defend Trade Secrets Act and the Colorado Uniform Trade Secrets Act (the "Acts") allow for the recovery of actual loss and unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss. 18 U.S.C. § 1836(b)(3)(B)(i)(I), (II); Colo. Rev. Stat. Ann. § 7-74-104(1). Under the theory of unjust enrichment, a plaintiff can recover gains made by a defendant related to the misappropriation of trade secrets. Although the statutes are silent on how to calculate a defendant's profits, the Tenth Circuit has recognized that the "traditional form of restitutionary relief in an action for the appropriation of a trade secret, the plaintiff has the burden of establishing the defendant's sales; the defendant has the burden of establishing any portion of the sales not attributable to the trade secret and any expenses to be deducted in determining net profits." *Musket Corp. v. Star Fuel of Okla., LLC*, 606 Fed. Appx. 439, 452 (10th Cir. 2015) (unpublished), citing *Cartel Asset Management v. Ocwen Fin. Corp.*, 249 F. App'x 63, 79 (10th Cir. 2007) (unpublished) (quoting Restatement (Third) of Unfair Competition § 45, cmt. (f) (1995)).

To summarize, under Plaintiffs' trademark and trade secret claims, under an actual damages analysis, Plaintiffs are entitled to start with the presumption that all of the funds that the Smiths raised for Fund 7 would have been invested in America Fund and America Fund 2 but for Defendants' improper conduct. The Smiths are then free to present evidence that certain investors would not have invested in America Fund or America Fund 2 and cross examine Ahern

about his assumption and Plaintiffs' fact witnesses about their investment decisions. Ultimately, the jury can evaluate each side's position on actual damages. *See, e.g., Benton v. Avendon Eng'g, Inc.,* 2012 WL 3399367, at *1 (D. Colo. Aug. 15, 2012) ("The Court agrees . . . [that] the proper challenge to [the challenged] expert opinion is by cross-examination and the presentation of contrary evidence at trial.").

The Smiths have revealed their hand. In their Factual and Procedural History section, they identify five Fund 7 witnesses (conveniently, one of whom is Defendant Jamie Smith) who purportedly would never have invested in America Funds or America Fund 2. *See* Dkt. 112 at 4-6. But this evidence—if allowed—should be tested in trial and evaluated by the jury.[4]

For example, who did each of these five individuals speak with about America Fund, America Fund 2, and Fund 7? Were the individuals subject to the Smith Defendants' incessant drumbeat of negative characterizations of America Fund and America Fund 2? Which version of the Offering Package did they receive? What did the Smith Defendants tell those individuals about Reynolds, Rolfe, and Siragusa? What representations were made about Fund 7, the Smiths and/or Dahn Corporation, as well as and their respective experience (or lack thereof) in managing MHCs? It is possible the jury will find the Fund 7 investor witnesses (if properly and timely disclosed) credible and uninfluenced by the Smith Defendants' negative characterizations. Or not. Regardless, if allowed to testify in the first instance, these witnesses must be subject to cross examination and, along with evidence Plaintiffs will present of actual customer confusion, evaluated by the jury. Although their contentions may impact the weight of Ahern's testimony, they do not form a basis for excluding it altogether.

---

[4] Plaintiffs have moved to strike the affidavits from the four undisclosed witnesses referenced in the factual background. Dkt. 130. That motion is currently pending.

Finally, Ahern's assumption is not "wholly unfounded," "faulty," "preposterous," or any other label the Smiths use. An expert may, of course, premise opinions on assumptions. *See, e.g.*, *Chimney Rock Public Power Dist. v. Tri-State Generation and Trans. Assoc., Inc.*, No. 10-cv-02349-WJM-KMT, 2014 WL 1715096, at *2 (D. Colo. April 30, 2104); *SolidFX, LLC v. Jeppesen Sanderson Inc.*, No. 11-cv-01468-WJM-BNB, 2014 WL 983507, at *7 (D. Colo. March 13, 2014). Just as important, Ahern's "but-for" assumption—while justified, permissible, and in line with how damages are analyzed under trademark and trade secret law—is also based on a reliable foundation. Plaintiffs will present evidence at trial that had Defendants not been badmouthing Reynolds, Rolfe, and Siragusa and trading on their reputations, industry experience, and goodwill to fund their competing enterprise, then some or all of those investment dollars would have been routed to America Funds 1 or 2. And Plaintiffs have evidence that the Defendants did, in fact, divert investors away from America Fund and America Fund 2. Dkt. 110 at 11–12. Defendants are free to present evidence to rebut that narrative. Once they do, the jury can decide.

At bottom, Ahern was asked to determine Plaintiffs' lost profits. To what extent that testimony is applicable to some or all of Plaintiffs' claims, that question is premature here. This is a jury instruction and verdict form issue, not one for a *Daubert* motion. Juries allocate damages between claims and defendants every day. *See generally Univ. of Colorado Found., Inc. v. Am. Cyanamid Co.*, 153 F. Supp. 2d 1231, 1243 (D. Colo. 2001) (discussing overlapping remedies and allowing plaintiff to recover larger amount) (citing *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 962 F.2d 1470, 1472 (10th Cir. 1992)). Here, the verdict form will contain separate entries for damages to be awarded and as against each defendant, and on the different causes of action. There will also be an instruction not to duplicate damages or

provide double recoveries. It is not the damages expert's function to invade the province of the jury and instruct it how to allocate damages – that is the jury's prerogative.

### B. The foundation for Ahern's opinions comes from other experts and witnesses.

The Smith Defendants additionally argue that because Ahern's opinions rest on facts supplied by Plaintiffs' principals and their counsel, and because these facts are contradicted by record evidence, his opinions should be excluded. *See* Dkt 112 at 10-14. This argument fails for multiple reasons.

*First*, and as noted above, the record evidence the Smiths rely upon consists of several untested affidavits from a few Fund 7 investors. The summaries the Smiths present in their Motion are obviously not the end of the inquiry. Rather, their positions can and will be subject to cross examination at trial and cannot be a basis to exclude Ahern now.

*Second*, this is not an accurate summary of Ahern's work. Rather, he evaluated information made available to him from a variety of sources – some provided by Plaintiffs and their counsel, and others not. In addition to considering legal filings from Plaintiffs and Defendants, financial data, operating agreements, operating results, and fund projections, he also conducted independent research on lost profits, economic damages, industry reports on mobile home and RV parks, and other matters. *See* Appendix C to Ahern Report (attached to Dkt. 114-4 as Exhibit 4).[5] He formulated reasonable assumptions based on that information, and then created a scalable mathematical model to calculate lost profits.

---

[5] The Smiths attach Ahern's report to their Motion as Exhibit A but do not include the attachments/appendices. Defendant Dahn Corporation, which also filed a motion to exclude Ahern's testimony, filed the Ahern report in its entirety. Thus, Plaintiffs' reference to Docket Entry 114-4 for Appendix C to the Ahern report is to the Dahn motion, not the Smith motion.

11

*Third*, Ahern's reliance on facts from other witnesses such as Reynolds, Rolfe, and Siragusa is entirely permissible. The factual basis or bases of an expert opinion "goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Beebe v. Colorado*, 2019 WL 6044742, at *6 (D. Colo. November 15, 2019) (citing *First Union Nat. Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005)). Additionally, only if the expert's opinion "is so fundamentally unsupported that it can offer no assistance to the [trier of fact] must such testimony be excluded." *Beebe*, at *7. As the Second Circuit explained in *Boucher v. U.S. Suzuki Motor Corp*, 73 F.3d 18, 21 (2d Cir. 1996), "[a]lthough expert testimony should be excluded if it is speculative or conjectural . . . or if it is based on assumptions that are 'so unrealistic and contradictory as to suggest bad faith' or to be in essence an 'apples and oranges comparison,' . . . other contentions that the assumptions are unfounded 'go to the weight, not the admissibility of the testimony.'" (Internal citations omitted.)

Finally, the Smiths are simply wrong in suggesting that Ahern "did not gather any facts or data relating to investment decisions," Dkt. 112 at 14. It is a fact that all investors listed in his report contributed the amounts reflected to Fund 7. What those same investors (and/or other investors, including those who contributed later to Fund 7) would have done without the alleged bad acts can *never* be based on fact – it is counterfactual by definition, and instead based on a permissibly hypothetical (i.e., but-for) analysis. *See Brunswick Corp.*, 832 F.2d at 526 ("A defendant whose wrongful conduct has caused the difficulty in assessing damages cannot complain that the damages are somewhat speculative . . . Evidence of the amount of damages may be circumstantial and inexact") (internal citations omitted)*; see also ClearOne Communications, Inc. v. Chiang*, 432 Fed. Appx. 770, 774 (10th Cir. 2011) (unpublished) ("The very nature of lost future profits injects an air of uncertainty and speculation into the calculation

12

of damages, because a jury must speculate when it determines what profits would have been generated had the defendant not acted wrongfully . . . Damages in such cases do not represent an actual, ascertainable loss; they represent the factfinder's best approximation of that loss.") (Internal citations omitted.)

### C. In any event, causation is an issue for trial.

Not only do the Smiths incorrectly articulate the legal standard for damages on Plaintiffs claims and improperly suggest that Ahern is forbidden from relying on evidence from other witness, they also ignore the fact that this issue is one for trial. The Smiths essentially argue that Plaintiffs will be unable to prove the requisite causation required to recover the damages that Ahern calculates. But that is a question for the jury.

First, the Smiths overstate their own evidence on causation. They argue that "many of the investors in Fund 7 would not invest with entities managed by or in any way related to Reynolds, Rolfe, and Siragusa, and that investors were not confused into believing that Fund 7 was affiliated with these individuals." Dkt. 112 at 12. From April 2017 through April 2018 (which is the time period of damages calculated by Ahern), all of the investors received an Offering Package expressly and untruthfully claiming that Reynolds, Rolfe, and Siragusa were affiliated with Fund 7. Because these investors invested in Fund 7 based on this Offering Package, what the Smiths argue cannot be true.

Second, and as noted above, Ahern's damages calculation is scalable such that the jury can use his model to calculate damages on any amount of investment they determine would have flowed to America Fund and America Fund 2 based on their assessment of the facts presented at trial. The entire purpose of Ahern's report is to provide a framework based on a reliable and established methodology to calculate Plaintiffs' lost profits. Ahern explained this at length in his

13

deposition. *See* Ahern Dep. Trans. at 77:21-79:7 ("And the unique thing about this model is that it is super simple. And that is, for any number of dollars that a fact finder decides should have gone into MHCA 1, the damages are 51.3 cents. And for any amount of dollars that the fact finder determines should have gone into MHC America 2, the answer is 48.2 cents, and that is absolutely reflected."); *Id.* at 80:13-81:13 ("you could put in $1 into that line that says 'Additional Investor Capital,' and the damage model is going to return 51.3 cents of damages. You could put in a million. You could put in 50 million."). *See* Ex. 1. When questioned about the jury's ability to use his damages model, he explained that it could do so easily:

> Q: So let's say the jury gets into the deliberation room and they decide, you know, based on the evidence we've heard, we only think $10 million of additional investor capital would have flowed to the plaintiffs in this case. How would they use your model then? You're not in the jury room with them. How would they use your model? You can't redo the calculation for them.
>
> A: You know, any jury with a calculator could take that number times 51.3 percent and turn it into a damage number. If they don't like my assumption but they like my calculation and think I've done a thorough and reasonable job and that the assumptions I've made are reasonable and based on historical record of Plaintiffs, if they agree with me that 51.3 percent is a reasonable damage number, they would come up with a verdict, in your hypothetical, for $5.13 million.

*Id.* at 84:22-85:14; *see also id.* at 85:15-86:12 ("That's the beauty of a model, especially a model that's scalable as this is, is that the outcome of my damage calculation, even if I put it into my Attachment 14, ran it out, reprinted the three pages, I can tell you right now that it will be exactly 48.4 percent for Fund 2 of what you put on the top line . . . .").

## II. Ahern's Methodology Is Valid.

Ahern's report is clear that he calculated damages for America Fund, Class C, America Fund 2, and Class B. Defendants argue that Ahern calculated damages for "non-parties." Dkt. 112 at 14. Not so. Ahern calculated damages for America Funds 1 and 2 by determining the

14

amount of profit lost by the promote entities, Class C and Class B. Class C and Class B are Plaintiffs. Ahern's summary chart on page 27 of his report shows:

**Lost Profits Damages Summary**

| | Plaintiffs' Damages | | |
|---|---|---|---|
| | MHCA 1 | MHCA 2 | Total |
| At Purchase | $ 527,732 | $ 540,295 | $ 1,068,027 |
| Year 1 | 29,884 | 198,862 | 228,747 |
| Year 2 | 27,167 | 13,907 | 41,074 |
| Year 3 | 24,699 | 18,632 | 43,331 |
| Year 4 | 22,451 | 483,258 | 505,710 |
| Year 5 | 2,475,007 | 629,191 | 3,104,197 |
| Year 6 | 594,111 | 304,163 | 898,274 |
| Year 7 | 1,873,755 | 778,949 | 2,652,704 |
| Year 8 | 2,585,953 | 1,317,569 | 3,903,522 |
| Year 9 | 1,883,287 | 959,727 | 2,843,014 |
| Year 10 | 4,771,524 | 2,433,482 | 7,205,006 |
| **Total** | $ 14,815,570 | 7,678,036 | $ 22,493,606 |

See Attachments 12 and 14.

*See* Dkt. 114-4 at 28.

Class C is the promote entity within America Fund and Class B is the promote entity within America Fund 2. The damages for the promote entity are derivative of the damages for the fund it is part of, so Class C's lost profits are derivative of America Fund, and Class B's lost profits are the same as America Fund 2.[6] Ahern has thus calculated the lost profits for two entities, each of which is a named Plaintiff. Those were the only Plaintiff entities for which

---

[6] America Fund and America Fund 2's damages are based on Defendants' ill-gotten gains, which includes Fund 7's gross sales. That isn't what Ahern was retained to testify on because, at least as to Plaintiffs' initial burden, that number does not necessarily require expert testimony.

15

Ahern was tasked with calculating lost profits. Other witnesses will provide the expert and fact testimony regarding the damages of other Plaintiff entities. Notwithstanding the Smith Defendants' attempts to make Plaintiffs' lost profits testimony seem convoluted, it is actually straightforward.

Ahern excluded damages from Class C and Class B that would have flowed to Ryan and Jamie Smith, but that does not serve as a basis for excluding his opinions. All Ahern did was adjust the damages number on the assumption that the Smiths would not want a jury to enter damages against the Smith Defendants that would flow directly to them.

### III. Defendants' Unfair Prejudice Argument Is Wrong And Premature.

The Smiths next argue for exclusion under Federal Rule of Evidence 403, but this argument is no more than a rehash of their prior arguments in a Rule 403 framework. The supposed "prejudice" they identify is that Ahern assumes "all of Fund 7's investors would have invested with the plaintiff entities." Dkt. 112 at 16. This is just a repeat of their foundation argument. And the alleged "confusion" would result from Ahern's model supposedly calculating "damages sustained by non-parties." *Id*. This merely restates their methodology argument. These arguments fail for the same reasons set forth above.

The Smiths cite cases in which courts invoked Rule 403 in excluding expert testimony, but a Rule 403 balancing is fact-driven and case specific. There are other cases in which courts rejected a Rule 403 attack and admitted expert testimony over such objections. *See Burgard v. Morales*, 2020 WL 2214394, at *7 (D. Colo. May 7, 2020) (denying motion to exclude based on Rule 403 and stating "various defects" in expert's report could be addressed through cross-examination); *U.S. v. 8.11 Acres of Land, More or Less in County of Grand, Colorado*, 2019 WL 3425229, at *8 (D. Colo. July 30, 2019) (holding expert testimony should not be precluded under

16

Rule 403 because it was relevant); *Mueller v. Swift*, 2017 WL 3175798, at *7 (D. Colo. July 25, 2017) (denying motion to exclude expert opinion and recognizing opposing party will have opportunity for cross-examination). Here, Ahern's testimony is directly relevant and poses none of the dangers against which Rule 403 is designed to protect.

Finally, the Smiths Rule 403 argument is premature. The Smiths ask the Court to evaluate specific evidentiary issues in an evidence vacuum, eight months before trial. If there are any legitimate Rule 403 arguments to consider, the Court will be in a far superior position to evaluate them at trial, in the context of a full evidentiary record. *See, e.g., U.S. v. Holder,* 2020 WL 428845, at *7 (D. Colo. Jan. 28, 2020) (recognizing the "longstanding resistance to adjudicating motions in limine prior to trial, particularly those that turn in substantial part on a balancing of relevance and prejudice under Rule 403" and that "the extent to which evidence is probative (and prejudicial) often depends in large part on the specific context in which it is offered at trial" which cannot always be "reliably anticipated at the time of a motion in limine.").

### IV. Braband's Opinions Are Admissible.

The Smiths argue that Braband's opinions about RV Horizons' management fees and reputation are irrelevant to the present case. *See* Dkt. 112 at 17. To the contrary. Because the root of Ahern's damages calculations is the management and operation of the underlying assets (MHCs), which is all done by RV Horizons, Braband's analysis and opinions regarding RV Horizons is relevant, as is RV Horizons' reputation.[7]

The Smiths additionally argue that Braband's testimony lacks foundation because he did not review any invoices, billing records, or other documents reflecting actual fees RV Horizons

---

[7] At the very least, Braband should be permitted to rebut any testimony from the Defendants that they claim RV Horizons lacks the ability to profitably manage the underlying assets.

charged. *Id.* at 18. But he relied on his personal knowledge of RV Horizons, as well as a review of the pleadings, the operating agreement, and the property management agreements. Those are sufficient foundation for Braband to testify at trial.

Finally, the Smiths argue that Braband's testimony that RV Horizons' fees were reasonable and the company is reputable would unfairly prejudice them. *Id.* at 19. Again, the Smith Defendants' Rule 403 argument is premature. The Smith Defendants ask the Court to evaluate specific evidentiary issues in an evidence vacuum, eight months before trial. If there are any legitimate Rule 403 arguments to consider, the Court will be in a far superior position to evaluate them at trial, in the context of a full evidentiary record.

## CONCLUSION

For the reasons addressed above, Plaintiffs respectfully request that the Court deny the Smiths' motion.

Dated May 22, 2020

Respectfully submitted,

*/s/ Craig Stewart*
Craig Stewart
Jessica J. Smith
Christopher H. Toll
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO  80202
Phone: (303) 295-8374
Fax: (303) 974-1133
CStewart@hollandhart.com
JJSmith@hollandhart.com
CToll@hollandhart.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

      I hereby certify that on May 22, 2020, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system and via email to the following:

Michael Crosbie
Nicole L. Ballante
Shutts & Bowen, LLP
300 S. Orange Ave, Suite 1600
Orlando, FL 32801
(407) 836-6796
mcrosbie@shutts.com
nballante@shutts.com

**ATTORNEY FOR SMITH DEFENDANTS**

Christian Hendrickson
Joseph Daniels
Sherman & Howard LLC
633 17th Street
Suite 3000
Denver, CO 80202
chendrickson@shermanhoward.com
jdaniels@shermanhoward.com

**ATTORNEY FOR DAHN DEFENDANT**

                                              *s/ Craig Stewart*
                                              Craig Stewart

14589319_v21